**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| JOHN DOE | : | |
| Plaintiff, | : | Case No: 1:26-cv-00351-MWM |
| Vs. | : | Judge: Matthew W. McFarland |
| LITTLE MIAMI LOCAL SCHOOL | : | |
| DISTRICT, et al. | : | |
| Defendants | : | |

**DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Little Miami Local School District and David Wallace, solely in his official capacity, respectfully move this Court to dismiss Plaintiff's Verified Complaint for failure to state a claim upon which relief can be granted. As set forth in the accompanying Memorandum in Support, even accepting the Complaint's factual allegations as true, the Complaint fails to state a plausible First Amendment claim. Defendants respectfully request that the Court dismiss the Complaint in its entirety and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Omar Tarazi
Omar Tarazi (0084165)
5635 Sandbrook Lane
Hilliard, Ohio 43026
Ph:     (614) 226-2823
Fax:    (614) 319-4242
otarazi@tarazilaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| JOHN DOE | : | |
| Plaintiff, | : | Case No: 1:26-cv-00351-MWM |
| Vs. | : | Judge: Matthew W. McFarland |
| LITTLE MIAMI LOCAL SCHOOL | : | |
| DISTRICT, et al. | : | |
| Defendants | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER**
**RULE 12(b)(6)**

**I. INTRODUCTION**

Plaintiff's Verified Complaint challenges a Board decision concerning a permanent classroom display maintained by a public-school teacher in his classroom. The Complaint itself alleges that Plaintiff is a history teacher, that the challenged display was in his classroom, that Plaintiff defended the display by reference to specific American History and AP European History standards where he believed the flag was "especially applicable," and that the Board acted under Ohio's Parents' Bill of Rights and Board Policy 5780.01 in determining whether the display triggered parental-notification and opt-out procedures.

Even accepting those allegations as true, the Complaint fails to state a plausible First Amendment claim. The dispute pleaded in the Complaint concerns classroom speech within the school-controlled instructional environment, not private citizen speech. Plaintiff's contrary labels, such as that he was speaking "as a citizen," that the display was "extra-curricular," that Defendants acted from animus, and that the Board's rationale was "pretextual" are unsupported legal conclusions the Court is not bound to accept as true. Therefore, the Complaint should be dismissed.

## II. STANDARD OF REVIEW

To survive a motion under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L.Ed2d 868, 556 U.S. 662, 77 USLW 4387 (2009), 678 Although the Court accepts pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor, the Court is not bound to accept as true legal conclusions couched as factual allegations. Id.

## III. RELEVANT ALLEGATIONS OF THE COMPLAINT

For purposes of this motion, the core factual allegations of the Complaint are as follows:

- Plaintiff is a history teacher employed by the District (Compl. ¶¶ 2, 5).

- Plaintiff displayed the "Hate Has No Home Here" poster in his classroom for approximately four years beginning in August 2022 (Compl. ¶ 10).

- Plaintiff displayed other items in his classroom as well (Compl. ¶ 11).

- When asked to defend the display, Plaintiff provided specific American History and AP European History standards where he believed the flag was "especially applicable" (Compl. ¶ 19).

- The Board considered the matter under Ohio's Parents' Bill of Rights and Board Policy 5780.01, and the issue was framed as whether the display constituted "sexuality content" under that statute and policy (Compl. ¶¶ 14–15, 27).

- In paragraph 15 of the Complaint, Plaintiff expressly quotes Board Policy 5780.01 and hyperlinks the policy in footnote 10. Because Plaintiff relies on the policy as part of his claim and provides the direct link to it in the Complaint, the Court may consider the full policy integrated into the Complaint by reference for purposes of ruling on this motion.

In the alternative, the Court may judicially notice the policy as an official public record published on the District's BoardDocs site. The full referenced policy is attached as Exhibit K for the Court's reference.

- The Board voted 4–1 on February 25, 2026 to require removal of the display unless the parental-notification and opt-out procedures were followed (Compl. ¶ 27, 29).

