Case: 1:26-cv-00351-MWM Doc #: 13 Filed: 04/13/26 Page: 1 of 11  PAGEID #: 94

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

JOHN DOE                                    :

Plaintiff,                                  :          Case No: 1:26-cv-00351-MWM

Vs.                                         :          Judge: Matthew W. McFarland

LITTLE MIAMI LOCAL SCHOOL                   :
DISTRICT, et. al.                           :

Defendants                                  :

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR**
**PRELIMINARY INJUNCTION**

Defendants Little Miami Local School District and David Wallace, in his official capacity,

respectfully oppose Plaintiff's Motion for Preliminary Injunction (Doc. #3). Plaintiff seeks

extraordinary relief that would override an elected school board's procedural determination

under a duly adopted parental-rights policy before the Court has resolved either the pleadings or

the full merits record. That request should be denied.

## I. Legal Standard

"A district court must balance four factors in determining whether to grant a preliminary

injunction: '(1) whether the movant has a strong likelihood of success on the merits; (2) whether

the movant would suffer irreparable injury absent the injunction; (3) whether the injunction

would cause substantial harm to others; and (4) whether the public interest would be served by

the issuance of an injunction.' " *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378 (6th

Cir. 2020). The party seeking the preliminary injunction bears the burden of justifying such

relief. *Id*.

## II. Relevant Background Facts

1- Plaintiff is a history teacher at Little Miami High School employed by the Little Miami Local School District (Compl. ¶¶ 2, 5).

2- Plaintiff displayed the "Hate Has No Home Here" poster at issue in this case in his classroom for approximately four years beginning in August 2022 (Compl. ¶ 10).

3- Plaintiff displayed other items in his classroom as well (Compl. ¶ 11).

4- In emails dated February 2 and February 9, 2026, he agreed that the poster was "especially applicable" to specific American History and AP European History standards involving sexual orientation or gender identity in historical context and that it supports aspects of the social studies curriculum including topics that may involve sexual orientation or gender identity in historical context. Compl. ¶ 19 and Exhibit G_1.

5- The Superintendent reviewed the poster in relation to Board Policy 5780.01 and sent her email to the Board with her opinion. Exhibit H.

6- Pursuant to Board Policy 5780.01 attached as Exhibit F (Doc. 10-1), after the determination of the Superintendent, the matter may be appealed to the Board of Education for a final determination. The Board considered the matter under Ohio's Parents' Bill of Rights and Board Policy 5780.01, and the issue was framed as whether the display constituted "sexuality content" under that statute and policy (Compl. ¶¶ 14–15, 27).

7- The full written record was forwarded to the Superintendent with a copy to the Board with procedural guidance as to next steps based on the Board policy as is documented in Exhibit G_1 and its attachments in Exhibit G_2.

8- February 25, 2026, the Board voted 4–1 that the display triggered the parental-notification and opt-out procedures of Policy 5780.01 and directed that the poster could

not remain unless those procedures were followed. See Exhibit B Minutes of the February 25, 2026 Board Meeting; Exhibit C Transcript of February 25, 2026 Board Meeting.

9- On March 3, 2026, the Board formally considered, voted on, and approved an official Statement as its institutional explanation of the February 25 action and directed the Superintendent to distribute the Statement district-wide. Seed Exhibit D Minutes of the March 3, 2026 Board Meeting; Exhibit E Transcript of March 3, 2026 Board Meeting. That approved Statement expressly provides:

> The decision was not based on the phrase "Hate Has No Home Here." That message is fully consistent with Board values. Board Policy 5780.01 does not ban any flag, image, viewpoint, or symbol. Rather, it establishes clear procedures to ensure transparency and protect parents' rights when certain topics arise in the classroom… Based on the specific circumstances presented and in accordance with Board Policy 5780.01 and Ohio law, the Board determined that the policy's procedural requirements must be followed before the poster could remain in place. The Board's action was procedural in nature and focused on ensuring compliance with applicable law and district policy. Exhibit D.

10- Plaintiff has since replaced the original poster with a different flag in the same classroom location that still conveys the "Hate Has No Home Here" message. Exhibit I (photo of replacement poster).

11- Pursuant to the Board's determination, the original poster could be restored at any time simply by complying with the parental-notification and opt-out procedures set forth in Board Policy 5780.01.

## III. Plaintiff Cannot Show a Likelihood of Success on the Merits

Plaintiff cannot show a likelihood of success on the merits because, as set forth in Defendants' filed 12(b)(6) Motion to Dismiss (Doc. 10), the Complaint fails to state a plausible First Amendment claim even on its own allegations. The full undisputed record attached reinforces and supports the arguments even further that Plaintiff failed to state a plausible First Amendment claim, and has no likelihood of success based on the law governing teacher introduced classroom displays that the teacher admits is related to curriculum standards.

