**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| GEORGE MCINTYRE, | : | |
| Plaintiff, | : | Case No: 1:26-cv-00351-MWM |
| Vs. | : | Judge: Matthew W. McFarland |
| LITTLE MIAMI LOCAL SCHOOL | : | |
| DISTRICT, et. al. | : | |
| Defendants | : | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants Little Miami Local School District and David Wallace, in his official capacity, respectfully submit this Reply in support of their Motion to Dismiss (Doc. 10).

## I. INTRODUCTION

Plaintiff's Response confirms that the real dispute is not over what the Amended Complaint alleges, but how those pleaded facts are legally characterized. McIntyre pleads that he is a history teacher, that he placed the challenged display in his classroom, that it was visible to students there, and that he defended the display by identifying specific curricular standards where he believed it was "especially applicable." Amended Complaint ¶¶ 19–20. Yet he overlays those same classroom-based facts with the contrary legal label that this was wholly private-citizen speech on a matter of public concern.

Defendants did not waive the governing public-employee speech analysis. Defendants' motion properly challenged McIntyre's premise that the Amended Complaint plausibly alleges private-citizen speech triggering Pickering balancing in the first place. That threshold question comes first. If the Amended Complaint's own allegations place the display within the school-controlled instructional environment as teacher-selected classroom expression, then McIntyre cannot simply

assume his preferred framework and proceed to Pickering balancing, viewpoint-discrimination theories, or expansive discovery.

## II. PLAINTIFF'S WAIVER ARGUMENT IS MISPLACED

McIntyre argues that Defendants waived arguments by not presenting the case as though he had already plausibly alleged private-citizen speech. That is incorrect.

The Supreme Court has made clear that the first question in a public-employee speech case is whether the employee spoke as a citizen rather than pursuant to official duties. "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos*, 126 S. Ct. 1951, 164 L.Ed.2d 689, 547 U.S. 410 (2006), 418. That is the issue Defendants raised. The Amended Complaint's own allegations describe a permanent, teacher-selected, student-facing classroom display that McIntyre, a paid teacher during instruction time, himself tied to curriculum and classroom messaging. On those pleaded facts, Defendants argued that the case is governed first by the classroom-speech framework (Hazelwood and Evans-Marshall), not by McIntyre's preferred private-speech framework.

The Sixth Circuit has held that "failure to raise an argument in his appellate brief constitutes a waiver of the argument on appeal." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291 (6th Cir. 2005). This case is not on appeal, and Defendants did not concede that Pickering governs and then fail to address it. Defendants argued that the Amended Complaint fails at the threshold because it does not plausibly allege private-citizen speech. Defendants do not contend that the Board's action is categorically unreviewable. Defendants contend only that, under Rule 12(b)(6),

Page **2** of **11**

the Amended Complaint fails to plausibly allege a First Amendment violation under the correct constitutional framework. There is no waiver.

### III. THE AMENDED COMPLAINT'S OWN ALLEGATIONS, AND THE CURRICULAR CONNECTION MCINTYRE HIMSELF PLEADED, PLACE THIS CASE WITHIN THE CLASSROOM-SPEECH FRAMEWORK; NO DISCOVERY IS NEEDED

McIntyre's own allegations place the dispute inside the classroom and within the school-controlled instructional environment by a paid teacher during instructional time. Defendants do not ask the Court to resolve factual disputes or weigh competing evidence. The Motion turns on the Amended Complaint's own allegations and documents the Amended Complaint expressly references and relies upon. McIntyre alleges that he is a history teacher, that he placed the display in his classroom during instructional time, that it remained there for years, that it was visible to students there, and that when challenged he defended the display by identifying specific American History and AP European History standards where it was "especially applicable." Amended Complaint ¶¶ 19–20. The Superintendent reviewed the poster "and its association with the attached curricula standards." Id. ¶ 20.

These are factual allegations the Court must accept as true. In his Response, McIntyre now insists the display "is not curricular" and was "extra-curricular." Those are legal conclusions and argumentative recharacterization, not a pleaded fact. Under Iqbal, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L.Ed2d 868, 556 U.S. 662, 77 USLW 4387 (2009), 678. Plaintiff cannot plead a curricular connection in the Complaint and then escape it in opposition briefing. Even without

McIntyre's express curricular justification, the Amended Complaint still alleges a teacher-selected, student-facing classroom display maintained during instructional time within the school-controlled instructional environment. That is not the sort of purely private, personal expression plausibly protected as citizen speech.

This threshold question, whether the speech was pursuant to official duties or constituted school-sponsored expression, is a legal determination based on the nature of the conduct as alleged in the Complaint. It does not require discovery. Courts can resolve the Garcetti threshold (and the related Hazelwood school-sponsored-speech inquiry) at the pleading stage when the complaint's allegations show the speech was part of the employee's job functions or the school's instructional environment. See for example: "The facts required to reach this conclusion — such as Weisbarth's employment duties, the impetus for her speech, the setting of her speech, the speech's audience, and its general subject matter — are all set forth in the pleadings. Weisbarth's complaint thus makes clear that she spoke pursuant to her official duties rather than "as a citizen," and her claim was therefore properly dismissed." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538 (6th Cir. 2007), 546. Discovery is for the merits if a claim survives, not to allow a plaintiff to explore a legal theory that contradicts his own pleadings.

