

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

GEORGE MCINTYRE,                                    :

Plaintiff,                                          :          Case No: 1:26-cv-00351-MWM

Vs.                                                 :          Judge: Matthew W. McFarland

LITTLE MIAMI LOCAL SCHOOL                           :
DISTRICT, et al.                                    :

Defendants                                          :

### DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

### PRELIMINARY STATEMENT

Defendants Little Miami School District and David Wallace, in his official capacity as Board President, respond to Plaintiff's First Set of Interrogatories as follows. These responses are made based upon information presently available to Defendants. Discovery is ongoing and Defendants reserve the right to supplement these responses as additional information becomes available. These responses are subject to all applicable objections as to relevance, materiality, and admissibility.

### CAPACITY OF RESPONDING PARTY

These Responses are submitted by David Wallace in his official capacity as President of the Little Miami Local School District Board of Education. Pursuant to Board Policy 0148, the Board President serves as the official spokesperson for the Board. Mr. Wallace responds to these Interrogatories in two capacities:

First, as Defendant David Wallace in his official capacity as Board President, with respect to any Interrogatory directed at him individually as a named Defendant; and

Second, as the designated representative of Defendant Little Miami Local School District pursuant to Federal Rule of Civil Procedure 30(b)(6), responding on behalf of the District based on information known or reasonably available to the District, including information obtained from District records, staff, and administrators in the course of preparing these Responses.

To the extent any Interrogatory calls for information within the personal knowledge of other District personnel, Mr. Wallace has made reasonable inquiry and responds based on information available to the District. These Responses represent the institutional position of Defendant Little Miami Local School District as well as the individual responses of Defendant David Wallace in his official capacity.

### INTERROGATORY NO. 1:

*Identify every document you reasonably anticipate introducing as an exhibit at trial, in support of or in opposition to a motion for summary judgment, or in opposition to the motion for preliminary injunction.*

**Objection:** Defendants object to this Interrogatory to the extent it seeks a premature final identification of trial exhibits before the completion of discovery, including depositions. Defendants further object to the extent this Interrogatory is duplicative of Plaintiff's Requests for Production of Documents.

**Response:** Without waiving these objections, Defendants identify the following categories of documents currently anticipated to be used: all documents filed in this case; board meeting minutes, agendas, and recordings from January 2026 through April 2026; Board Policy 5780.01 and related NEOLA policy documents; Plaintiff's own written communications regarding the Flag including his February 2 and February 9, 2026 emails describing his purposes and use of the Flag; curriculum materials referenced and attached by Plaintiff including the Ohio Social Studies Model Curriculum for American History, the AP Euro Course at a Glance, and What AP Stands For documents, which Plaintiff himself attached to his February 2, 2026 email; Ohio H.B. 8, the Parent's Bill of Rights; photographs of the Flag in Plaintiff's classroom; and documents produced in discovery. Defendants will supplement this response as discovery is completed.

### INTERROGATORY NO. 2:

*Identify every person you reasonably anticipate calling as a witness at trial or a hearing on the motion for preliminary injunction, or who you anticipate will be submitting an affidavit in support of or in opposition to a motion for summary judgment. For each person identified, describe the person's anticipated testimony.*

**Objection:** Defendants object to this Interrogatory to the extent it seeks a premature final identification of witnesses before the completion of discovery and depositions. Defendants reserve the right to supplement this response.

**Response:** Without waiving these objections, Defendants currently anticipate the following witnesses:

David Wallace, Board President, anticipated to testify regarding the Board's deliberation and vote concerning the Flag, the application of Board Policy 5780.01 and H.B. 8, and the Board's institutional position on the matters at issue.

Regina Morgan, Superintendent, anticipated to testify regarding her communications with Plaintiff and the Board concerning the Flag, her administrative review of the Flag and its association with curriculum standards, and the events leading to the Board vote.

Kevin Harleman, High School Principal, anticipated to testify regarding communications with Plaintiff, the events at the school level.

Terry Gonda, District Treasurer, anticipated to testify for purposes of authenticating and verifying official board records.

George McIntyre, Plaintiff, anticipated to testify regarding his display of the Flag, his written representations about its purposes and curricular connection, and his communications with District administrators.

Defendants reserve the right to call additional witnesses identified through discovery and to supplement this response accordingly.

