

| Book | Policy Manual |
| --- | --- |
| Section | 1000 Administration |
| Title | NONDISCRIMINATION, EQUAL EMPLOYMENT OPPORTUNITY, AND ANTI-HARASSMENT |
| Code | po1422 |
| Status | Active |
| Adopted | October 28, 2025 |
| Last Revised | February 25, 2026 |

## 1422 - NONDISCRIMINATION, EQUAL EMPLOYMENT OPPORTUNITY, AND ANTI-HARASSMENT

### NONDISCRIMINATION

The Board of Education (hereinafter referred to as "the Board" or "the District") does not discriminate based on a person's Protected Class(es) in its education programs or activities and does not tolerate unlawful harassment. Protected Classes (which may also be referred to as Protected Categories) include race, color, national origin, sex (including pregnancy, childbirth, and related conditions), disability, age, religion, military status, ancestry, genetic information, or any other legally protected characteristics. The Board is an equal opportunity employer.

The Board is committed to providing a work environment that is free from Prohibited Conduct, responding promptly and effectively when it has knowledge of conduct that reasonably may constitute Prohibited Conduct, and addressing Prohibited Conduct in its education programs or activities. This commitment applies to all District operations, and this policy applies to Prohibited Conduct occurring within or as a part of the District's education programs and activities, whether on school property or at another location during an activity sponsored by the Board.

Persons who commit Prohibited Conduct are subject to the full range of disciplinary sanctions set forth in this policy.

The Board will provide persons who have experienced Prohibited Conduct ongoing remedies as reasonably necessary to restore or preserve access to the District's education programs or activities.

All school employees share responsibility for avoiding, discouraging, and reporting any form of Prohibited Conduct.

The Board will take immediate action to address the following prohibited acts:

A. Retaliating against a person who has made a report or filed a complaint alleging Prohibited Conduct, or has participated in the below-described grievance procedures.

B. Filing a malicious or knowingly false report or complaint of Prohibited Conduct.

C. Disregarding, failing to appropriately address, or delaying action to appropriately address allegations of Prohibited Conduct when responsibility for reporting and/or investigating such charges comprises part of

1:26-cv-00351 PL0017

one's administrative/supervisory duties.

**Definitions:**

Words used in this policy shall have those meanings defined herein; words not defined herein shall be construed according to their plain and ordinary meanings.

**Bullying** means: any unwanted and repeated written, verbal, or physical behavior, including any threatening, insulting, or dehumanizing gesture, by an adult, that is sufficiently severe or pervasive to create an intimidating, hostile, or offensive work environment; or unreasonably interfere with the individual's work performance or participation. It may involve: (a) threats; (b) intimidation; (c) stalking; (d) cyberstalking; (e) cyberbullying; (f) physical violence; (g) theft; (h) sexual, religious, or racial harassment; (i) public humiliation; or (j) destruction of property. Bullying rises to the level of unlawful harassment when one (1) or more persons systematically and chronically inflict physical hurt or psychological distress on one (1) or more employees and that bullying is based upon one (1) or more Protected Classes, that is, characteristics that are protected by Federal and/or State civil rights laws. Ordinary teasing, horseplay, argument, and peer conflict do not constitute bullying for purposes of this policy.

**Complainant** means:

A. an employee who is alleged to have been subjected to conduct that could constitute Prohibited Conduct; or

B. a person other than an employee who is alleged to have been subjected to conduct that could constitute Prohibited Conduct and who was participating or attempting to participate in the District's education programs or activities at the time of the alleged Prohibited Conduct.

**Complaint** means: an oral or written request to the District that objectively can be understood as a request for the District to investigate and make a determination about alleged Prohibited Conduct.

**Day(s)**: Unless expressly stated otherwise, the term "day" or "days" as used in this policy means business day(s) (i.e., days that the Board office is open for normal operating hours, Monday–Friday, excluding State-recognized holidays).

**Disciplinary sanctions** means: consequences imposed on a respondent following a determination that the respondent engaged in Prohibited Conduct.

**Education programs or activities** refers to: all the District's operations including, but not limited to, in-person and online/remote educational instruction, employment, extracurricular activities, athletics, performances, and community engagement and outreach programs. The term applies to all programs and activities operated by the Board on school grounds or on other property owned or occupied by the Board. It also includes events and circumstances that take place off school property/grounds but over which the District asserts disciplinary authority (e.g., at off-campus activities sponsored by the Board).

**Exculpatory evidence** means: evidence that is favorable to a respondent because it helps excuse, justify, or absolve a respondent of alleged wrongdoing and tends to establish that a respondent did not engage in Prohibited Conduct.

**Genetic information** means: information about: (a) an individual's genetic tests; (b) the genetic tests of that individual's family members; (c) the manifestation of disease or disorder in family members of the individual (i.e., family medical history); (d) an individual's request for, or receipt of, genetic services, or the participation in clinical research that includes genetic services by the individual or a family member of the individual; or (e) the genetic information of a fetus carried by an individual or a pregnant woman who is a family member of the individual and the genetic information of an embryo legally held by an individual or family member using assistive reproductive technology.

**Harassment** means: any threatening, insulting, or dehumanizing gesture, use of technology, or written, verbal, or physical conduct directed against an employee that (a) places the employee in reasonable fear of harm to their person or damage to their property; (b) has the effect of substantially interfering with the employee's work performance; or (c) has the effect of substantially disrupting the orderly operation of a school. Each of the

1:26-cv-00351 PL0018

following types of harassment involves unwelcome physical, verbal, or nonverbal conduct that is based upon an individual's protected characteristic(s) and has the purpose or effect of interfering with the individual's work performance or creating an intimidating, hostile, or offensive work environment.

A. **Age Harassment** means: harassment based on negative perceptions about older workers. It also includes harassment based on stereotypes about older workers, even if they are not motivated by animus, such as pressuring an older employee to transfer to a job that is less technology-focused because of the perception that older workers are not well-suited to such work or encouraging an older employee to retire.

B. **Disability Harassment** means: harassment based upon a person's disability, and includes harassment based upon stereotypes about individuals with disabilities in general or about an individual's particular disability. It also includes harassment based on traits or characteristics linked to an individual's disability, such as how the person speaks, looks, or moves. For example, negative comments about an individual's speech patterns, movement, physical impairments, or defects/appearances, or the like. Disability-based harassment includes: (a) harassment because an individual requests or receives reasonable accommodation; (b) harassment because an individual is regarded as having an impairment, even if the individual does not have an actual disability or a record of disability; (c) harassment because an individual has a record of a disability, even if the individual currently does not have a disability; and (d) harassment based on the disability of an individual with whom the employee is associated. Finally, disability-based harassment may occur where conduct is directed at or pertains to a person's genetic information.

