

**EXHIBIT 12**

| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | ANTI-HARASSMENT |
| Code | po5517 |
| Status | Active |
| Adopted | October 28, 2025 |

## 5517 - ANTI-HARASSMENT

### General Policy Statement

It is the policy of the Board of Education to maintain an education and work environment that is free from all forms of unlawful harassment, including sexual harassment. This commitment applies to all School District operations, programs, and activities. All students, administrators, teachers, staff, and all other school personnel share responsibility for avoiding, discouraging, and reporting any form of unlawful harassment. This policy applies to unlawful conduct occurring on school property, or at another location if such conduct occurs during an activity sponsored by the Board.

The Board will enforce its prohibition against discriminatory harassment based on "Protected Classes" that are protected by Federal civil rights laws (hereinafter referred to as unlawful harassment), and encourages those within the School District community as well as Third Parties, who feel aggrieved to seek assistance to rectify such problems. The Board will investigate all allegations of unlawful harassment and in those cases where unlawful harassment is substantiated, the Board will take immediate steps to end the harassment, prevent its reoccurrence, and remedy its effects. Individuals who are found to have engaged in unlawful harassment will be subject to appropriate disciplinary action.

The District will offer counseling services to any person found to have been subjected to unlawful harassment, and, where appropriate, the person(s) who committed the unlawful harassment.

### Other Violations of the Anti-Harassment Policy

The Board will also take immediate steps to impose disciplinary action on individuals engaging in any of the following prohibited acts:

A. Retaliating against a person who has made a report or filed a complaint alleging unlawful harassment, or who has participated as a witness in a harassment investigation.

B. Filing a malicious or knowingly false report or complaint of unlawful harassment.

C. Disregarding, failing to investigate adequately, or delaying investigation of allegations of unlawful harassment, when responsibility for reporting and/or investigating harassment charges comprises part of one's supervisory duties.

### Definitions

1:26-cv-00351 PL0005

Words used in this policy shall have those meanings defined herein; words not defined herein shall be construed according to their plain and ordinary meanings.

**Complainant** is the individual who alleges, or is alleged, to have been subjected to unlawful harassment, regardless of whether the person files a formal complaint or is pursuing an informal resolution to the alleged harassment.

**Respondent** is the individual who has been alleged to have engaged in unlawful harassment, regardless of whether the Reporting Party files a formal complaint or is seeking an informal resolution to the alleged harassment.

**School District community** means students and Board employees (i.e., administrators, and professional and classified staff), as well as Board members, agents, volunteers, contractors, or other persons subject to the control and supervision of the Board.

**Third Parties** include, but are not limited to, guests and/or visitors on School District property (e.g., visiting speakers, participants on opposing athletic teams, parents), vendors doing business with, or seeking to do business with, the Board, and other individuals who come in contact with members of the School District community at school-related events/activities (whether on or off District property).

**Day(s):**  Unless expressly stated otherwise, the term "day" or "days" as used in this policy means business day(s) (i.e., a day(s) that the Board office is open for normal operating hours, Monday – Friday, excluding State-recognized holidays).

**Bullying**

Bullying rises to the level of unlawful harassment when one (1) or more persons systematically and chronically inflict physical hurt or psychological distress on one (1) or more students or employees and that bullying is based upon one (1) or more Protected Classes, that is, characteristics that are protected by Federal civil rights laws. It is defined as any unwanted and repeated written, verbal, or physical behavior, including any threatening, insulting, or dehumanizing gesture, by an adult or student, that is severe or pervasive enough to create an intimidating, hostile, or offensive educational or work environment; cause discomfort or humiliation; or unreasonably interfere with the individual's school or work performance or participation; and may involve:

A.  teasing;

B.  threats;

C.  intimidation;

D.  stalking;

E.  cyberstalking;

F.  cyberbullying;

G.  physical violence;

H.  theft;

I.  sexual, religious, or racial harassment;

J.  public humiliation; or

K.  destruction of property.

**Harassment**

Harassment means any threatening, insulting, or dehumanizing gesture, use of technology, or written, verbal or physical conduct directed against a student or school employee that:

1:26-cv-00351 PL0006

A. places a student or school employee in reasonable fear of harm to his/her person or damage to his/her property;

B. has the effect of substantially interfering with a student's educational performance, opportunities, or benefits, or an employee's work performance; or

C. has the effect of substantially disrupting the orderly operation of a school.

**Sexual Harassment**

For purposes of this policy and consistent with Title VII of the Civil Rights Act of 1964, "sexual harassment" is defined as:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, when:

A. Submission to such conduct is made either implicitly or explicitly a term or condition of an individual's employment, or status in a class, educational program, or activity.