- The Complaint alleges that on March 4, the Board issued a Statement (Compl. ¶ 29). Plaintiff's Complaint expressly references, quotes, and hyperlinks the Board's March 4 statement in footnote 17. Because Plaintiff relies on that statement as part of his claim, the Court may consider the full text of the statement incorporated into the Complaint by reference in evaluating the plausibility of the Complaint for purposes of ruling on this motion. The full text of the statement from the link referenced in the Complaint is:

"**Statement from the Little Miami Board of Education** On February 25, 2026, the Board of Education made a determination regarding a specific classroom poster. The Board issues the following statement to clarify the scope and purpose of that decision and to address common questions. The decision was not based on the phrase "Hate Has No Home Here." That message is fully consistent with our values. Board Policy 5780.01 does not ban any flag, image, viewpoint, or symbol. Rather, it establishes clear procedures to ensure transparency and protect parents' rights when certain topics arise in the classroom. Board Policy 5780.01 and Ohio's Parents' Bill of Rights (House Bill 8) require parental notification and the opportunity to review and opt out when classroom materials, under the totality of the circumstances, go beyond incidental references and engage students on sexual concepts or gender ideology. Based on the specific circumstances presented and in accordance with Board Policy 5780.01 and Ohio law, the Board determined that the policy's procedural requirements must be followed before the poster could remain in place. The Board's action was procedural in nature and focused on ensuring compliance with applicable law and district policy. The Little Miami Board of Education remains firmly committed to providing a safe, respectful, and supportive educational environment for all students. The District does not tolerate bullying, harassment, or discrimination of any kind. The Board is equally committed to respecting the rights of parents as established under Ohio law. We value community input and encourage respectful participation at our public Board meetings. We appreciate the continued engagement of our community as we work together to support all students and families. Little Miami Board of Education."

## IV. ARGUMENT

### A. The Complaint's Own Allegations Place This Case in the School-Sponsored / Classroom-Speech Framework

The Complaint's own allegations place this case not in the category of private citizen speech on matters of public concern, but in the category of teacher-selected classroom expression within the school-controlled instructional environment. Plaintiff alleges that he is a public-school history teacher and that the challenged display was a permanent, teacher-selected classroom display maintained in his classroom. He alleges both that the display was a permanent fixture in his classroom and that he defended it by identifying specific American History and AP European History standards where it was "especially applicable." On the face of the complaint, therefore, Plaintiff himself alleged a curricular connection between the display and classroom instruction. Plaintiff seeks an order allowing him to maintain the display in his classroom, which further confirms that the speech at issue is teacher-selected classroom expression within the school-controlled instructional environment.

Those pleaded facts describe classroom speech and classroom environment messaging, not private citizen speech occurring outside the instructional setting. The Complaint places the display within Plaintiff's official role as a teacher in the classroom. Under *Garcetti*, the Court held "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 126 S. Ct. 1951, 164 L.Ed.2d 689, 547 U.S. 410 (2006), 421. Pursuant to *Evans-Marshall*, the First Amendment does not entitle a K–12 teacher to override the school board in regard to curriculum and

instructional choices. *Evans-Marshall v. Bd. of Educ. of the Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332 (6th Cir. 2010). Under Ohio law, the Board of Education shall prescribe the curriculum and "…the First Amendment does not protect primary and secondary school teachers' in-class curricular speech …" Id.

**B. The Complaint Itself Alleges the Board Acted Under an Existing Parental-Rights Policy Framework**

The Complaint itself alleges that the Board acted under Ohio's Parents' Bill of Rights and Board Policy 5780.01 in determining whether the display triggered parental-notification and opt-out procedures. The Complaint's own allegations place the dispute within the Board's regulation of classroom displays under an existing policy framework, not within a category of private citizen speech beyond school control. Plaintiff's theory would require the Court to hold that a public-school teacher may insist on maintaining a permanent classroom display free from parental-notification procedures even when the Board determines the display implicates Ohio's Parents' Bill of Rights and Board Policy 5780.01. Accordingly, the Complaint does not allege a plausible First Amendment violation, but only disagreement with the Board's decision to apply its parental-notification policy to this display.

**C. The Court Need Not Accept Plaintiff's Ultimate Legal Characterizations of Animus or Pretext**

The Court must accept pleaded facts as true, but it need not accept Plaintiff's ultimate legal characterizations that he was speaking "as a citizen," that the display was "extra-curricular," that the Board's rationale was "pretextual," or that the pleaded facts plausibly establish unconstitutional animus or viewpoint discrimination. The complaint's quoted remarks may be

treated as factual allegations, but Plaintiff's further assertion that those remarks compel an inference of unconstitutional animus, rather than disagreement about whether parental-notification procedures should apply, is an unsupported legal conclusion and argumentative inference the Court need not accept.