## A. The Display Was School-Sponsored / Classroom Speech Subject to Reasonable Regulation

The Complaint's own allegations place this case in the category of teacher-selected classroom expression within the school-controlled instructional environment, not private citizen speech on matters of public concern. Plaintiff seeks an order allowing him to maintain the display in his classroom, confirming that the speech at issue is classroom expression rather than speech outside the instructional setting. Plaintiff's own February 2 and February 9, 2026 emails (Included in Exhibit G_1, G_2, and attached to Exhibit H) contradict his repeated characterization of the display as merely "extra-curricular" or private personal expression; he expressly tied the poster to specific curricular standards and student-facing classroom messaging.

Those pleaded and admitted facts describe classroom speech and classroom environment messaging, not private citizen speech occurring outside the instructional setting. The Complaint places the display within Plaintiff's official role as a teacher in the classroom. Under *Garcetti*, the Court held "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 126 S. Ct. 1951, 164 L.Ed.2d 689, 547 U.S. 410 (2006), 421. Pursuant to *Evans-Marshall*, the First Amendment does not entitle a K–12 teacher to override the school board in regard to curriculum and instructional choices. *Evans-Marshall v. Bd. of Educ. of the Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332 (6th Cir. 2010). Under Ohio law, the Board of Education shall prescribe the curriculum and "…the First Amendment does not protect primary and secondary school teachers' in-class curricular speech …" Id.

Plaintiff's reliance on *Kennedy v. Bremerton School District* is misplaced. That case involved brief private religious observance by a coach outside the scope of his ordinary coaching duties. The Court stated, "When Mr. Kennedy uttered the three prayers that resulted in his suspension, he was not engaged in speech "ordinarily within the scope" of his duties as a coach… He did not speak pursuant to government policy. He was not seeking to convey a government-created message. He was not instructing players, discussing strategy, encouraging better on-field performance, or engaged in any other speech the District paid him to produce as a coach. …Simply put: Mr. Kennedy's prayers did not "ow[e their] existence" to Mr. Kennedy's responsibilities as a public employee." *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 213 L.Ed.2d 755 (2022), 2424

Here, by contrast, the challenged expression in this case is a permanent classroom display maintained in Plaintiff's assigned classroom during the school day, visible to students during instruction, and which Plaintiff himself tied to curriculum and student-facing classroom messaging. This case therefore concerns school-sponsored or classroom expression within the instructional environment and the facts and circumstances of *Kennedy* are inapplicable.

**Nor can Plaintiff show a clear likelihood of success on his assertion that the poster was merely an "incidental reference" outside the policy.**

Policy 5780.01 excludes incidental references occurring outside formal instruction, but it also requires parental review and opt-out procedures when classroom materials, under the totality of the circumstances, go beyond incidental references and engage students on sexual concepts or gender ideology. See Exhibit G_1. Plaintiff's own emails tied the display to social studies curriculum involving sexual orientation or gender identity in historical context and to signaling a classroom message to students, which is precisely why the Board had to determine whether the display, under the totality of the circumstances, triggered the policy's procedures.

### B. The Official Board Action Was Procedural and Policy-Based

Whatever views individual members may have expressed during debate, the official action relevant to this motion is the Board's institutional action as reflected in its 4–1 vote on February 25, 2026, and its approved Statement on March 3, 2026. The March 3 minutes and transcript confirm that the Board formally considered, voted on, and approved that exact statement as its institutional explanation of the February 25 action. At minimum, the existence of a formally adopted Board explanation defeats Plaintiff's effort to treat isolated debate comments as the legal equivalent of the Board's official action. That approved Statement expressly says the decision

was not based on the phrase "Hate Has No Home Here," that Board Policy 5780.01 "does not ban any flag, image, viewpoint, or symbol," and that the Board determined only that the policy's procedural requirements had to be followed before the poster could remain in place. Exhibit D. Plaintiff's selective reliance on individual comments cannot override the Board's formal adopted explanation of its action. The approved Statement was not a post hoc litigation rationale; it was formally adopted by Board vote on March 3 and directed for immediate district-wide distribution.

The Superintendent's earlier February 3 view does not create a constitutional violation. Her declaration confirms she reviewed the poster and forwarded her position to the Board, but Policy 5780.01 expressly contemplates Board-level review, and the Board made the final determination after that process.