Regarding the curriculum connection, because Plaintiff expressly relies and quotes in the Amended Complaint (¶¶ 19–20) on the public record email chain in which he defended the display by citing specific curricular standards, the Court may consider the full text of that public record chain, attached as Doc. 13-8, Exhibit G_1, under the incorporation-by-reference doctrine without converting this motion to one for summary judgment. "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule

12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Frank v. Dana Corp.*, 547 F.3d 564 (6th Cir. 2008), 570. The full email chain offers no objective facts to support a plausible private speech characterization.

Even setting aside the curriculum connection, McIntyre pleaded a permanent, teacher-selected display in a K-12 classroom, visible daily to students during the school day, is classic school-sponsored expressive activity that may reasonably "bear the imprimatur of the school." *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988). Under E*vans-Marshall,* the First Amendment does not entitle a K–12 teacher to override the school board in regard to curriculum and instructional choices. *Evans-Marshall v. Bd. of Educ. of the Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332 (6th Cir. 2010). Under Ohio law, the Board of Education shall prescribe the curriculum and "…the First Amendment does not protect primary and secondary school teachers' in-class curricular speech …" Id. The speech here was teacher speech directed to students in the instructional environment. McIntyre has no First Amendment right to maintain it against the Board's determination, made under Ohio's Parents' Bill of Rights and Board Policy 5780.01, that parental-notification procedures apply.

The Supreme Court has made clear that Hazelwood is not limited to formal lesson plans or assigned readings. It applies whenever school officials exercise control over "school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988), 272. A permanent, teacher-selected, student-facing display in the classroom that the

teacher himself defended as "especially applicable" to the curriculum is school-sponsored classroom expression subject to reasonable regulation under Hazelwood and Evans-Marshall.

## IV. KENNEDY DOES NOT SAVE THE AMENDED COMPLAINT

McIntyre relies heavily on *Kennedy v. Bremerton School District*. But Kennedy is materially different from the facts pleaded here.

In Kennedy, the Supreme Court emphasized that the coach's post-game prayer was private speech because: "When Mr. Kennedy uttered the three prayers that resulted in his suspension, he was not engaged in speech "ordinarily within the scope" of his duties as a coach. Lane … He did not speak pursuant to government policy. He was not seeking to convey a government-created message. He was not instructing players, discussing strategy, encouraging better on-field performance, or engaged in any other speech the District paid him to produce as a coach… Simply put: Mr. Kennedy's prayers did not "ow[e their] existence" to Mr. Kennedy's responsibilities as a public employee." *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 213 L.Ed.2d 755 (2022), 2424.

That is not what McIntyre alleges here. McIntyre alleges a permanent classroom display, maintained by the teacher in his assigned classroom, visible to students during instruction, and affirmatively defended by McIntyre as especially connected to curricular standards and classroom messaging. Those allegations do not resemble the brief, personal, post-game observance in Kennedy. McIntyre cannot simply assume Kennedy controls by labeling the display "extra-curricular." The speech here was teacher speech directed to students in the classroom setting.

**V. IF THE COURT GOES BEYOND THE THRESHOLD CLASSIFICATION ISSUE, THE AMENDED COMPLAINT STILL DOES NOT PLAUSIBLY STATE A CLAIM**

Even if the Court were to proceed beyond the threshold classification issue, the Amended Complaint still does not plausibly state a claim.

First, McIntyre's own allegations undercut his assertion that the display was private-citizen speech. He was not speaking in a public park, on a personal social-media page, or in some setting detached from his role as a teacher. He was a teacher maintaining a permanent message-bearing display in his classroom during the school day and tying that display to classroom instruction.

Second, the Amended Complaint itself pleads an obvious policy-based basis for the Board's action: the Board acted under Ohio's Parents' Bill of Rights and Board Policy 5780.01 in determining whether the display triggered parental-notification and opt-out procedures. The Amended Complaint itself alleges that the Board acted under Ohio's Parents' Bill of Rights and Board Policy 5780.01 in determining whether the display triggered parental-notification and opt-out procedures. Whatever McIntyre's disagreement with that determination, the Amended Complaint's own allegations place the dispute within the Board's regulation of classroom displays under an existing parental-notification policy framework, not within a category of private speech beyond school control.

Third, McIntyre's effort to jump directly to Pickering balancing confirms the problem. Pickering is not the starting point unless the Amended Complaint first plausibly alleges that McIntyre spoke as a citizen rather than as part of the school-controlled classroom environment.

## VI. McINTYRE'S PRETEXT / VIEWPOINT-DISCRIMINATION AUTHORITIES ASSUME THE WRONG FRAMEWORK

McIntyre devotes substantial space to arguing pretext and viewpoint discrimination. The cited cases do not solve the threshold problem because they assume the challenged restriction is being analyzed under a private-speech / forum / viewpoint-discrimination framework.