**INTERROGATORY NO. 3:**

*Identify every expert you reasonably anticipate calling as a witness at trial or a hearing on the motion for preliminary injunction. For each person identified, summarize the expert's testimony, findings, analysis, conclusions, or opinion, and provide a summary of the expert's qualifications.*

**Objection:** Defendants object to this Interrogatory as premature as expert discovery deadlines have not been set.

**Response:** At this time, Defendants do not anticipate calling expert witnesses in connection with the preliminary injunction hearing. Defendants reserve the right to identify experts as the litigation proceeds and will supplement this response in accordance with the Court's scheduling order.

**INTERROGATORY NO. 4:**

*Identify all persons who took any action concerning the removal of the Hate Has No Home Here Flag. For each person identified, describe in detail the actions taken by each person.*

**Response:** The following persons took actions concerning the removal of the Flag:

David Wallace, Board President, In September 2025, visited Plaintiff's classroom and observed the Flag. In January 2026, read Board guidelines on classroom displays at a Board meeting. Subsequently communicated concerns regarding the Flag to the Superintendent. Requested that the matter be placed on the Board agenda. Participated in Board deliberations and voted with the majority at the February 25, 2026 Board meeting to determine that the Flag constitutes "sexuality content" as defined by Board Policy 5780.01, a determination that required compliance with the applicable parental notification and opt-out procedures under H.B. 8 and Policy 5780.01 before the Flag could remain displayed.

Regina Morgan, Superintendent, Communicated Board President Wallace's concerns to the High School Principal and to Plaintiff. Conducted her own review of the Flag and its association with curriculum standards. Communicated the results of that review to the Board. Informed Plaintiff of the Board's decision and the consequences of non-compliance.

Kevin Harleman, High School Principal, Communicated with Plaintiff regarding the Board President's concerns. Declined to independently order removal of the Flag. Forwarded Plaintiff's written response and curriculum justification to the Superintendent.

George McIntyre, Plaintiff, Removed the Flag from his classroom and replaced it with an alternative display following the Board's February 25, 2026 vote, in order to avoid disciplinary action.

Other Board Members, Participated in Board deliberations and voted at the February 25, 2026 Board meeting. The official approved minutes of that meeting, approved at the March 25, 2026 Regular Board Meeting by votes of Board members Horvath, Bullock, and Wallace in favor and Siebert abstaining, record the Board's action as follows: "Motion to determine if poster constitutes 'sexuality content' as defined by LM Policy 5780.01 (Parents' Bill of Rights). Board members discussed at length the poster and items contained on it. All members gave their

opinion on the poster and whether they felt it met the criteria to be removed. Motion by Mandy Bullock, second by Dan Smith. Final Resolution: Motion Carries. Yes: Diane Horvath, Mandy Bullock, Dave Wallace, Dan Smith. No: Wayne Siebert." The approved minutes constitute the official legal record of the Board's action.

**INTERROGATORY NO. 5:**

*State the basis for any contention that the Hate Has No Home Here Flag is Sexual Content.*

**Objection:** Defendants object to this Interrogatory to the extent it uses the term "Sexual Content," which is not the operative defined term under Ohio Revised Code § 3313.473 or Board Policy 5780.01. The applicable defined term is "sexuality content," meaning any oral or written instruction, presentation, image, or description of sexual concepts or gender ideology provided in a classroom setting. Defendants respond using that defined term and the framework established by H.B. 8 and Policy 5780.01.

**Response subject to objection:** The Board determined that the Flag, under the totality of the circumstances, constitutes "sexuality content" as defined by Ohio Revised Code § 3313.473 and Board Policy 5780.01. The Flag prominently displays a rainbow Pride flag and a transgender Pride flag, symbols universally understood to represent positions on sexual orientation and gender identity. These symbols were displayed in a student-facing classroom setting by a teacher in a position of authority over an extended period of approximately four years. Because the required parental notification and opt-out procedures under H.B. 8 and Policy 5780.01 had not been completed, the Board determined that the Flag could not remain displayed pending compliance with those procedures.

Plaintiff's own submissions and statements support the Board's determination. In his February 4, 2026 email to the Superintendent, Board counsel Omar Tarazi characterized the teacher's position as reflecting two purposes, one of which was "Supporting aspects of the social studies curriculum, including topics that may involve sexual orientation or gender identity in historical context." In his February 9, 2026 response email, Plaintiff stated that he "would tend to agree with Mr. Tarazi's overall characterization of the purpose behind the flag," thereby adopting that characterization as his own. Plaintiff's endorsement that the Flag's purpose was directly related to sexual orientation or gender identity in the curriculum context supports the Board's finding that the display was not merely an incidental reference within the meaning of H.B. 8 and Policy 5780.01.