C. **National Origin/Ancestry Harassment** means: harassment due to a person's (or their ancestor's) place of origin. Such harassing conduct can include ethnic slurs or epithets, derogatory comments about individuals of a particular nationality, and use of stereotypes about a person's national origin. Additionally, it can include harassment regarding traits or characteristics linked to an individual's national origin, such as physical characteristics, ethnic or cultural characteristics or customs (e.g., surnames, attire, or diet), or linguistic characteristics (e.g., a person's manner of speaking, non-English language accent, or a lack of fluency in English).

D. **Race/Color Harassment** means: unwelcome physical, verbal, or nonverbal conduct that is based upon an individual's race or color and has the purpose or effect of interfering with the individual's work performance or creating an intimidating, hostile, or offensive work environment. Such harassment may occur where conduct is directed at the characteristics of a person's race or color, such as racial slurs, nicknames implying stereotypes, epithets, and/or negative references relative to racial customs.

E. **Religious (Creed) Harassment** means: harassment based on a person's surname, religion (including atheism or lack of religious belief), religious traditions and practices, or religious dress/clothing, and includes making offensive comments about the same. It also includes religious slurs or epithets, harassing conduct based on religious stereotypes, and harassment associated with a person's request for and/or receipt of religious accommodation. Religious harassment also involves explicitly or implicitly coercing an employee to engage in religious practices at work.

F. **Sexual Harassment** means (for purposes of this policy and consistent with Title VII of the Civil Rights Act of 1964): unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when: (a) submission to such conduct is made either implicitly or explicitly a term or condition of an individual's employment; (b) submission or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or (c) such conduct has the purpose or effect of interfering with the individual's work performance or creating an intimidating, hostile, or offensive working environment. Sexual harassment may involve the behavior of a person of any gender against a person of the same or another gender.

   1. Sexual Harassment covered by Policy 2266 - Nondiscrimination on the Basis of Sex in Education Programs or Activities is not included in this policy. Allegations of such conduct shall be addressed solely by Policy 2266.

   2. Prohibited acts that constitute sexual harassment under this policy may take a variety of forms. Examples of the kinds of conduct that may constitute sexual harassment include, but are not limited to:

      a. Conduct of a sexualized nature, such as unwanted conduct expressing sexual attraction or

1:26-cv-00351 PL0019

involving sexual activity (e.g., unwelcome sexual propositions, invitations, solicitations, and flirtations; unwanted physical and/or sexual contact, including unwelcome and inappropriate touching, patting, or pinching and obscene gestures.

b. Sexual attention or sexual coercion, such as demands or pressure for sexual favors (e.g., threats or insinuations that a person's employment, wages, or other conditions of employment may be adversely affected by not submitting to sexual advances; giving unwelcome personal gifts such as lingerie that suggest the desire for a romantic relationship; leering or staring at someone in a sexual way, such as staring at a person's breasts, buttocks, or groin).

c. Rape, sexual assault, or other acts of sexual violence.

d. Discussing or displaying visual depictions of sex acts or sexual remarks (e.g., unwelcome verbal expressions of a sexual nature, including graphic sexual commentaries about a person's body, dress, appearance, or sexual activities; the unwelcome use of sexually degrading language, profanity, jokes, or innuendoes; unwelcome suggestive or insulting sounds or whistles; obscene telephone calls, texts, etc.; sexually suggestive objects, pictures, graffiti, videos, posters, audio recordings, or literature placed in the work environment; asking about, or telling about, sexual fantasies, sexual preferences, or sexual activities; speculations about a person's sexual activities or sexual history, or remarks about one's own sexual activities or sexual history).

e. A consensual sexual relationship where such relationship leads to favoritism of a subordinate employee with whom the superior is sexually involved and where such favoritism adversely affects other employees or otherwise creates a hostile work environment.

f. Verbal, nonverbal, or physical aggression, intimidation, or hostility based on sex or sex-stereotyping that does not involve conduct of a sexual nature.

g. Non-sexual conduct based on sex, such as sex-based epithets; sexist comments (such as remarks that women do not belong in management or that men do not belong in the nursing profession); or facially sex-neutral offensive conduct motivated by sex (such as bullying directed toward employees of one sex).

h. Harassment based on pregnancy, childbirth, or related medical condition, which may include issues pertaining to lactation, using or not using contraception, or deciding whether to have, or not to have, an abortion.

Not all behavior with sexual connotations constitutes unlawful sexual harassment. Sex-based or gender-based conduct must be objectively offensive (a reasonable person would find it hostile or abusive), subjectively offensive (the complainant actually perceived it as abusive), and either sufficiently severe (a single extremely serious incident) or pervasive (a pattern of behavior), such that it adversely affects, limits, or denies an individual's employment or creates a hostile or abusive employment environment.

**Inculpatory evidence** means: evidence that links a respondent to alleged wrongdoing and tends to establish that a respondent engaged in Prohibited Conduct (i.e., has culpability).

**Military status** means: a person's past, current, or future membership, service, or obligation in a uniformed service (e.g., Army, Marine Corps, Navy, Air Force, Space Force, Coast Guard, Public Health Service Commissioned Corps, and National Oceanic and Atmospheric Administration Commissioned Officer Corps). Service in the uniformed services also means the performance of duty, on a voluntary or involuntary basis, in a uniformed service, under competent authority, and includes active duty, active duty for training, initial active duty for training, inactive duty for training, full-time National Guard duty, and performance of duty or training by a member of the Ohio organized militia. It further includes the period of time for which a person is absent from employment for the purpose of an examination to determine the fitness of the person to perform any such duty as listed above.

**Party** means: a complainant or respondent.

**Pregnancy, childbirth, or related medical conditions** means:

1:26-cv-00351 PL0020

A.  "Pregnancy" and "childbirth" refer to the pregnancy or childbirth of a specific employee and include, but are not limited to, current pregnancy; past pregnancy; potential or intended pregnancy (which can include infertility, fertility treatment, and the use of contraception); labor; and childbirth (including vaginal and cesarean delivery).

B.  "Related medical conditions" are medical conditions relating to the pregnancy or childbirth of a specific employee, and may include termination of pregnancy, including via miscarriage, stillbirth, or abortion; ectopic pregnancy; preterm labor; pelvic prolapse; nerve injuries; cesarean or perineal wound infection; maternal cardiometabolic disease; gestational diabetes; preeclampsia; HELLP (hemolysis, elevated liver enzymes and low platelets) syndrome; hyperemesis gravidarum; anemia; endometriosis; sciatica; lumbar lordosis; carpal tunnel syndrome; chronic migraines; dehydration; hemorrhoids; nausea or vomiting; edema of the legs, ankles, feet, or fingers; high blood pressure; infection; antenatal (during pregnancy) anxiety, depression, or psychosis; postpartum depression, anxiety, or psychosis; frequent urination; incontinence; loss of balance; vision changes; varicose veins; changes in hormone levels; vaginal bleeding; menstruation; and lactation and conditions related to lactation, such as low milk supply, engorgement, plugged ducts, mastitis, or fungal infections. The preceding list of related medical conditions is not exhaustive.