B. Submission or rejection of such conduct by an individual is used as the basis for employment or educational decisions affecting such individual.

C. Such conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working, and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity.

Sexual harassment may involve the behavior of a person of any gender against a person of the same or another gender.

Sexual Harassment covered by Policy 2266 - Nondiscrimination on the Basis of Sex Education Programs or Activities is not included in this policy. Allegations of such conduct shall be addressed solely by Policy 2266.

Prohibited acts that constitute sexual harassment under this policy may take a variety of forms. Examples of the kinds of conduct that may constitute sexual harassment include, but are not limited to:

A. Unwelcome sexual propositions, invitations, solicitations, and flirtations.

B. Unwanted physical and/or sexual contact.

C. Threats or insinuations that a person's employment, wages, academic grade, promotion, classroom work or assignments, academic status, participation in athletics or extra-curricular programs, activities, or events, or other conditions of employment or education may be adversely affected by not submitting to sexual advances.

D. Unwelcome verbal expressions of a sexual nature, including graphic sexual commentaries about a person's body, dress, appearance, or sexual activities; the unwelcome use of sexually degrading language, profanity, jokes or innuendoes; unwelcome suggestive or insulting sounds or whistles; obscene telephone calls.

E. Sexually suggestive objects, pictures, graffiti, videos, posters, audio recordings or literature, placed in the work or educational environment, that may reasonably embarrass or offend individuals.

F. Unwelcome and inappropriate touching, patting, or pinching; obscene gestures.

G. Asking about, or telling about, sexual fantasies, sexual preferences, or sexual activities.

H. Speculations about a person's sexual activities or sexual history, or remarks about one's own sexual activities or sexual history.

I. Giving unwelcome personal gifts such as lingerie that suggests the desire for a romantic relationship.

1:26-cv-00351 PL0007

J. Leering or staring at someone in a sexual way, such as staring at a person's breasts, buttocks, or groin.

K. A pattern of conduct, which can be subtle in nature, that has sexual overtones and is intended to create or has the effect of creating discomfort and/or humiliation to another.

L. Inappropriate boundary invasions by a District employee or other adult member of the School District community into a student's personal space and personal life.

M. Verbal, nonverbal or physical aggression, intimidation, or hostility based on sex or sex-stereotyping that does not involve conduct of a sexual nature.

Not all behavior with sexual connotations constitutes unlawful sexual harassment. Sex-based or gender-based conduct must be sufficiently severe, pervasive, and persistent such that it adversely affects, limits, or denies an individual's employment or education, or such that it creates a hostile or abusive employment or educational environment, or such that it is intended to, or has the effect of, denying or limiting a student's ability to participate in or benefit from the educational program or activities.

**Race/Color Harassment**

Prohibited racial harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's race or color and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working, and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's race or color, such as racial slurs, nicknames implying stereotypes, epithets, and/or negative references relative to racial customs.

**Religious (Creed) Harassment**

Prohibited religious harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's religion or creed and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's religious tradition, clothing, or surnames, and/or involves religious slurs.

**National Origin/Ancestry Harassment**

Prohibited national origin/ancestry harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's national origin or ancestry and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's national origin or ancestry, such as negative comments regarding customs, manner of speaking, language, surnames, or ethnic slurs.

**Disability Harassment**

Prohibited disability harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's disability and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's disability, such as negative comments about speech patterns, movement, physical impairments or defects/appearances, or the like.

**Anti-Harassment Compliance Officers**

The following individual(s) shall serve as the District's Anti-Harassment Compliance Officer(s) (hereinafter, "the Compliance Officer(s)"):

1:26-cv-00351 PL0008

Mike Malone
Executive Director of Human Resources
95 E US 22-3
Maineville, OH 45039

mmalone@lmsdoh.org
(513) 899-2264

Jamie Miles
Executive Director of Student Services
95 E US 22-3
Maineville, OH 45039

(513) 899-2264

The names, titles, and contact information of these individuals will be published annually on the School District's website and:

A.  in the parent and staff handbooks.

B.  in the School District Annual Report to the public.

C.  on each individual school's website.

The Compliance Officer(s) are responsible for coordinating the District's efforts to comply with applicable Federal and State laws and regulations, including the District's duty to address in a prompt and equitable manner any inquiries or complaints regarding harassment.