More fundamentally, the relevant governmental action alleged in the Complaint is the action of the Board as a body, not the individual opinions or rhetorical comments of any particular board member. The Complaint itself alleges that the Board voted on February 25, 2026 and then issued a formal Board statement on March 4, 2026. Because Plaintiff expressly references, quotes, and hyperlinks that statement, the Court may consider its full text in evaluating plausibility. Read in full, the Board's approved statement explains the official action of the Board: the decision "was not based on the phrase 'Hate Has No Home Here,'" Board Policy 5780.01 "does not ban any flag, image, viewpoint, or symbol," and the Board determined only that "the policy's procedural requirements must be followed before the poster could remain in place." Thus, even accepting the quoted remarks as factual allegations, the Complaint itself pleads that the Board's official, voted, and published position was procedural in nature and tied to Policy 5780.01, not a ban based on viewpoint.

Nor do the other examples Plaintiff cite in the Complaint plausibly establish unconstitutional animus. Each example identified by Plaintiff concerns curriculum, instructional materials, library or book-access issues, or classroom-display regulation in the school setting. See Compl. ¶ 13(a)–(d). By Plaintiff's own allegations, those examples involve disputes over what materials or displays may be presented in schools and under what standards, not discriminatory action against any individual based on status. Allegations that Board members previously raised concerns about

books, classroom displays, or other school materials related to sexuality or gender-related topics do not plausibly transform the Board's challenged action here into unconstitutional hostility. At most, those allegations describe recurring disagreements over school content, curriculum-adjacent materials, and parental-rights issues, precisely the kinds of disputes that public school boards are charged with addressing.

Plaintiff's inference that disagreement over sexuality, or gender-related classroom materials necessarily reflects unconstitutional animus is also contrary to the Supreme Court's recent decision in *Mahmoud v. Taylor*, where the Court held that parents were entitled to preliminary injunctive relief on their Free Exercise claim when a school board denied notice and opt-outs for "LGBTQ+-inclusive" materials. *Mahmoud v. Taylor*, No. 24-297 (Jun. 27, 2025), The Supreme Court explained that "[t]he Board's introduction of the 'LGBTQ+-inclusive' storybooks, combined with its decision to withhold notice to parents and to forbid opt outs, substantially interferes with the religious development of petitioners' children and imposes the kind of burden on religious exercise that *Yoder* found unacceptable. The books are unmistakably normative. They are designed to present certain values and beliefs as things to be celebrated, and certain contrary values and beliefs as things to be rejected. Take, for example, the message sent by the books concerning same-sex marriage. Many Americans 'advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned.'" *Id.* at 3. This decision confirms that differing normative views on sexuality and gender-related topics in the school setting reflect constitutionally significant parental interests rather than discriminatory hostility. Accordingly, the Complaint's allegations, taken as true, do not plausibly transform the Board's decision to require parental-notification procedures into unconstitutional animus. At

most, the Complaint alleges disagreement over whether the Board correctly applied Policy 5780.01 to this display, not a plausible constitutional ban on viewpoint.

**D. The Complaint States No Independent Basis for Relief Against Defendant Wallace**

The Complaint alleges that Defendant Wallace is sued only in his official capacity for injunctive relief and alleges no independent basis for constitutional relief against Wallace apart from the challenged Board or District action. Plaintiff's claims against Wallace therefore rise or fall with the claim asserted against the governmental entity itself. Moreover, because the challenged action was taken by the Board as a body, not by Wallace acting alone, the Complaint does not plausibly allege any separate basis for injunctive relief against Wallace apart from the relief sought against the District.

**E. Because the Complaint Fails to State a Plausible Constitutional Violation, Plaintiff's Claims for Declaratory and Injunctive Relief Necessarily Fail**

Plaintiff's requests for declaratory and injunctive relief are derivative of his underlying constitutional claim. Because the Complaint fails to state a plausible First Amendment violation, those requests necessarily fail as well. The Complaint challenges only the Board's decision concerning a single classroom display, not any freestanding prohibition on Plaintiff speaking outside the classroom instructional setting.

**V. CONCLUSION**

Even accepting Plaintiff's factual allegations as true, the Verified Complaint pleads a dispute over a school board's regulation of a permanent teacher-selected classroom display under Ohio's Parents' Bill of Rights and Board Policy 5780.01. Plaintiff's allegations, taken as true, do not

plausibly transform a school board's regulation of a permanent teacher-selected classroom display under an existing parental-rights policy into a First Amendment violation.

Defendants respectfully request that the Court dismiss the Complaint in its entirety and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Omar Tarazi
Omar Tarazi (0084165)
5635 Sandbrook Lane
Hilliard, Ohio 43026
Ph:     (614) 226-2823
Fax:    (614) 319-4242
otarazi@tarazilaw.com

## Certificate of Service

I hereby certify that on 4/13/2026, a copy of the foregoing was served on the Plaintiff's counsel via email.

/s/ Omar Tarazi
Omar Tarazi (0084165)