## C. Plaintiff's Animus Theory Is Contrary to Supreme Court Precedent

Plaintiff's inference that disagreement over sexuality or gender-related classroom materials necessarily reflects unconstitutional animus is contrary to the Supreme Court's recent decision in *Mahmoud v. Taylor*, No. 24-297 (Jun. 27, 2025). There, the Court held that parents were entitled to preliminary injunctive relief on their Free Exercise claim where a school board denied notice and opt-outs for "LGBTQ+-inclusive" materials, recognizing that such topics may implicate constitutionally significant parental interests. *Mahmoud* confirms that differing normative views on sexuality- and gender-related topics in the school setting may reflect constitutionally significant parental interests rather than discriminatory hostility. Plaintiff's theory would invert *Mahmoud* by treating a Board's effort to apply notice-and-opt-out procedures in this context as evidence of animus. That is not a plausible basis for preliminary injunctive relief.

Plaintiff's broader attempt to portray this as a campaign against a viewpoint is also undermined by the January 28 Board discussion, where the guidance read into the record expressly stated that "the test is not whether someone agrees or disagrees with the message of a poster, flag, or book," but whether the display meets the District's definition of sexuality content and whether Policy 5780.01's procedures have been followed. Exhibit A_1.

Each example identified by Plaintiff as alleged evidence of "animus" concerns curriculum, instructional materials, library or book-access issues, or classroom-display regulation in the school setting. See Compl. ¶ 13(a)–(d). By Plaintiff's own allegations, those examples involve disputes over what materials or displays may be presented in schools and under what standards, not discriminatory action against any individual based on status. Allegations that Board members previously raised concerns about books, classroom displays, or other school materials related to sexuality or gender-related topics do not plausibly transform the Board's challenged action here into unconstitutional hostility to a viewpoint. At most, those allegations describe recurring disagreements over school content, curriculum-adjacent materials, and parental-rights issues, precisely the kinds of disputes that public school boards are charged with addressing.

## IV. Plaintiff Will Not Suffer Irreparable Harm

Plaintiff seeks a mandatory preliminary injunction requiring the District to undo the Board's current procedural determination and permit restoration of the original poster before final adjudication. That request warrants particular caution because it would alter, not preserve, the operative status quo.

Plaintiff cannot demonstrate irreparable harm. The Board's action did not ban the "Hate Has No Home Here" message or any anti-hate viewpoint; that core message remains fully consistent with District values. The Board's approved Statement expressly provides that Policy 5780.01 "does not ban any flag, image, viewpoint, or symbol" and that the Board determined only that the policy's procedural requirements had to be followed before this particular poster could remain in place. Exhibit D. That is a materially different circumstance from a blanket viewpoint ban.

Plaintiff has already replaced the original poster with a different flag in the same location that still conveys the "Hate Has No Home Here". Exhibit I. The replacement image further confirms that Plaintiff has not been silenced from conveying an anti-hate or inclusion-oriented message in his classroom while the policy question is resolved. The original poster can be restored at any time simply by complying with the parental-notification and opt-out procedures of Board Policy 5780.01. Any alleged injury -if any- is therefore limited, conditional, and readily avoidable. This further shows there has been no blanket suppression of Plaintiff's classroom expression.

## V. The Balance of Equities Favors Defendants

The balance of equities tips sharply in favor of Defendants. Granting the injunction would undermine the Board's ability to enforce a duly adopted parental-notification policy, interfere with the District's legitimate pedagogical interests, and disrupt the status quo established by the Board's procedural determination. The February 25 record reflects substantial community input on both sides of the issue, underscoring that the Board was resolving a disputed school-governance question rather than suppressing a lone private viewpoint. In contrast, denying the injunction leaves Plaintiff free to display a general anti-hate message in a policy-compliant

format and to restore the original poster upon compliance with the policy. The equities therefore favor denial.

## VI. The Public Interest Favors Denial of the Injunction

The public interest strongly supports denial of the injunction. Elected school boards are best positioned to balance pedagogical goals, classroom management, and parental rights in public schools. Allowing the Board to implement its reasonable, content-neutral procedural requirements serves the public's interest in transparent, parent-informed education and preserves the District's authority over official classroom displays.

## VII. Conclusion

Plaintiff has not shown a likelihood of success on the merits, irreparable harm, or that the balance of equities and public interest favor emergency relief. The Motion for Preliminary Injunction should be denied.

Respectfully Submitted,

/s/ Omar Tarazi_____
Omar Tarazi (0084165)
5635 Sandbrook Lane
Hilliard, Ohio 43026
Ph:     (614) 226-2823
Fax:    (614) 319-4242
otarazi@tarazilaw.com

**<u>Certificate of Service</u>**

I hereby certify that on April 13, 2026, a true copy of the foregoing and attached exhibits were served via the Court's CM/ECF system and by email on Plaintiff's counsel.

/s/ Omar Tarazi_____
Omar Tarazi (0084165)