Defendants' point is that the Amended Complaint never plausibly gets there. The Amended Complaint itself alleges that the Board acted under HB 8 and Policy 5780.01 in determining whether the display triggered parental-notification procedures. It also alleges that the Board's official statement framed its action as a determination that classroom materials, "under the totality of the circumstances," went beyond incidental references and engaged students on sexual concepts or gender ideology. Amended Complaint ¶ 29.

Because Plaintiff expressly references, quotes, and hyperlinks the Board's official March 4, 2026 statement in the Amended Complaint (¶29), the Court may consider its full public record minutes which is attached as Doc. 13-5, Exhibit D. That statement expressly provides that the decision "was not based on the phrase 'Hate Has No Home Here,'" that Policy 5780.01 "does not ban any flag, image, viewpoint, or symbol," and that the Board determined only that "the policy's procedural requirements must be followed before the poster could remain in place." The Court need not accept McIntyre's contrary legal labels, "as a citizen," "extra-curricular," "pretextual," or "animus", when the pleaded facts point to a different constitutional framework.

## VII. THE PRIOR INCIDENTS McINTYRE CITES DO NOT PLAUSIBLY ESTABLISH ANIMUS

McIntyre points to prior incidents involving changes to the Scholastic Book Fair, removal of

books from PTO vending machines, and a proposed classroom-display policy as evidence of anti-LGBTQ animus. But those allegations do not describe discrimination against any individual based on status. They describe recurring disputes over books, instructional materials, library or book-access issues, and classroom-display regulation in the school setting, precisely the kinds of policy judgments public school boards are charged with making under HB 8 and Policy 5780.01.

McIntyre's reliance on those prior incidents also fails for a more basic reason: they do not plausibly show pretext as to the specific action challenged here. Here, the Amended Complaint alleges only that the Board made a determination under HB 8 and Policy 5780.01 about this display. That is insufficient to plausibly allege that the Board's application of the Policy was a pretext for unconstitutional animus.

Plaintiff's reliance on isolated comments by individual members does not overcome the Amended Complaint's own allegation that the Board acted as a body under HB 8 and Policy 5780.01 and later issued an official statement explaining that action. Isolated comments by an individuals do not plausibly transform this policy dispute into unconstitutional viewpoint discrimination. The Amended Complaint references the Youtube videos of the board meetings in the Amended Complaint footnote 12, and at footnote 9 the Amended Complaint references the boarddocs.com website where the district publicly maintains all approved board policies, minutes and agendas for board meetings. For ease of reference, Defendants have attached the full minutes, transcripts from the Youtube videos of the board discussion, the full referenced board policy, all of which are public records, to Defendant's memo contra to Plaintiff's Motion for Preliminary Injunction. (Doc. 13-1 to 13). If the Court takes judicial notice of every conceivable public record referenced and discussed in Plaintiff's Amended Complaint, the Amended

Complaint still fails to plausibly allege specific facts showing the Board's discussion and vote focused on anything but the legitimate procedural application of Policy 5780.01.

## VIII. MAHMOUD REMAINS RELEVANT

McIntyre says Kennedy governs and Mahmoud does not. Defendants do not contend the two cases are identical. Mahmoud remains relevant because it confirms that parental notice and opt-out interests regarding LGBTQ-related classroom materials are constitutionally serious interests, not irrational or inherently suspect ones. "A government burdens the religious exercise of parents when it requires them to submit their children to instruction that poses "a very real threat of undermining" the religious beliefs and practices that the parents wish to instill… And a government cannot condition the benefit of free public education on parents' acceptance of such instruction." *Mahmoud v. Taylor*, 24-297 (Jun 27, 2025), 7. That matters here because McIntyre's theory tries to equate disagreement with whether LGBTQ materials presented in a classroom setting to students by a teacher requires parental notice with unconstitutional animus. Mahmoud strongly undermines that premise. A school board's determination that certain classroom materials may implicate parental notice or opt-out rights is not, without more, evidence of unconstitutional hostility.

## IX. WALLACE

McIntyre's official-capacity claim against Wallace is wholly derivative of the underlying constitutional claim against the District. Thus, even assuming Wallace is a proper official-capacity defendant for prospective relief, that does not save the Amended Complaint if no plausible First Amendment violation has been pleaded.

**CONCLUSION**

The Amended Complaint pleads a classroom-based fact pattern and then overlays legal labels designed to force the case into an incompatible constitutional framework. On the facts actually alleged, including McIntyre's own curricular defense of the display, the dispute concerns a teacher-selected classroom display regulated by the Board under an existing parental-notification policy framework. That is not enough to plausibly state a First Amendment claim under the private-citizen speech line of cases. The Motion to Dismiss should be granted.

Respectfully Submitted,

/s/ Omar Tarazi
Omar Tarazi (0084165)
5635 Sandbrook Lane
Hilliard, Ohio 43026
Ph:    (614) 226-2823
Fax:    (614) 319-4242
otarazi@tarazilaw.com

**Certificate of Service**

I hereby certify that on April 22, 2026, a true copy of the foregoing was served via the Court's CM/ECF system and by email on Plaintiff's counsel.

/s/ Omar Tarazi
Omar Tarazi (0084165)