The Ohio Social Studies Model Curriculum for American History that Plaintiff himself attached to his February 2, 2026 email as justification for the Flag contains explicit references to LGBTQ+ rights and the Gay Liberation Movement as substantive curriculum content, including a reference to the Stonewall Riots and the resulting organized effort for full inclusion in public life and institutions. The presence of this explicit curriculum content in the very document Plaintiff submitted to justify the Flag's display demonstrates that sexual orientation and gender ideology are substantive curriculum topics in the courses Plaintiff teaches, and that the Flag's display in this curricular context goes beyond an incidental reference within the meaning of H.B. 8 and Board Policy 5780.01.

Defendants have requested in discovery the specific classroom materials, lesson plans, and instructional records relating to whether and how Plaintiff addressed LGBTQ+ rights and the

Gay Liberation Movement in his instruction, including whether those topics were taught in connection with the display of the Flag. That discovery is pending.

The Board's determination is reflected in the official approved minutes of the February 25, 2026 Board meeting, approved at the March 25, 2026 Regular Board Meeting. Those minutes record the motion as: "Motion to determine if poster constitutes 'sexuality content' as defined by LM Policy 5780.01 (Parents' Bill of Rights)," with a final resolution of Motion Carries 4–1 (Yes: Horvath, Bullock, Wallace, Smith; No: Siebert). The approved minutes are the official legal record of the Board's action and confirm that the Board's vote was a determination under Policy 5780.01, not a freestanding order of removal, and that removal was the procedural consequence of that determination because the required parental notification and opt-out procedures had not been completed.

**INTERROGATORY NO. 6:**

*State the basis for any contention that the Hate Has No Home Here Flag constituted school-sponsored expression bearing the imprimatur of the school that is supervised by faculty members and designed to impart particular knowledge to the students.*

**Response:** Defendants contend that the Flag bears the characteristics of school-supervised expression subject to legitimate pedagogical oversight, and of speech made by a public employee pursuant to his official duties. Plaintiff's own submissions and statements provide the most direct support for this characterization. First, the Flag was displayed by a teacher acting in his official capacity in his assigned classroom, in a prominent student-facing location, continuously over approximately four years , creating the sustained appearance of institutional endorsement. A display maintained in a teacher's classroom throughout an entire school career is not personal expression cordoned off from the school's educational mission; it is part of the environment the teacher creates in his official role. Second, and most significantly, Plaintiff himself directly connected the Flag to more than twenty specific curriculum standards across American History and AP European History, stating in his February 2, 2026 email that the Flag was "especially applicable" to each of those standards. These included standards addressing Reconstruction and Institutionalized Racism, the Civil Rights Movement, Fascism and Totalitarianism, the Holocaust, 20th Century Feminism, Post-War Nationalism and Ethnic Conflict, and other substantive curricular content. A teacher who affirmatively identifies a classroom display as especially applicable to more than twenty curriculum standards is not displaying personal expression bearing no connection to the educational mission , he is, by his own characterization, using that display in direct connection with the school's instructional program. Third, the Ohio Social Studies Model Curriculum for American History that Plaintiff himself submitted as justification for the Flag contains explicit substantive references to LGBTQ+ rights and the Gay Liberation Movement as curriculum content. The Flag's display in this curricular context, expressly tied by Plaintiff to curriculum standards addressing those topics, demonstrates that the subject matter of the Flag's imagery is not peripheral to the courses Plaintiff teaches but central to them. Fourth, in his February 9, 2026 email, Plaintiff endorsed Board counsel's characterization that one purpose of the Flag was "Supporting aspects of the social studies curriculum, including topics that may involve sexual orientation or gender identity in historical context." Plaintiff's own acknowledgment that the Flag served a curriculum-supporting function is directly relevant to whether it constituted school-supervised expression designed to impart

particular knowledge.  The Board's determination that the display implicates H.B. 8 and Policy 5780.01 constitutes a legitimate pedagogical and legal justification for the Board's action.

**INTERROGATORY NO. 7:**

*State the basis for any contention the Hate Has No Home Here Flag is related to the selection of books, method of instruction, or other activities supervised by faculty members.*

**Objection:** Defendants object to this Interrogatory as vague and ambiguous.

**Response subject to objection:** Plaintiff represented in his own February 2, 2026 written communication that the Flag supported aspects of the social studies curriculum, and attached the Ohio Social Studies Model Curriculum for American History, the AP Euro Course at a Glance, and the CollegeBoard's What AP Stands For document, identifying more than twenty specific content standards across American History and AP European History to which he stated the Flag was "especially applicable." The Ohio Model Curriculum document Plaintiff himself submitted contains explicit references to LGBTQ+ rights and the Gay Liberation Movement as substantive curriculum content. These are Plaintiff's own representations and submissions and are part of the record. Defendants have requested in discovery Plaintiff's classroom instructional materials relating to these curriculum topics, and that discovery is pending.