**Prohibited Conduct** means: unlawful discrimination or harassment based on a person's Protected Class(es) or retaliation. Such misconduct involves a violation of Federal and/or State civil rights laws.

**Relevant** means: related to the allegations of Prohibited Conduct under investigation as part of the Board's grievance procedures. Questions are relevant when they seek evidence that may aid in showing whether the alleged Prohibited Conduct occurred, and evidence is relevant when it may aid a decisionmaker in determining whether the alleged Prohibited Conduct occurred.

**Remedies** means: measures provided, as appropriate, to a complainant or any other person the District identifies as having had their equal access to the District's education programs or activities limited or denied by Prohibited Conduct. These measures are provided to restore or preserve that person's access to the District's education program or activity after the District determines that Prohibited Conduct occurred.

**Respondent** means: a person who is alleged to have engaged in Prohibited Conduct.

**Retaliation** means: intimidation, threats, coercion, or discrimination against any person by the District, a student, a Board employee, or any other person authorized by the Board to provide aid, benefit, or service under the District's education programs or activities, for the purpose of interfering with any right or privilege secured by Federal or State law, or because the person has reported information, made a complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under applicable Federal or State laws or regulations.

**School District community** means: students and Board employees (i.e., administrators and professional/classified staff), as well as Board members, agents, volunteers, contractors, or other persons subject to the control and supervision of the Board.

**Supportive measures** means: non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, without fee or charge to the complainant or the respondent before or after making a report or filing a complaint. Such measures are designed to restore or preserve that party's access to the District's education programs or activities without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the District's educational environment or deter Prohibited Conduct. Supportive measures may include modifications of work schedules, mutual restrictions of contact between the parties, changes in work locations, leaves of absence, increased security and monitoring of certain work settings, training related to Prohibited Conduct, referral to Employee Assistance Program, and other similar measures.

**Third Parties** means: guests and/or visitors on District property (e.g., visiting speakers, participants on opposing athletic teams, parents), vendors doing business with or seeking to do business with the Board, and other individuals who come in contact with members of the School District community at school-related events/activities (whether on or off District property).

**Pregnancy, Childbirth, and Related Medical Conditions**

1:26-cv-00351 PL0021

The Board will not discriminate against an employee based on the person's current pregnancy, potential or intent to become pregnant, past pregnancy, or medical condition related to pregnancy or childbirth, or because the person uses birth control, or has had or not had an abortion.

Additionally, the Board will provide a reasonable accommodation to an employee's known limitation related to pregnancy, childbirth, or a related medical condition, unless the accommodation will cause the District undue hardship.

The Board will treat pregnancy, childbirth, and related medical conditions as any other temporary medical conditions for all job-related purposes, including commencement, duration, and extensions of leave; accrual of seniority and any other benefit or service; reinstatement; and under any fringe benefit offered to employees by virtue of employment.

The Board will provide reasonable break time for an employee to express breast milk while at work for the first year after the employee's child's birth. The Board will provide the employee with a space, other than a bathroom, that is clean, shielded from view, free from intrusion from coworkers and the public, and which the employee can use as needed to express breast milk. See Board Policy 6700 – Fair Labor Standards Act.

**Nondiscrimination Based on Employee's Genetic Information**

The Board prohibits discrimination on the basis of genetic information in all aspects of employment, including hiring, firing, compensation, job assignments, promotions, layoffs, training, fringe benefits, or any other terms, conditions, or privileges of employment. The Board also does not limit, segregate, or classify employees in any way that would deprive or tend to deprive them of employment opportunities or otherwise adversely affect the status of an employee as an employee, based on genetic information. Harassment of a person because of the individual's genetic information is also prohibited. Likewise, retaliation against an applicant or employee for engaging in protected activity is prohibited.

In accordance with the Genetic Information Nondiscrimination Act ("GINA"), the Board shall not request, require, or purchase genetic information of employees, their family members, or applicants for employment. Further, in compliance with GINA, employees are directed not to provide any genetic information, including the individual's family medical history, in response to necessary requests for medical information, with the exception that family medical history may be acquired as part of the certification process for FMLA leave, when an employee is asking for leave to care for an immediate family member with a serious health condition. Applicants for employment are directed not to provide any genetic information, including the individual's family medical history, in response to requests for medical information as part of the District's application process.

The District recognizes that genetic information may be acquired through commercially and publicly available documents like newspapers, books, magazines, periodicals, television shows, or the Internet. The District prohibits, however, its employees from searching such sources with the intent of finding or obtaining genetic information or accessing sources from which they are likely to acquire genetic information.

If the District either legally and/or inadvertently receives genetic information about an employee or applicant for employment from the employee, applicant for employment, or a medical provider, it shall be treated as a confidential medical record in accordance with law.

The District Compliance Officer (see below) shall be responsible for overseeing the District's compliance with applicable Federal regulations and promptly dealing with any inquiries or complaints. The District Compliance Office or designee shall also verify that proper notice of nondiscrimination for Title II of the Genetic Information Nondiscrimination Act of 2008 is provided to staff members, and that all District requests for health-related information (e.g., to support an employee's request for reasonable accommodation under the Americans with Disabilities Act ("ADA") or a request for sick leave) is accompanied by a written warning that directs the employee or health care provider not to collect or provide genetic information. The warning shall read as follows:

The Genetic Information Nondiscrimination Act of 2008 ("GINA") prohibits employers and other entities covered by GINA Title II, including the Board of Education, from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by law. To comply with this law, do not provide any genetic information when responding to this request for medical information (unless the request pertains to a request for FMLA leave for purposes of caring for an immediate family member with a serious health condition).

1:26-cv-00351 PL0022

"Genetic information," as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic test, the fact that an individual or an individual's family member sought or received genetic services or participated in clinical research that includes genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

The District offers health services, including a wellness program. Participation in the services/program is voluntary. Genetic information (such as family medical history) may be obtained as part of an individual's participation in the service/program. If that occurs, individual genetic information may be provided to the individual receiving the services and to the person's health services providers, but only genetic information in aggregate form will be provided to the Board.