The Compliance Officer(s) will be available during regular school/work hours to discuss concerns related to unlawful harassment, to assist students, other members of the District community, and third parties who seek support or advice when informing another individual about "unwelcome" conduct, or to intercede informally on behalf of the individual in those instances where concerns have not resulted in the filing of a formal complaint and where all parties are in agreement to participate in an informal process.

Compliance Officers shall accept reports of unlawful harassment directly from any member of the School District community or a Third Party or receive reports that are initially filed with an administrator, supervisor, or other District-level official.  Upon receipt of a report of alleged harassment, the Compliance Officer(s) will contact the Complainant and begin either an informal or formal complaint process (depending on the request of the Complainant or the nature of the alleged harassment), or the Compliance Officer(s) will designate a specific individual to conduct such a process. The Compliance Officer(s) will provide a copy of this policy to the Complainant and Respondent.  In the case of a formal complaint, the Compliance Officer(s) will prepare recommendations for the Superintendent or designee or will oversee the preparation of such recommendations by a designee. All Board employees must report incidents of harassment that are reported to them to the Compliance Officer within two (2) days of learning of the incident.

Any Board employee who directly observes unlawful harassment is obligated, in accordance with this policy, to report such observations to the Compliance Officer(s) within two (2) days. Additionally, any Board employee who observes an act of unlawful harassment is expected to intervene to stop the harassment, unless circumstances make such an intervention dangerous, in which case the staff member should immediately notify other Board employees and/or local law enforcement officials, as necessary, to stop the harassment. Thereafter, the Compliance Officer(s) or designee must contact the Complainant, if age eighteen (18) or older, or Complainant's parents/guardians if the Complainant is under the age eighteen (18), within two (2) days to advise of the Board's intent to investigate the alleged wrongdoing.

**Reports and Complaints of Harassing Conduct**

Students and all other members of the School District community along with Third Parties are required to report incidents of harassing conduct to a teacher, administrator, supervisor, or other District official so that the Board may address the conduct before it becomes severe, pervasive, or persistent. Any teacher, administrator, supervisor,

1:26-cv-00351 PL0009

or other District employee or official who receives such a report shall file it with the Compliance Officer within two (2) days of receiving the report of harassment.

Members of the School District community and Third Parties, which includes students, or third parties who believe they have been unlawfully harassed are entitled to utilize the Board's complaint process that is set forth below. Initiating a complaint, whether formally or informally, will not adversely affect the Complainant's employment or participation in educational or extra-curricular programs. While there are no time limits for initiating complaints of harassment under this policy, individuals should make every effort to file a complaint as soon as possible after the conduct occurs while the facts are known and potential witnesses are available.

If, during an investigation of alleged bullying, aggressive behavior and/or harassment in accordance with Policy 5517.01 - Bullying and Other Forms of Aggressive Behavior, the Principal believes that the reported misconduct may have created a hostile work environment and may have constituted unlawful discriminatory harassment based on a Protected Class, the Principal shall report the act of bullying, aggressive behavior and/or harassment to the Compliance Officers who shall investigate the allegation in accordance with this policy. If the alleged harassment involves Sexual Harassment as defined by Policy 2266, the matter will be handled in accordance with the grievance process and procedures outlined in Policy 2266. While the Compliance Officer investigates the allegation, or the matter is being addressed pursuant to Policy 2266, the Principal shall suspend the Policy 5517.01 investigation to await the Compliance Officer's written report or the determination of responsibility pursuant to Policy 2266. The Compliance Officer shall keep the Principal informed of the status of the Policy 5517 investigation and provide the Principal with a copy of the resulting written report. Likewise, the Title IX Coordinator will provide the Principal with the determination of responsibility that results from the Policy 2266 grievance process.