**INTERROGATORY NO. 8:**

*Describe the District's policies and practices for teacher displays on classroom walls and desks.*

**Response:** The District's longstanding practice has been to afford teachers considerable latitude in personalizing their classroom environments, including displays of personal items, sports team flags, motivational posters, family photographs, and similar materials. That latitude is defined by applicable Board policy, which collectively establishes both the scope of teacher flexibility and the procedural requirements that apply when certain content is presented in a classroom setting.

Board Policy 5780.01 (Parents' Bill of Rights), adopted October 28, 2025, is the primary policy governing classroom displays that implicate parental rights. Under that policy, teachers may display a wide range of materials in their classrooms. Where a display constitutes "sexuality content" , defined as "any oral or written instruction, presentation, image, or description of sexual concepts or gender ideology provided in a classroom setting" , the District is required to provide parental notification and afford parents the opportunity to review the material and request that their student be excused and provided an alternative assignment. The policy expressly exempts "incidental references to sexual concepts or gender ideology occurring outside of formal instruction or presentations on such topics." Importantly, Board Policy 5780.01 does not prohibit any specific viewpoint, symbol, or message; it imposes a procedural compliance requirement when a display meets the definition of sexuality content under the totality of the circumstances.

Board Policy 5517.01 (Bullying), adopted October 28, 2025, reflects the District's affirmative commitment to providing "a safe, positive, productive, and nurturing educational environment for all of its students" and prohibits harassment, intimidation, and bullying in all forms. This policy is directly consistent with the general anti-hate, anti-bullying message conveyed by the phrase "Hate Has No Home Here." The District's position is that its commitment to a safe and inclusive environment for all students is not in dispute and is affirmatively supported by its own

policies. The Board's determination regarding the Flag was directed solely at the procedural compliance question under Policy 5780.01 , whether the specific imagery on the Flag, under the totality of the circumstances, constituted sexuality content requiring parental notification and opt-out procedures , and was not directed at the Flag's anti-bullying message, which the District endorses.

Board Policy 5780 (Student/Parent Rights), adopted October 28, 2025, recognizes students' rights to equal access to the educational program and certain constitutional rights appropriate for the school environment, and establishes parents' right to inspect instructional materials used as part of the educational curriculum.

Board Policies 2105 (Mission of the District) and 2110 (Statement of Philosophy), adopted October 28, 2025, reflect the District's commitment to fostering citizenship, scholarship, and academic achievement and to respecting "the dignity and worth of the individual" , values consistent with the District's anti-bullying stance and the general message of inclusion conveyed by the Flag's wording.

The District's practices regarding classroom displays are further reflected in documents produced in response to Plaintiff's Requests for Production of Documents, including board meeting minutes, policy documents, and related communications.

**INTERROGATORY NO. 9:**

*State the basis for any contention that the Hate Has No Home Here Flag actually affected the District's interest in providing services efficiently, including any detrimental impacts on close working relationships, any undermining of legitimate goals of the District; and any impact on the performance of Plaintiff's duties.*

**Objection:** Defendants object to this Interrogatory as vague and ambiguous. Defendants further object to the extent it assumes Defendants have made a contention regarding disruption to District operations as the basis for the Board's decision, which was grounded in the application of Board Policy 5780.01 and H.B. 8, not on disruption grounds.

**Response subject to objection:** The Board's determination that the Flag constitutes "sexuality content" under Board Policy 5780.01 , and the resulting requirement that the Flag not be displayed pending completion of the applicable parental notification and opt-out procedures , was not based on a finding of actual disruption to District operations or to Plaintiff's performance of his duties. The Board's determination was grounded in the application of Board Policy 5780.01 and H.B. 8 to the Flag under the totality of the circumstances. Defendants acknowledge that the matters arising from this dispute, including Board deliberations, media inquiries, community communications, and this litigation, have required significant time and resources from District staff. However, this operational impact is a consequence of the dispute and litigation, not the basis for the Board's decision.