**District Compliance Officer(s)**

The Board designates and authorizes the following individual(s) to coordinate its efforts to comply with the Board's responsibilities under Federal and State laws that prohibit discrimination, including harassment, based on Protected Classes and retaliation (also known as "Civil Rights Coordinator(s)" or "Anti-Harassment Compliance Officer(s)") (hereinafter referred to as the "District Compliance Officer(s)" or "CO(s)"):

Mike Malone
Executive Director of Human Resources
95 E US 22-3
Maineville, OH 45039
mmalone@lmsdoh.org
(513) 899-2264

Jamie Miles
Executive Director of Student Services
95 E US 22-3
Maineville, OH 45039
(513) 899-2264

The District Compliance Officer may delegate specific duties to one (1) or more designees.

The contact information concerning the District Compliance Officer(s) will be published on the School District's website.

The District Compliance Officer(s) shall report directly to the Superintendent except when the Superintendent is a party to a complaint (i.e., either the complainant or the respondent). Under such circumstances, the CO(s) shall report directly to the Board's Legal Counsel until the matter in which the Superintendent is a party is concluded.

Questions about this policy should be directed to the District Compliance Officer(s).

The CO(s) is/are responsible for coordinating the District's efforts to comply with applicable Federal and State laws and regulations, including the District's duty to address in a prompt and equitable manner any inquiries or complaints regarding discrimination, harassment, retaliation, or denial of equal opportunity/access. The CO(s) shall also verify that proper notice of nondiscrimination for Title II of the Americans with Disabilities Act (as amended), Title VI and Title VII of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973 (as amended), Genetic Information Nondiscrimination Act ("GINA"), and the Age Discrimination in Employment Act of 1975 is provided to staff members and the general public. Copies of the laws and regulations listed above are available upon request from the CO(s).

The CO(s) will be available during regular work hours to discuss concerns related to Prohibited Conduct, to assist employees, other members of the District community, and third parties who seek support or advice when informing another individual about Prohibited Conduct, including unwelcome conduct, or to intercede informally on behalf of the individual in those instances where concerns have not resulted in the filing of a formal complaint and where all parties are in agreement to participate in an informal process.

The CO(s) shall monitor the District's education programs and activities for barriers to reporting information about conduct that reasonably may constitute Prohibited Conduct pursuant to Federal and/or State laws that prohibit

1:26-cv-00351 PL0023

discrimination/harassment based on the basis of a Protected Class/Category and retaliation, and take steps reasonably calculated to address such barriers.

**Notice of Nondiscrimination**

The Superintendent shall provide a notice of nondiscrimination to students, parents, guardians, or other authorized legal representatives of elementary and secondary students; employees; applicants for admission and employment; and all unions and professional organizations holding collective bargaining or professional agreements with the Board. Specifically, the Superintendent shall post the notice of nondiscrimination on the District's website and in each handbook, catalog, announcement, bulletin, and application form that it makes available to the persons listed above, or which are otherwise used in connection with the recruitment of employees.

**NOTIFICATION/REPORTS OF PROHIBITED CONDUCT**

Any person may provide information to the CO(s) concerning conduct that reasonably may constitute Prohibited Conduct. Such information may be submitted in person, by mail, by telephone, or by electronic mail using the CO's(s') published contact information, or by any other means (oral or written) that results in the CO(s) receiving the information. Information may be provided at any time (including during non-work hours).

All Board employees are required to notify the CO(s) of conduct that reasonably may constitute Prohibited Conduct. For the Board to fulfill its responsibilities under applicable Federal and/or State laws, if a Board employee has knowledge of conduct that reasonably may constitute Prohibited Conduct, the Board employee must notify the/a CO within two (2) days of learning the information or receiving the report. The Board employee must also comply with mandatory reporting responsibilities pursuant to R.C. 2151.412 and Policy 8462 – Student Abuse and Neglect, if applicable. If the Board employee's knowledge about the alleged Prohibited Conduct is based on another individual bringing the information to the Board employee's attention and the reporting individual submitted a written notification/report or complaint to the Board employee, the Board employee must provide the written notification/report or complaint to the CO.

Notification can be provided orally or in writing and should be as specific as possible. The person making the notification/report should, to the extent known, identify the alleged victim(s), perpetrator(s), and witness(es), and describe in detail what occurred, including date(s), time(s), and location(s).

If a notification/report or complaint involves allegations of Prohibited Conduct by or involving the CO, the person making the report (i.e., providing the notification or filing the complaint) should submit it to the Superintendent or another Board employee who, in turn, will notify the Superintendent of the report/complaint. The Superintendent will then serve in place of the CO for purposes of addressing that report of Prohibited Conduct.

When a Board employee notifies the CO of suspected Prohibited Conduct, the employee is required to report all known details about the alleged Prohibited Conduct including: (1) the name of the alleged respondent(s); (2) the person who experienced the alleged Prohibited Conduct (i.e., the complainant); (3) other persons involved in the alleged Prohibited Conduct (e.g., witnesses); and (4) any other relevant facts, such as date, time, and location. Failure to provide such notification may result in discipline, up to and including suspension or termination of employment.

Any allegations of misconduct not involving Prohibited Conduct as defined in this policy will be addressed through the procedures outlined in other Board policies and/or administrative guidelines, the applicable Student Code of Conduct, applicable collective bargaining agreement, and/or Employee/Administrator Handbook.

When a notification/report or complaint of Prohibited Conduct is made, the CO shall promptly (i.e., within two (2) days of the CO's receipt of the notification/report or complaint of Prohibited Conduct) contact the purported complainant to discuss the availability of supportive measures, consider the complainant's wishes with respect to supportive measures, inform the complainant of the availability of supportive measures with or without the filing of a complaint, and explain to the complainant the process for filing a complaint. The CO is responsible for coordinating the effective implementation of supportive measures. Any supportive measures provided to the complainant or respondent shall be maintained as confidential, to the extent that maintaining such confidentiality will not impair the ability of the District to provide the supportive measures.

**GRIEVANCE PROCEDURES**

1:26-cv-00351 PL0024

**Overview:**

The Board adopts the following grievance procedures to provide for the prompt, effective, and equitable resolution of complaints made by employees, applicants, or other individuals who are participating or attempting to participate in the District's education programs or activities (i.e., members of the School District community and third parties), or by the CO, alleging any act of Prohibited Conduct.

These grievance procedures shall be used for all complaints of Prohibited Conduct, unless it involves conduct involving a student, in which case the grievance procedures set forth in Policy 2260 or Policy 5517.01 shall apply. These grievance procedures set forth the means for investigating and resolving claims involving such Prohibited Conduct; in particular, the procedures provide a method for assessing – in a prompt, effective, and equitable manner –  whether an applicable Federal or State law was violated and, if it was, how best to end the Prohibited Conduct, prevent its recurrence, and remedy its effects.