**Timelines**

The District has established reasonably prompt time frames for the conclusion of the grievance process, including time frames for filing and resolving appeals and informal resolution processes.  The grievance process may be temporarily delayed or extended for good cause.  Good cause may include considerations such as the absence of a party, a party's advisor, or a witness; concurrent law enforcement activity; or the need for language assistance or accommodation of disabilities.  In the event the grievance process is temporarily delayed for good cause, the District will provide written notice to the Complainant and the Respondent of the delay or extension and the reasons for the action.

**Response to a Formal Complaint**

At the time of filing a formal complaint, a Complainant must be participating in or attempting to participate in the education program or activity of the District with which the formal complaint is filed.  A formal complaint may be filed with the Title IX Coordinator in person, by mail, by electronic mail, or other means designated by the District.

The District must follow the formal complaint process before the imposition of any disciplinary sanctions or other actions that are not supportive measures.  However, nothing in this policy precludes the District from removing a Respondent from the District's education program or activity on an emergency basis, provided that the District undertakes an individualized safety and risk analysis, determines that an immediate threat to the physical health or safety of any student or other individual arising from the allegations of sexual harassment justifies removal, and provides the Respondent with notice and an opportunity to challenge the decision immediately following the removal.  Nor does it preclude the District from placing a non-student employee Respondent on administrative leave during the pendency of the grievance process.  This provision may not be construed to modify any rights under the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act of 1973, or the Americans with Disabilities Act.

Upon receipt of a formal complaint, the District must provide written notice to the known parties including:

A.  Notice of the allegations of discrimination/harassment/retaliation, including information about the identities of the parties involved in the incident, the conduct allegedly constituting sexual harassment, the date and location of the alleged incident, and any sufficient details known at the time.  Such notice must be provided with sufficient time to prepare a response before any initial interview;

B.  An explanation of the District's investigation procedures, including any informal resolution process;

C.  A statement that the Respondent is presumed not responsible for the alleged conduct and that a

1:26-cv-00351 PL0010

determination regarding responsibility will be made by the decision-maker at the conclusion of the investigation;

D.  Notice to the parties that they may have an advisor of their choice who may be, but is not required to be, an attorney, and may inspect and review any evidence and

E.  Notice to the parties of any provision in the District's code of conduct or policy that prohibits knowingly making false statements or knowingly submitting false information.

If, in the course of an investigation, the District decides to investigate allegations about the Complainant or Respondent that are not included in the notice initially provided, notice of the additional allegations must be provided to known parties.

The District may consolidate formal complaints as to allegations of sexual harassment against more than one Respondent, or by more than one Complainant against one or more Respondents, or by one party against the other party, where the allegations of sexual harassment arise out of the same facts or circumstances.

**Investigation of a Formal Complaint**

When investigating a formal complaint and throughout the grievance process, the District must:

A.  Ensure that the burden of proof and the burden of gathering evidence sufficient to reach a determination regarding responsibility rests on the District and not the parties;

B.  Provide an equal opportunity for the parties to present witnesses and evidence;

C.  Not restrict either party's ability to discuss the allegations under investigation or to gather and present relevant evidence;

D.  Allow the parties to be accompanied with an advisor of the party's choice who may be, but is not required to be, an attorney.  The District may establish restrictions regarding the extent to which the advisor may participate in the proceedings, as long as the restrictions apply equally to both parties;

E.  Provide written notice of the date, time, location, participants, and purpose of any interview or meeting at which a party is expected to participate, with sufficient time for the party to prepare to participate;

F.  Provide the parties equal access to review all the evidence collected which is directly related to the allegations raised in a formal complaint and comply with the review periods outlined in this process;

G.  Objectively evaluate all relevant evidence without relying on sex stereotypes;

H.  Ensure that Title IX Coordinators, investigators, decision-makers and individuals who facilitate an informal resolution process, do not have a conflict of interest or bias for or against Complainants or Respondents generally or an individual Complainant or Respondent;

I.  Not make creditability determinations based on the individual's status as Complainant, Respondent or witness;

J.  Not use questions or evidence that constitute or seek disclosure of privileged information unless waived.

**Dismissal of Formal Complaints**

If the conduct alleged in the formal complaint would not constitute sexual harassment even if proved, did not occur in the District's education program or activity, or did not occur against a person in the United States, then the District must dismiss the formal complaint with regard to that conduct for purposes of sexual harassment under this policy.