**INTERROGATORY NO. 10:**

*State the basis for Defendants' conclusion that the Superintendent was incorrect when she wrote that she did not believe a reasonable observer would conclude the Hate Has No Home Here Flag constituted Sexual Content.*

**Response:** Defendants do not contend that the Superintendent was incorrect in her professional assessment. The Superintendent provided her good-faith administrative judgment as to how a reasonable observer might perceive the Flag in her role as an administrator. The Board, as the governing body with final authority over policy implementation under Board Policy 5780.01 and H.B. 8, exercised its independent statutory authority to make the ultimate determination regarding whether the Flag constituted sexuality content under the totality of the circumstances. The Board's determination does not constitute a finding that the Superintendent's assessment was wrong, but rather reflects the Board's separate and independent policy and legal judgment as the entity vested with that final decision-making authority under Ohio law. The Superintendent herself acknowledged in her February 3, 2026 communication that the next step under the display guidelines was a Board decision as to how to move forward.

Moreover, the Board's determination was informed, in part, by Plaintiff's own submissions, including the Ohio Model Curriculum document Plaintiff himself attached to his February 2, 2026 email, which contains explicit substantive references to LGBTQ+ rights and the Gay Liberation Movement as curriculum content, information that bears directly on the totality of circumstances analysis and that supports the Board's conclusion that the display was not merely incidental. The Board under the policy and HB8 has the final judgment call regarding the applicability of 5780.01.

### INTERROGATORY NO. 11:

*State the basis for any contention that the message conveyed on the Hate Has No Home Here Flag related to matters of political, social, or other concern to the community.*

**Objection:** Defendants object to this Interrogatory as vague and ambiguous as to which party is alleged to be making this contention. To the extent this Interrogatory is directed at Defendants, Defendants note that the Board's position is that the Flag was classroom content subject to Board policy review under H.B. 8 and Board Policy 5780.01, not a statement by a public employee on a matter of public concern in the First Amendment sense. The Board does not concede that any community interest in the Flag's message transforms it from regulated classroom content into protected public employee speech.

**Response subject to objection:** To the extent the Flag's message touched on matters of community concern, the Board's deliberations and the public response to the Board's decision, including community emails, media coverage, and public comment at Board meetings, reflect that the Flag's imagery was perceived by community members as conveying positions on contested social issues. This community response is reflected in the public record of Board meetings and in documents produced in response to Plaintiff's Requests for Production of Documents.

### INTERROGATORY NO. 12:

*Describe any way in which the Hate Has No Home Here Flag was part of Plaintiff's methodology of instruction or was used to instruct students or impart particular substantive knowledge on curricular matters.*

**Response:** See the detailed response to interrogatories 5 and 6 above as responsive to this same question.

**INTERROGATORY NO. 13:**

*Describe all classroom displays by teachers that have been removed from 2021 to the present and provide the reason for the removal.*

**Objection:** Defendants object to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information about all individual classroom display changes made by any teacher in the District from 2021 to the present, including routine changes made at individual teacher discretion for personal or aesthetic reasons unrelated to any Board action or policy.

**Response subject to objection:** The only classroom display removed as a result of formal Board action or formal action pursuant to Board Policy 5780.01 from 2021 to the present is the Hate Has No Home Here Flag at issue in this litigation. As reflected in the official approved minutes of the February 25, 2026 Board meeting, the Board voted 4–1 to determine that the Flag constitutes "sexuality content" as defined by Board Policy 5780.01 (Parents' Bill of Rights). Because the parental notification and opt-out procedures required by H.B. 8 and Policy 5780.01 had not been completed, the Flag could not remain displayed pending compliance with those procedures. With respect to safe space rainbow stickers that had been displayed in certain classrooms prior to the summer of 2023: Board President Wallace recalls that prior to him joining the board, he observed safe space stickers on certain rooms and questioned why other classrooms were unsafe. Certain stickers were then removed after that but the details of who or why is unclear. Separately, Mr. Wallace questioned the lack of applicability of several items in a classroom his child was attending to the curriculum. No formal action was taken on any of them. At a subsequent point, it is believed the teacher took down one of the posters Mr. Wallace had questioned. Individual teachers routinely add, remove, and change their own classroom displays for a variety of personal and professional reasons not subject to formal District tracking or documentation.

**INTERROGATORY NO. 14:**

*Describe all materials removed from classrooms pursuant to the Board Policy 5780.01.*

**Response:** The only material removed from a classroom as a result of the formal Board Policy 5780.01 process is the Hate Has No Home Here Flag at issue in this litigation. Teachers throughout the District may independently comply with Board Policy 5780.01 by providing required parental notification and opt-out opportunities for applicable content, or by choosing not to display or present certain content, without those decisions rising to the level of formal Board action or District-directed removal. No other classroom display has been formally removed pursuant to a Board action under Policy 5780.01.