Due to the sensitivity surrounding complaints of Prohibited Conduct, timelines are flexible for initiating the grievance procedures; however, individuals are encouraged to file a complaint within thirty (30) days after the conduct occurs. Once the formal complaint process is begun, the investigation will be completed in a timely manner.

Under all circumstances, the CO shall offer and coordinate supportive measures, as appropriate, in accordance with this policy.

**Complaints:**

The following people may make a complaint of Prohibited Conduct – i.e., request that the District investigate and determine whether Prohibited Conduct occurred:

A.  A "complainant," which includes:

1. an employee of the District who is alleged to have been subjected to conduct that could constitute Prohibited Conduct; or

2. a person other than an employee of the District who is alleged to have been subjected to conduct that could constitute Prohibited Conduct at a time when that individual was participating or attempting to participate in the District's education programs or activities;

B.  An authorized legal representative with the legal right to act on behalf of a complainant;

C.  District Compliance Officer.

A person is entitled to make a complaint of unlawful harassment only if they themselves are alleged to have been subjected to the unlawful harassment, or if the CO initiates a complaint.

With respect to complaints of Prohibited Conduct other than unlawful harassment, or complaints involving allegations of retaliation, in addition to the people listed above, the following persons have a right to make a complaint:

A.  any employee of the District; or

B.  any person other than an employee who was participating or attempting to participate in the District's education programs or activities at the time of the alleged Prohibited Conduct.

The District may consolidate complaints of Prohibited Conduct against more than one (1) respondent, or by more than one (1) complainant against one (1) or more respondents, or by one (1) party against another party, when the allegations of Prohibited Conduct arise out of the same facts or circumstances. When more than one (1) complainant or more than one (1) respondent is involved, references below to a party, complainant, or respondent include the plural, as applicable.

A person may file criminal charges simultaneously with filing a complaint. A person does not need to wait until the

1:26-cv-00351 PL0025

District's internal grievance procedures are completed before filing a criminal complaint. Likewise, questions or complaints relating to alleged violations of applicable Federal or State laws may be filed with the U.S. Department of Education's Office for Civil Rights, the U.S. Department of Justice's Civil Rights Division, the U.S. Equal Employment Opportunity Commission, or the Ohio Civil Rights Commission at any time based on the underlying statutory basis for the complaint.

**Basic Requirements:**

The District will treat complainants and respondents equitably.

All persons involved with implementing the grievance procedures and any other aspects of this Policy, including the District Compliance Officer, the investigator, the decisionmaker, and the appeal decisionmaker, and the facilitator of the informal resolution process, shall be free from any conflicts of interest or bias for or against complainants or respondents generally, or an individual complainant or respondent.

The CO may serve simultaneously as an investigator and/or a decisionmaker.

If the CO does not intend to serve as the investigator/decisionmaker in a specific case, the CO shall designate one (1) or more administrators who are appropriately trained to serve in the role.

In circumstances when the CO and trained administrators do not have time/capacity to serve, or are prevented due to a conflict of interest, bias, or partiality, or other reasons impair the CO and other trained administrators from serving as an investigator/decisionmaker in a specific case, the CO shall, in consultation with and approval of the Superintendent or Board President (as appropriate), secure one (1) or more independent third parties to serve as the investigator and/or decisionmaker.

The District presumes that the respondent is not responsible for the alleged Prohibited Conduct until a determination is made at the conclusion of its grievance procedures.

Under ordinary circumstances, the Board expects to complete the major stages of the grievance procedures within the timeframe specified below:

A. **Evaluation** – The District Compliance Officer will determine whether to dismiss a complaint or investigate it within ten (10) days of receiving the complaint.

B. **Investigation** – The CO, or designated investigator/decisionmaker, shall ordinarily complete the investigation (i.e., collect relevant evidence that is not otherwise impermissible) and issue a Determination (i.e., consider the relevant and not otherwise impermissible evidence and decide whether Prohibited Conduct occurred) within twenty (20) days of the CO determining the charges require investigation.

   If, however, the CO, or designated investigator/decisionmaker, determines that the investigation is going to take longer, the CO will so notify the parties and will thereafter keep the parties informed of the status of the matter on a regular basis.

C. **Appeal –** A party filing an appeal of the CO's decision to dismiss a complaint, or the Determination, must do so within five (5) days of receiving the Dismissal or Determination.

The CO, or the Superintendent if the CO is the individual requesting an extension, may approve reasonable extensions of the preceding timeframes on a case-by-case basis for good cause with notice to the parties.

The District will take reasonable steps to protect the privacy of the parties and witnesses. These steps will not restrict the ability of the parties to present evidence or otherwise participate in the grievance procedures. The parties shall not engage in retaliation, including against witnesses.

The CO, or designated investigator/decisionmaker, shall objectively evaluate all evidence that is relevant and not otherwise impermissible, including both inculpatory and exculpatory evidence. Credibility determinations shall not be based on a person's status as a complainant, respondent, or witness.

The following types of evidence, and questions seeking such evidence, are impermissible (i.e., will not be accessed

1:26-cv-00351 PL0026

or considered, except by the District to determine whether one (1) of the exceptions listed below applies; will not be disclosed; and will not otherwise be used), regardless of whether they are relevant:

   A. evidence that is protected under a privilege recognized by Federal or State law, unless the person to whom the privilege or confidentiality is owed voluntarily waived the privilege or confidentiality; and

   B. a party's or witness's records that are made or maintained by a physician, psychologist, or other recognized professional or paraprofessional in connection with the provision of treatment to the party or witness, unless the District obtains that party's or witness's voluntary, written consent for use in its grievance procedures.

**Notice of Allegations:**

Upon initiation of the Board's grievance procedures, the District Compliance Officer shall notify the parties of the following:

   A. the Board's grievance procedures and informal resolution process associated with claims involving Prohibited Conduct;

   B. sufficient information available at the time to allow the parties to respond to the allegations, including the identities of the parties involved in the incident(s), the conduct alleged to constitute Prohibited Conduct, and the date(s) and location(s) of the alleged incident(s); and

   C. retaliation is prohibited.

Should the CO decide, at any point, to investigate allegations that are materially beyond the scope of the initial written notice, the CO will provide a supplemental written notice describing the additional allegations to be investigated.