The Title IX Coordinator also may dismiss the formal complaint or any allegations therein at any time during the investigation or hearing, if applicable, when any of the following apply:

1:26-cv-00351 PL0011

A. a Complainant provides written notification to the Title IX Coordinator that the Complainant would like to withdraw the formal complaint or any allegations therein;

B. the Respondent is no longer enrolled or employed by the District or

C. specific circumstances prevent the District from gathering evidence sufficient to reach a determination as to the formal complaint or allegations therein. Upon dismissal, the Title IX Coordinator promptly sends written notice of the dismissal and the reasons for dismissal simultaneously to both parties.

**Evidence Review**

The District provides both parties an equal opportunity to inspect and review any evidence obtained as part of the investigation so that each party can meaningfully respond to the evidence prior to the conclusion of the investigation. The evidence provided by the District must include evidence that is directly related to the allegations in the formal complaint, evidence upon which the District does not intend to rely in reaching a determination regarding responsibility, and any inculpatory or exculpatory evidence whether obtained from a party or other source. Prior to completion of the investigative report, the Title IX Coordinator must send to each party and the party's advisor, if any, the evidence subject to inspection and review in an electronic format or a hard copy. The parties have 10 calendar days to submit a written response to the Title IX Coordinator, which the investigator will consider prior to completion of the investigative report.

**Investigative Report**

The investigator must prepare an investigative report that fairly summarizes relevant evidence and send the report to the Title IX Coordinator. The Title IX Coordinator must send to each party and the party's advisor, if any, the investigative report in an electronic format or a hard copy, for their review and written response. The parties have 10 calendar days to submit a written response to the Title IX Coordinator.

**Decision-Maker's Determination**

The investigative report is submitted to the decision-maker. The decision-maker cannot be the same person(s) as the Title IX Coordinator or the investigator. The decision-maker cannot hold a hearing or make a determination regarding responsibility until 10 calendar days from the date the Complainant and Respondent receive the investigator's report.

Prior to reaching a determination regarding responsibility, the decision-maker must afford each party the opportunity to submit written, relevant questions that a party wants asked of any party or witness, provide each party with the answers, and allow for additional, limited follow-up questions from each party. Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the Complainant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent. Questions must be submitted to the Title IX Coordinator within three calendar days from the date the Complainant and Respondent receive the investigator's report.

The decision-maker must issue a written determination regarding responsibility based on a preponderance of the evidence standard. The decision-maker's written determination must:

A. Identify the allegations potentially constituting discrimination/harassment/retaliation;

B. Describe the procedural steps taken, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather evidence, and hearings held;

C. Include the findings of fact supporting the determination;

D. Draw conclusions regarding the application of any District policies and/or code of conduct rules to the facts;

E. Address each allegation and a resolution of the complaint including a determination regarding responsibility, the rationale therefor, any recommended disciplinary sanction(s) imposed on the Respondent, and whether remedies designed to restore or preserve access to the educational program or activity will be provided by

1:26-cv-00351 PL0012

the District to the Complainant and

F. The procedures and permissible bases for the Complainant and/or Respondent to appeal the determination.

A copy of the written determination must be provided to both parties simultaneously, and generally will be provided within 60 calendar days from the District's receipt of a formal complaint.

The determination regarding responsibility becomes final either on the date that the District provides the parties with the written determination of the result of the appeal, if an appeal is filed, or if an appeal is not filed, the date on which an appeal would no longer be considered timely.

Where a determination of responsibility for sexual harassment has been made against the Respondent, the District will provide remedies to the Complainant that are designed to restore or preserve equal access to the District's education program or activity.  Such remedies may include supportive measures; however, remedies need not be non-disciplinary or non-punitive and need not avoid burdening the Respondent.  The Title IX Coordinator is responsible for effective implementation of any remedies.  Following any determination of responsibility, the District may implement disciplinary sanctions in accordance with State or Federal law and or/the negotiated agreement.  For students, the sanctions may include disciplinary action, up to and including permanent exclusion. For employees, the sanctions may include any form of responsive discipline, up to and including termination.

**Appeals**

Either the Complainant or Respondent may appeal the decision-maker's determination regarding responsibility or a dismissal of a formal complaint, on the following bases:

A. Procedural irregularity that affected the outcome of the matter;

B. New evidence that was not reasonably available at the time that could affect the outcome and

C. The Title IX Coordinator, investigator, or decision-maker had a conflict of interest or bias for or against Complainants or Respondents generally or an individual Complainant or Respondent that affected the outcome.