**Dismissal of a Complaint:**

The CO may dismiss a complaint of Prohibited Conduct if:

   A. the District is unable to identify the respondent after taking reasonable steps to do so;

   B. the respondent is not participating in the District's education program or activity and is not employed by the Board;

   C. the complainant voluntarily withdraws any or all of the allegations in the complaint, the CO declines to initiate a complaint, and the District determines that, without the complainant's withdrawn allegations, the conduct that remains alleged in the complaint, if any, would not constitute Prohibited Conduct even if proven; or

   D. the District determines that the conduct alleged in the complaint, even if proven, would not constitute Prohibited Conduct. Before dismissing the complaint, the CO will make reasonable efforts to clarify the allegations with the complainant.

Upon dismissal, the CO will promptly notify, in writing, the complainant of the basis for the dismissal. If the dismissal occurs after the respondent has been notified of the allegations, the CO will also simultaneously notify, in writing, the respondent of the dismissal and the basis for the dismissal.

The CO will further notify the complainant that a dismissal may be appealed and will provide the complainant with an opportunity to appeal the dismissal of the complaint. If the dismissal occurs after the respondent has been notified of the allegations, then the CO will also notify the respondent that the dismissal may be appealed.

Dismissals may be appealed on the following bases:

   A. procedural irregularity that would change the outcome;

   B. new evidence that would change the outcome and that was not reasonably available when the dismissal

1:26-cv-00351 PL0027

was made; and

C. the CO had a conflict of interest or bias for or against complainants or respondents generally, or the individual complainant or respondent, that would change the outcome.

If the dismissal is appealed, the CO will:

A. notify the parties of any appeal, including notice of the allegations, if notice was not previously provided to the respondent;

B. implement appeal procedures equally for the parties;

C. ensure that the appeal decisionmaker did not take part in the original dismissal of the complaint;

D. ensure that the appeal decisionmaker has been trained consistent with this Policy;

E. provide the parties a reasonable and equal opportunity to make a statement in support of, or challenging, the outcome; and

F. notify the parties of the result of the appeal and the rationale for the result.

When a complaint is dismissed, the CO will, at a minimum:

A. offer supportive measures to the complainant as appropriate;

B. if the respondent has been notified of the allegations, offer supportive measures to the respondent as appropriate; and

C. take other prompt and effective steps, as appropriate, to ensure that Prohibited Conduct does not continue or recur within the District's education programs or activities.

**Informal Resolution Process:**

In lieu of resolving a complaint through the Board's formal grievance procedures, the parties may instead elect to participate in an informal resolution process. The District will not offer an informal resolution to resolve a complaint when such a process would conflict with Federal, State, or local law.

**Adding Allegations and/or Consolidating Complaints:**

If, in the course of an investigation, the District decides to investigate additional allegations of Prohibited Conduct by the respondent toward the complainant that are not included in the original Notice of Allegations or to consolidate charges raised in a different complaint involving the same respondent, the CO will notify the parties of the additional allegations.

**Investigation:**

The District will provide for an adequate, reliable, and impartial investigation of complaints.

The burden is on the District — not on the parties — to conduct an investigation that gathers sufficient evidence to determine whether Prohibited Conduct occurred.

The CO, or the designated investigator/decisionmaker, will provide an equal opportunity for the parties to present fact witnesses and other inculpatory and exculpatory evidence that are relevant and not otherwise impermissible.

The CO, or the designated investigator/decisionmaker, will review all evidence gathered through the investigation and determine what evidence is relevant and what evidence is impermissible, regardless of relevance.

**Determination of Whether Prohibited Conduct Occurred:**

1:26-cv-00351 PL0028

Following an investigation and evaluation of all relevant and not otherwise impermissible evidence, the CO or designated investigator/decisionmaker will:

A. Use the preponderance of the evidence standard of proof to determine whether Prohibited Conduct occurred. This standard of proof requires the decisionmaker to evaluate relevant and not otherwise impermissible evidence for its persuasiveness. If the decisionmaker, applying the applicable standard, is not persuaded by the relevant and not otherwise impermissible evidence that Prohibited Conduct occurred, regardless of the quantity of the evidence, the decisionmaker will not determine that Prohibited Conduct occurred.

B. Notify the parties, in writing, of the determination whether Prohibited Conduct occurred, including the rationale for such determination, and the procedures and permissible bases for the complainant and respondent to appeal.

C. Not impose discipline on a respondent for Prohibited Conduct unless there is a determination at the conclusion of the grievance procedures that the respondent engaged in Prohibited Conduct.

D. If there is a determination that Prohibited Conduct occurred, the CO will, as appropriate:

    1. coordinate the provision and implementation of remedies to a complainant and other people the District identifies as having had equal access to the District's education programs or activities limited or denied by the Prohibited Conduct;

    2. coordinate the imposition of any disciplinary sanctions on a respondent, including notification to the complainant of any such disciplinary sanctions; and

    3. take other appropriate prompt and effective steps to ensure that the Prohibited Conduct does not continue or recur within the District's education programs or activities.

E. Comply with the grievance procedures before the imposition of any disciplinary sanctions against a respondent.

F. Not discipline a party, witness, or others participating in the grievance procedures for making a false statement based solely on the determination of whether Prohibited Conduct occurred.

**Appeal of Determinations:**

If a party disagrees with the decisionmaker's determination as to whether Prohibited Conduct occurred, the party may file an appeal. Appeals must be submitted, in writing, within five (5) days of the appealing party's receipt of the Determination.

A party may appeal a Determination on the following bases:

A. procedural irregularity that would change the outcome;

B. new evidence that would change the outcome and that was not reasonably available when the investigation occurred and the Determination was made; and

C. the CO, or the designated investigator/decisionmaker, had a conflict of interest or bias for or against complainants or respondents generally, or the individual complainant or respondent, that would change the outcome.

The complainant may not challenge the ultimate disciplinary sanction/consequence that is imposed.

The Superintendent shall serve as the appeal decisionmaker, provided the Superintendent has not been otherwise involved in the grievance procedures (i.e., did not serve as the investigator/decisionmaker or informal resolution process facilitator) and is appropriately trained. If the Superintendent is not eligible to serve as the appeal decisionmaker, the CO will designate an appeal decisionmaker, who will be a person who did not conduct the Investigation and render the Determination, and is appropriately trained.

1:26-cv-00351 PL0029

If a party appeals the Determination, the CO will:

    A.   notify the parties of the appeal;

    B.   implement appeal procedures equally for the parties;

    C.   provide the parties a reasonable and equal opportunity to make a statement in support of, or challenging, the Determination;

    D.   provide the appeal decisionmaker with the relevant and not otherwise impermissible evidence and the Determination; and

    E.   notify the parties, in writing, of the result of the appeal and the appeal decisionmaker's rationale for the outcome.