The request to appeal must be made in writing to the Title IX Coordinator within seven calendar days after the date of the written determination.  The appeal decision-maker must not have a conflict of interest or bias for or against Complainants or Respondents generally or an individual Complainant or Respondent and cannot be the Title IX Coordinator, the investigator, or the decision-maker from the original determination.

The appeal decision-maker must notify the other party in writing when an appeal is filed and give both parties a reasonable equal opportunity to submit a written statement in support of, or challenging, the outcome.  After reviewing the evidence, the appeal decision-maker must issue a written decision describing the result of the appeal and the rationale for the result.  The decision must be provided to both parties simultaneously, and generally will be provided within 10 calendar days from the date the appeal is filed.

**Informal Resolution Process**

Except when concerning allegations that an employee sexually harassed a student, at any time during the formal complaint process and prior to reaching a determination regarding responsibility, the District may facilitate an informal resolution process, such as mediation, that does not involve a full investigation and determination of responsibility, provided that the District:

A. Provides to the parties a written notice disclosing:

1. The allegations;

2. The requirements of the informal resolution process including the circumstances under which it precludes the parties from resuming a formal complaint arising from the same allegations, provided, however, that at any time prior to agreeing to a resolution, any party has the right to withdraw from the informal resolution process and resume the Title IX formal complaint process with respect to the formal complaint and

1:26-cv-00351 PL0013

3. Any consequences resulting from participating in the informal resolution process, including the records that will be maintained or could be shared.

B. Obtains the parties' voluntary, written consent to the informal resolution process.

The informal resolution process generally will be completed within 30 calendar days, unless the parties and the Title IX Coordinator mutually agree to temporarily delay or extend the process. The formal grievance process timelines are stayed during the parties' participation in the informal resolution process. If the parties do not reach resolution through the informal resolution process, the parties will resume the formal complaint grievance process, including timelines for resolution, at the point they left off.

**Retaliation**

Retaliation against a person who makes a report or files a complaint alleging unlawful discrimination/harassment/retaliation or participates as a witness in an investigation is prohibited. Neither the Board nor any other person may intimidate, threaten, coerce or interfere with any individual because the person opposed any act or practice made unlawful by any Federal or State civil rights law, or because that individual made a report, formal complaint testified, assisted or participated or refused to participate in any manner in an investigation, proceeding, or hearing under those laws and/or this policy, or because that individual exercised, enjoyed, aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by those laws and/or this policy.

Retaliation against a person for making a report of discrimination, filing a formal complaint, or participating in an investigation or meeting is a serious violation of this policy that can result in imposition of disciplinary sanction/consequences and/or other appropriate remedies.

Formal complaints alleging retaliation may be filed according to the internal complaint process set forth above.

The exercise of rights protected under the First Amendment of the United States Constitution does not constitute retaliation prohibited under this policy.

**Allegations Constituting Criminal Conduct: Child Abuse/Sexual Misconduct**

State law requires any school teacher or school employee who knows or suspects that a child with a disability under the age of twenty-one (21) or that a child under the age of eighteen (18) has suffered or faces a threat of suffering a physical or mental wound, disability or condition of a nature that reasonably indicates abuse or neglect of a child to immediately report that knowledge or suspicion to the county children's services agency. If, during the course of a harassment investigation, the Compliance Officer or a designee has reason to believe or suspect that the alleged conduct reasonably indicates abuse or neglect of the Complainant, a report of such knowledge must be made in accordance with State law and Board Policy.

State law defines certain contact between a teacher and a student as "sexual battery." If the Compliance Officer or a designee has reason to believe that the Complainant has been the victim of criminal conduct as defined in Ohio's Criminal Code, such knowledge should be immediately reported to local law enforcement.

Any reports made to a county children's services agency or to local law enforcement shall not terminate the Compliance Officer or a designee's obligation and responsibility to continue to investigate a complaint of harassment. While the Compliance Officer or a designee may work cooperatively with outside agencies to conduct concurrent investigations, in no event shall the harassment investigation be inhibited by the involvement of outside agencies without good cause after consultation with the Superintendent or designee.