**Parties Provided a Reasonable and Equal Opportunity to Make a Statement in Support of, or Challenging, the Dismissal or Determination**

When a party files an appeal, the party must set forth the reason(s)/basis/bases for the appeal, and the other party will have five (5) days to provide the appeal decisionmaker with a statement in support of their position. Once the decisionmaker receives the statement (or the deadline for filing such a statement expires), the appeal decisionmaker will have ten (10) days to issue a decision on the appeal.

While a party appealing a Determination may argue the reason/basis for the appeal is that new evidence has been discovered/obtained that would change the outcome and that said new evidence was not reasonably available when the Determination was originally made, the party may not submit the new or additional evidence during the appeal process. Rather, the party appealing should identify/describe, in detail, the evidence, including how and when it was discovered/obtained, and explain why it was not reasonably available during the investigation (i.e., prior to the Determination). If the appeal decisionmaker accepts the proffered explanation, the appeal decisionmaker should remand the case back to the investigator/decisionmaker (i.e., reopen the investigation) so the new evidence may be submitted and considered by the other party and the investigator/decisionmaker.

The appeal decisionmaker shall determine the outcome of the appeal based on the appeal decisionmaker's independent review of the record (i.e., the relevant and not otherwise impermissible evidence and the written determination) and the appeal decisionmaker's application of the law and Board policy to the facts in the record. The appeal decisionmaker must give due deference and due weight to the decisionmaker's factual findings and credibility determinations and should not overturn them unless non-testimonial extrinsic evidence in the record justifies a contrary conclusion or unless the record, read in its entirety, compels a contrary conclusion. Generally, the appeal decisionmaker is expected to uphold the original Determination unless the appeal decisionmaker concludes the original Determination is unlawful, unreasonable, or against the manifest weight of the evidence. Every reasonable presumption must be made in favor of the original Determination.

The appeal decisionmaker shall notify the CO, in writing, of the result of the appeal and the rationale for the outcome. The CO will then simultaneously notify the parties, in writing, of the result of the appeal and the appeal decisionmaker's rationale for the outcome.

The appeal decisionmaker's decision shall be final.

**Supportive Measures:**

The District will offer and coordinate supportive measures as appropriate for the complainant and/or respondent to restore or preserve that person's access to the District's education programs or activities or provide support during the grievance procedures and/or during the informal resolution process. For allegations of Prohibited Conduct other than prohibited harassment or retaliation, the District's provision of support measures does not require the District, Board employees, or any other person authorized to provide aid, benefit, or service on the District's behalf to alter the alleged discriminatory/retaliatory conduct for the purpose of providing a supportive measure.

The CO shall determine appropriate supportive measures on a case-by-case basis. Supportive measures may vary depending on what the CO deems to be reasonably available. Supportive measures may include, but are not

1:26-cv-00351 PL0030

limited to, modifications of work schedules, mutual restrictions on contact between the parties; changes in work locations; leaves of absence; increased security and monitoring of certain work settings; training related to Prohibited Conduct; referral to Employee Assistance Program; and other similar measures.

Supportive measures must not unreasonably burden either party and must be designed to protect the safety of the parties and/or the District's educational environment, or to provide support during the Board's grievance procedures or the informal resolution process.

The District will not impose such measures for punitive or disciplinary reasons.

The CO may, as appropriate, modify or terminate supportive measures at the conclusion of the grievance procedures, or at the conclusion of the informal resolution process, or the District may continue them beyond that point.

A party may seek additional modification or termination of a supportive measure applicable to them if circumstances change materially.

The District will not disclose information about any supportive measures to persons other than the person to whom they apply, including informing one party of supportive measures provided to another party, unless necessary to provide the supportive measure or restore or preserve a party's access to the District's education programs or activities, or as otherwise permitted under existing law and/or policy.

The Superintendent may place an employee respondent on administrative leave from employment responsibilities during the pendency of the Board's grievance procedures.

**Disciplinary Sanctions and Remedies:**

Following a determination that Prohibited Conduct occurred, the District may impose disciplinary sanctions, which may include:

    A.  oral or written warning;

    B.  written reprimands;

    C.  required counseling;

    D.  required training or education;

    E.  demotion;

    F.  suspension without pay;

    G.  termination; and

    H.  any other sanction authorized by any applicable Board policy, Employee/Administrator Handbook, and/or collective bargaining agreement.

The District may also provide remedies, which may include disciplinary sanctions/consequences. The CO will notify the Superintendent of the recommended remedies so an authorized administrator can consider the recommendation and implement appropriate remedies in compliance with applicable due process procedures, whether statutory or contractual.

Discipline of an employee will be implemented in accordance with Federal and State law, Board policy, and applicable provisions of any relevant collective bargaining agreement.

**Retaliation**

Retaliation against a person who makes a report or files a complaint alleging Prohibited Conduct or retaliation, or participates in an investigation, is prohibited. Neither the Board nor any other person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by

1:26-cv-00351 PL0031

the U.S. Constitution, the Ohio Constitution, Federal or State law, or this policy, or because the individual made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this policy. Intimidation, threats, coercion, or discrimination, including initiating a disciplinary process against a person for a Code of Conduct violation that does not involve Prohibited Conduct but arises out of the same facts and circumstances as a complaint or information reported about possible Prohibited Conduct, for the purpose of interfering with the exercise of any right or privilege secured by Federal or State law constitutes retaliation. Retaliation against a person for making a complaint or participating in an investigation is a serious violation of this policy that can result in the imposition of disciplinary sanctions/consequences and/or other appropriate remedies.

Complaints alleging retaliation may be filed according to the grievance procedures set forth above. The District shall initiate its grievance procedures upon receiving any complaint alleging retaliation.

The exercise of rights protected under the First Amendment of the United States Constitution does not constitute retaliation prohibited under this policy.

Charging an individual with a Code of Conduct violation for making a materially false statement in bad faith in the course of a grievance proceeding under this policy shall not constitute retaliation; provided, however, that a determination that Prohibited Conduct occurred, alone, is not sufficient to conclude that any party made a materially false statement in bad faith.

**Privacy/Confidentiality**

The District will employ all reasonable efforts to protect the rights of the complainant, the respondent(s), and the witnesses as much as possible, consistent with the Board's legal obligations to investigate, take appropriate action, and conform with any discovery or disclosure obligations. The District will keep confidential the identity of any individual who has made a complaint of Prohibited Conduct, any complainant, any individual who has been reported to be the perpetrator of Prohibited Conduct, any respondent, and any witness, except as may be permitted by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. 1232g, or FERPA regulations, 34 C.F.R. part 99, or as required by law, or to carry out the purposes of relevant Federal or State law or regulations, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder (i.e., the District's obligation to maintain confidentiality shall not impair or otherwise affect the complainant's and respondent's receipt of the information to which they are entitled related to the investigation and determination of whether Prohibited Conduct occurred). All records generated under the terms of this policy shall be maintained as confidential to the extent permitted by law. Confidentiality, however, cannot be guaranteed. Additionally, the respondent must be provided the complainant's identity.