**Allegations Involving Conduct Unbecoming the Teaching Profession/Suspension**

The Superintendent or designee will report to the Ohio Department of Education, on forms provided for that purpose, matters of misconduct on the part of licensed professional staff members convicted of sexual battery, and will, in accordance with Policy 8141, suspend such employee from all duties that concern or involve the care, custody, or control of a child during the pendency of any criminal action for which that person has been arrested, summoned and/or indicted in that regard.

1:26-cv-00351 PL0014

**Education and Training**

In support of this Anti-Harassment Policy, the Board promotes preventative educational measures to create greater awareness of unlawful discriminatory practices. The Superintendent or designee shall provide appropriate information to all members of the School District community related to the implementation of this policy and shall provide training for District students and staff where appropriate. All training, as well as all information, provided regarding the Board's policy and harassment in general, will be age and content appropriate.

Retention of Investigatory Records and Materials

The Compliance Officer(s) is responsible for overseeing retention of all records that must be maintained pursuant to this policy. All individuals charged with conducting investigations under this policy shall retain all documents, electronically stored information ("ESI"), and electronic media (as defined in Policy 8315) created and/or received as part of an investigation, which may include but not be limited to:

A. all written reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

B. any narratives that memorialize oral reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

C. any documentation that memorializes the actions taken by District personnel or individuals contracted or appointed by the Board to fulfill its responsibilities related to the investigation and/or the District's response to the alleged violation of this policy;

D. written witness statements;

E. narratives, notes from, or audio, video, or digital recordings of witness interviews/statements;

F. e-mails, texts, or social media posts that directly relate to or constitute evidence pertaining to an alleged violation of this policy (i.e., not after-the-fact commentary about or media coverage of the incident);

G. notes or summaries prepared contemporaneously by the investigator in whatever form made (e.g., handwritten, keyed into a computer or tablet, etc.), but not including transitory notes whose content is otherwise memorialized in other documents;

H. written disciplinary sanctions issued to students or employees and other documentation that memorializes oral disciplinary sanctions issued to students or employees for violations of this policy;

I. dated written determinations/reports (including summaries of relevant exculpatory and inculpatory evidence) and other documentation that memorializes oral notifications to the parties concerning the outcome of the investigation, including any consequences imposed as a result of a violation of this policy;

J. documentation of any supportive measures offered and/or provided to the Complainant and/or the Respondent, including no contact orders issued to both parties, the dates the no contact orders were issued, and the dates the parties acknowledged receipt of the no contact orders;

K. documentation of all actions taken, both individual and systemic, to stop the discrimination or harassment, prevent its recurrence, eliminate any hostile environment, and remedy its discriminatory effects;

L. copies of the Board policy and/or procedures/guidelines used by the District to conduct the investigation, and any documents used by the District at the time of the alleged violation to communicate the Board's expectations to students and staff with respect to the subject of this policy (e.g., Student Code of Conduct and/or Employee Handbooks);

M. copies of any documentation that memorializes any formal or informal resolutions to the alleged discrimination or harassment.

The documents, ESI, and electronic media (as defined in Policy 8315) retained may include public records and records exempt from disclosure under Federal (e.g., FERPA, ADA) and/or State law (e.g., R.C. 3319.321) – e.g.,

1:26-cv-00351 PL0015

student records and confidential medical records.

The documents, ESI, and electronic media (as defined in Policy 8315) created or received as part of an investigation shall be retained in accordance with Policy 8310, Policy 8315, Policy 8320, and Policy 8330 for not less than three (3) years, but longer if required by the District's records retention schedule.

**© Neola 2021**
**© LMLS 2025**

Legal                    R.C. 4112.02

20 U.S.C. 1400 et seq., The Individuals with Disabilities Education Improvement Act of 2004 (IDEIA)

20 U.S.C. 1681 et seq.

29 U.S.C. 621 et seq., Age Discrimination in Employment Act of 1967

29 U.S.C. 794, Rehabilitation Act of 1973, as amended

42 U.S.C. 6101, The Age Discrimination Act of 1975

42 U.S.C. 2000d et seq.

42 U.S.C. 2000e et seq.

42 U.S.C. 12101 et seq., Americans with Disabilities Act of 1990, as amended

42 U.S.C. 1983

National School Boards Association Inquiry and Analysis - May, 2008

1:26-cv-00351 PL0016