During an investigation, the CO or designated investigator/decisionmaker will instruct each person who is interviewed about the importance of maintaining confidentiality. Any individual who is interviewed as part of an investigation is expected not to disclose to other members of the School District Community or third parties any information that is learned or provided during the course of the investigation.

**Sanctions and Monitoring**

The Board shall vigorously enforce its prohibitions against Prohibited Conduct by taking appropriate action reasonably calculated to stop and prevent further misconduct. While observing the principles of due process, a violation of this policy may result in disciplinary action, up to and including the discharge of an employee. All disciplinary action will be taken in accordance with applicable State law and the terms of the relevant collective bargaining agreement(s). When imposing discipline, the Superintendent shall consider the totality of the circumstances involved in the matter. In those cases where Prohibited Conduct is not substantiated, the Board may consider whether the alleged conduct nevertheless warrants discipline in accordance with other Board policies, consistent with the terms of the relevant collective bargaining agreement(s).

Where the Board becomes aware that a prior remedial action has been taken against a member of the School District community, all subsequent sanctions imposed by the Board and/or Superintendent shall be reasonably calculated to end such conduct, prevent its reoccurrence, and remedy its effects.

**Application of the First Amendment**

The Board will construe and apply this policy consistent with the First Amendment to the U.S. Constitution and the

1:26-cv-00351 PL0032

principles of academic freedom as set forth in the applicable collective bargaining agreement. In no case will a respondent be found to have committed Prohibited Conduct based on expressive conduct that is protected by the First Amendment and/or the principles of academic freedom specified in the Board's collective bargaining agreement with its teachers.

**Training**

All employees, investigators, decisionmakers, facilitators of informal resolution process, the District Compliance Officer(s), and other persons who are responsible for implementing the Board's grievance procedures or have the authority to modify or terminate supportive measures shall receive training related to their duties under applicable Federal and State laws and this policy. The training shall not rely on stereotypes involving Protected Classes.

**Recordkeeping (Including Retention of Investigatory Records and Materials)**

The District Compliance Officer(s) is/are responsible for overseeing the retention of all records that must be maintained pursuant to this policy. All individuals charged with conducting investigations under this policy must retain all information, documents, electronically stored information, and electronic media (as defined in Policy 8315) created and received as part of an investigation. Records and materials associated with the implementation of this policy shall be retained in accordance with Policy 8310, Policy 8315, Policy 8320, and Policy 8330 for the period set forth below, unless required to be maintained for a longer period pursuant to the District's records retention schedule.

The District shall maintain, for a period of seven (7) calendar years, the following records:

A. for each complaint of Prohibited Conduct, records documenting the informal resolution process and/or the grievance procedures followed, and the resulting outcome;

B. for each notification that the District Compliance Officer receives of information about conduct that reasonably may constitute Prohibited Conduct, records documenting the actions the District took to implement this policy; and

C. all materials used to provide the training referenced above.

The information, documents, ESI, and electronic media (as defined in Policy 8315) retained may include public records and records exempt from disclosure under Federal and/or State law (e.g., student records, medical records).

**Outside Appointments, Dual Appointments, and Delegations**

The Board retains discretion to appoint suitably qualified persons who are not Board employees to fulfill any function of the Board under this policy including, but not limited to, District Compliance Officer, investigator, decisionmaker, appeal decisionmaker, or facilitator of the informal resolution process.

The Board also retains discretion to appoint two (2) or more persons to jointly fulfill the role of District Compliance Officer, investigator, decisionmaker, appeal decisionmaker, and facilitator of the informal resolution process.

The Superintendent may delegate functions assigned to a specific Board employee under this policy including, but not limited to, the functions assigned to the District Compliance Officer, investigator, decisionmaker, appeal decisionmaker, and facilitator of the informal resolution process to any suitably qualified individual, and such delegation may be rescinded by the Superintendent at any time.

**Discretion in Application**

The Board retains discretion to interpret and apply this policy in a manner that is not clearly unreasonable, even if the Board's interpretation or application differs from the interpretation of any specific complainant and/or respondent.

Despite the Board's reasonable efforts to anticipate all eventualities in drafting this policy, it is possible unanticipated or extraordinary circumstances may not be specifically or reasonably addressed by the express policy language, in which case the Board retains discretion to respond to the unanticipated or extraordinary circumstance

1:26-cv-00351 PL0033

in a way that is not clearly unreasonable.

The provisions of this policy are not contractual in nature, whether in their own right or as part of any other express or implied contract. Accordingly, the Board retains discretion to revise this policy at any time and for any reason. The Board may apply policy revisions to an active case, provided that doing so is not clearly unreasonable.

**© Neola 2025**

| Legal | A.C. 3301-35-03(A) |
|---|---|
| | R.C. 4112.01, 4112.02, 5923.05 |
| | Fourteenth Amendment, U.S. Constitution |
| | 20 U.S.C. 1092(F)(6)(A)(v), 20 U.S.C. 1232g |
| | 20 U.S.C. Section 1681, Title IX of Education Amendment Act |
| | 20 U.S.C. Section 1701 et seq., Equal Educational Opportunities Act of 1974 |
| | 20 U.S.C. Section 7905, Boy Scouts of America Equal Access Act |
| | 29 C.F.R. Part 1635 |
| | 29 U.S.C. 201 et seq., The Fair Labor Standards Act ("FLSA") |
| | 29 U.S.C. 218d, PUMP for Nursing Mothers Act ("PUMP Act") |
| | 29 U.S.C. 621 et seq., Age Discrimination in Employment Act of 1967 |
| | 29 U.S.C. 701 et seq., Rehabilitation Act of 1973, as amended |
| | 34 C.F.R. Part 110 (7/27/93) |
| | 38 U.S.C. Chapter 43, 4301-4335 (see in particular 4311(a) [prohibits discrimination based on military service] and 4312 [reemployment rights]), Uniformed Services Employment and Reemployment Rights Act ("USERRA") |
| | 42 U.S.C. 1983 |
| | 42 U.S.C. 2000d et seq. |
| | 42 U.S.C. 2000e et seq., Civil Rights Act of 1964 |
| | 42 U.S.C. 2000ff et seq., The Genetic Information Nondiscrimination Act ("GINA") |
| | 42 U.S.C. 2000gg, Pregnant Workers Fairness Act ("PWFA") |
| | 42 U.S.C. 6101 et seq., Age Discrimination Act of 1975 |
| | 42 U.S.C. 12101 et seq., The Americans with Disabilities Act of 1990, as amended |