Exhibit N

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| GEORGE MCINTYRE | Case No. 1:26-cv-00351-MWM |
| Plaintiff | Judge:  Matthew W. McFarland |
| v. | |
| LITTLE MIAMI SCHOOL DISTRICT, ET AL | PLAINTIFF'S RESPONSE TO DEFENDANTS' FIRST SET OF DISCOVERY REQUESTS |
| Defendants | |

Plaintiff submits this Response to Defendants' First Set of Discovery Requests.

1.      Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.  Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

2.      By making the accompanying responses and objections, Plaintiff does not waive, and hereby expressly reserve, the right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Plaintiff makes the responses and objections herein without in any way implying that Plaintiff considers the interrogatories and requests for production, and responses thereto, to be relevant or material to the subject matter of this action.

3.      A response shall not be deemed or construed that Plaintiff performed any of the acts described in the request, or definitions and/or instructions applicable to the request, or that Plaintiff acquiesces in the characterization of the conduct or activities contained in the request, or definitions and/or instructions applicable to the interrogatory or request.

GENERAL OBJECTIONS

1.      Plaintiff objects to each instruction, definition, and request for production to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Rules of Civil Procedure and the applicable Rules and Orders of the Court.

1

2.      Plaintiff objects to each request that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

3.      Plaintiff objects to each instruction, definition, and request, to the extent that it seeks information protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege. Should any such disclosure by Plaintiff occur, it is inadvertent and shall not constitute a waiver of any privilege.

4.      Plaintiff objects to each instruction, definition, request for production, and interrogatory as overbroad and unduly burdensome to the extent it seeks information that is readily or more accessible to Plaintiff from Defendants' own files, from documents or information in Defendants' possession, or from documents or information that Defendants previously produced to Plaintiff.  Responding to such discovery request would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such and interrogatory is substantially the same or less for Plaintiff as for Defendants.  This objection encompasses, but is not limited to, all correspondence between Defendants and Plaintiff.  All such documents and information may not be produced.

5.      To the extent any of the interrogatories and requests seek documents or answers that include expert material, Plaintiff objects to any such interrogatory or request as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such interrogatories or requests and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports set by the Court.

6.      Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that interrogatory. Moreover, Plaintiffs do not waive their right to amend these responses.

Plaintiff requests Defendants to produce and permit the Plaintiff, or someone acting on the Plaintiff's behalf, to inspect and copy any designated documents or electronically stored information, including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained that are in the possession, custody, or control of the Defendant. Electronically stored information may be produced in a form or forms in which the information is ordinarily maintained if that form is reasonably useable, or in any form that is reasonably useable.

With respect to each item or category, the response shall state that inspection and related activities will be permitted as requested, unless it is objected to, including an objection to the requested form or forms for producing electronically stored information, in which event the reasons for objection shall be stated.

**INTERROGATORIES**

*Interrogatory No. 1. Identify every purpose for which Plaintiff displayed the Flag in Plaintiff's classroom and every message Plaintiff intended students to understand from it.*

RESPONSE:

I currently have a large number of images and posters in my classroom.  Some of these images are related to classes that I teach – such as quotes from historical figures – and some are merely personal expressions – such as signs for West Virginia University, FC Cincinnati and the Bengals.  Other posters and flags, such as my "co-exist" sign represent my view that the school has on obligation to protect all students from bullying and harassment regardless of race, religion, gender, or sexual orientation.  Some examples are included here:

The Hate Has No Home Here Flag was part of my efforts to symbolize support for marginalized students who could be some of the most at-risk students.  I believe that some members of the school board and the community at large have, through actions and public statements, expressed hostility towards many marginalized students, particularly LGBTQ students.  The Hate Has No Home Here Flag was a reminder that students must treat all of their classmates with mutual respect, regardless of personal opinions or beliefs.

My display of the Hate Has No Home Here Flag was private speech not within the scope of my duties as a teacher or pursuant to any school board policy or part of an effort to convey a government-created message.  In displaying the Hate Has No Home Here Flag I was not instructing, discussing the curriculum, or encouraging better academic performance.

*Interrogatory No. 2. State in detail the factual basis for Plaintiff's February 2, 2026 email (in Doc. 13-8) asserting that the Flag was "especially applicable" to the listed American History and AP European History standards. Confirm that you created and sent this email.*

RESPONSE:

In response to an inquiry from my principal, I reviewed the Social Studies Model Curriculum for high school American History, adopted by Ohio in 2019, and various materials related to the AP European History course.  Based on this review, I concluded that the message of the Hate Has No Home Here Flag is consistent with state and AP standards.

My statement that the Hate Has No Home Here Flag is "applicable" to various teaching standards is not the same as stating that the Hate Has No Home Here Flag was used for any teaching purposes.  The Hate Has No Home Here Flag was not a school-sponsored expression bearing the imprimatur of the school or designed to impart particular knowledge to the students.  I never used the Hate Has No Home Here Flag as part of my methodology of instruction, and never sought to instruct students or impart particular substantive knowledge on curricular matters through the use of the Hate Has No Home Here Flag.  Similar to other

3

items I have displayed in my classroom, the Hate Has No Home Here Flag was at most an incidental reference to topics discussed in class; I did not explicitly provide instruction on the Hate Has No Home Here Flag or incorporate it into my curricular materials.

My display of the Hate Has No Home Here Flag was private speech not within the scope of my duties as a teacher or pursuant to any school board policy or part of an effort to convey a government-created message.  In displaying the Hate Has No Home Here Flag I was not instructing, discussing the curriculum, or encouraging better academic performance.

*Interrogatory No. 3. Identify all lesson plans, class discussions, assignments, assessments, lectures, classroom-management practices, and student interactions in which Plaintiff contends the Flag was relevant, including any occasion on which Plaintiff pointed to, referenced, discussed, displayed, or directed any student's attention to the Flag or m on it during class, even if informally or not as part of a formal lesson plan.*

RESPONSE:

Plaintiff objects that the interrogatory is not relevant to any party's claim or defense. Plaintiff specifically objects that the phrase "any symbol appearing in it" would encompass almost every topic discussed in class, since the Hate Has No Home Here Flag includes an American flag.

With respect to the Hate Has No Home e Here Flag, the Hate Has No Home Here Flag was not used for any lesson plans, class discussions, assignments, assessments, lectures, classroom-management practices, and student interactions.  The Hate Has No Home Here Flag was not a school-sponsored expression bearing the imprimatur of the school or designed to impart particular knowledge to the students.  I never used the Hate Has No Home Here Flag as part of my methodology of instruction, and never sought to instruct students or impart particular substantive knowledge on curricular matters through the use of the Hate Has No Home Here Flag.  Similar to other items I have displayed in my classroom, the Hate Has No Home Here Flag was at most an incidental reference to topics discussed in class; I did not explicitly provide instruction on the Hate Has No Home Here Flag or incorporate it into my curricular materials.

My display of the Hate Has No Home Here Flag was private speech not within the scope of my duties as a teacher or pursuant to any school board policy or part of an effort to convey a government-created message.  In displaying the Hate Has No Home Here Flag I was not instructing, discussing the curriculum, or encouraging better academic performance.

4

*Interrogatory No. 4. State in detail what Plaintiff meant in the February 2, 2026 email (in Doc. 13-8) by saying points 3 and 6 of "What AP Stands For" were "particularly applicable" to the Flag.*

RESPONSE:

I reviewed the document available here:

> https://apcentral.collegeboard.org/media/pdf/ap-european-history-course-and-exam-description.pdf

This document states:

> Thousands of Advanced Placement teachers have contributed to the principles articulated here. These principles are not new; they are, rather, a reminder of how AP already works in classrooms nationwide. The following principles are designed to ensure that teachers' expertise is respected, required course content is understood, and that students are academically challenged and free to make up their own minds….

> 3. AP opposes censorship. AP is animated by a deep respect for the intellectual freedom of teachers and students alike. If a school bans required topics from their AP courses, the AP Program removes the AP designation from that course and its inclusion in the AP Course Ledger provided to colleges and universities. For example, the concepts of evolution are at the heart of college biology, and a course that neglects such concepts does not pass muster as AP Biology….

> 6. Every AP student who engages with evidence is listened to and respected. Students are encouraged to evaluate arguments but not one another. AP classrooms respect diversity in backgrounds, experiences, and viewpoints. The perspectives and contributions of the full range of AP students are sought and considered. Respectful debate of ideas is cultivated and protected; personal attacks have no place in AP.

Based on this review, I concluded that the message of the Hate Has No Home Here Flag is consistent with these statements in the 'What AP Stands For" document.  The Hate Has No Home Here Flag was part of my efforts to symbolize support for marginalized students who could be some of the most at-risk students. I believe that some members of the school board and the community at large have, through actions and public statements, expressed hostility towards many marginalized students, particularly LGBTQ students.  The Hate Has No Home Here Flag was intended to be a reminder that students must respect the intellectual freedom of teachers and students alike and, also, respect diversity in backgrounds, experiences, and viewpoints.

My statement that the Hate Has No Home Here Flag is "particularly applicable" to various AP standards is not the same as stating that the Hate Has No Home Here Flag was used for any teaching purposes.  The Hate Has No Home Here Flag was not a school-sponsored expression bearing the imprimatur of the school or designed to impart particular knowledge to the students.  I never used the Hate Has No Home Here Flag as part of my methodology of instruction, and never sought to instruct students or impart particular substantive knowledge on curricular matters through the use of the Hate Has No Home Here Flag.  Similar to other items I have displayed in my classroom, the Hate Has No Home Here Flag was at most an incidental reference to topics discussed in class; I did not explicitly provide instruction on the Hate Has No Home Here Flag or incorporate it into my curricular materials.

*Interrogatory No. 5. After reasonable and diligent inquiry, identify each occasion from August 1, 2022 to the present on which Plaintiff discussed with students in Plaintiff's class any topic involving sexual concepts or gender ideology, including any discussion involving sexual orientation, transgender identity, gender identity, or LGBTQ+ issues.*

RESPONSE:

Plaintiff objects that the interrogatory is not relevant to any party's claim or defense.  Plaintiff further objects that the time period, 2022 to the present, is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Plaintiff objects to the use of the terms "sexual concepts" and "gender ideology."  These terms are vague and not actually defined in the Statute or Policy, but are used within the definition of "sexuality content."  This leaves Plaintiff uncertain of what exactly the Interrogatory seeks to discover.

Notwithstanding and without waiving any objection, consistent with the need for full and broad discovery in civil rights cases, Plaintiff answers as follows:

I do not believe that I discussed any topic involving sexual content with students as that term is defined in 3113.473(G)(5) or Board Policy 5780.01.

I taught American History consistent with Ohio's Model Curriculum for Social Studies (adopted June 2019).  The model curriculum is available at: https://education.ohio.gov/getattachment/Topics/Learning-in-Ohio/Social-Studies/Model-Curriculum-for-Social-Studies/OhiosModelCurriculumSocialStudies.pdf.aspx

In American History, I taught students that the post-Cold War period and the attacks on Sept. 11, 2001, presented new domestic challenges for the United States.  One of the topics addressed was the continuing debate between the role of the state and federal government in political and social issues includes

disagreements over many issues, including LGBTQ rights.  (See Content Standard 32.)   I also taught students that following World War II, the United States experienced a struggle for racial and gender equality and the extension of civil rights and that movements began to highlight the need to secure the same freedoms and opportunities for groups of marginalized Americans that other Americans enjoyed.  Many Civil Rights activists demonstrated to affect political and social change. These activists mobilized to carry out demonstrations to bring light to the injustices plaguing the nation. Examples of these actions included the Gay Liberation Movement beginning with the Stonewall Riots, which led to an organized effort for full inclusion of LGBTQ individuals in public life and institutions.  (See Content Statement 27.)   I further taught students that the actions of the Soviet Union in Eastern Europe and the spread of communism in Asia caused a Red Scare.  These developments sparked fears among many Americans and challenged civil liberties. The Second Red Scare focused attention on the media, labor unions, universities, and the military as targets of communist subversion. Fears of subversion and charges of communist infiltration of the U.S. government led to the following actions: McCarthyism; investigations of the House Un-American Activities Committee; and blacklisting of suspected communists.   In teaching these topics, I would address the Lavender Scare, where LGBTQ individuals were deemed national security threats due to fears of susceptibility to blackmail by communist agents and President Eisenhower's Executive Order 10450, which banned homosexuals from federal employment. (See Content Standard 24.)

I taught AP European History consistent with the AP European History Course and Exam Description (2023).  The course and exam description are available at: https://apcentral.collegeboard.org/media/pdf/ap-european-history-course-and-exam-description.pdf

In AP European History, I taught students how and why European culture changed from the period following World War II to the present.  One of the topics addressed was that various movements, including women's movements, political and social movements, gay and lesbian movements, and others, worked for expanded civil rights, in some cases obtaining the goals they sought, and in others facing strong opposition.  (See Topic 9.14.)

I never used the Hate Has No Home Here Flag as part of my methodology of instruction, and never sought to instruct students or impart particular substantive knowledge on curricular matters through the use of the Hate Has No Home Here Flag.  Similar to other items I have displayed in my classroom, the Hate Has No Home Here Flag was at most an incidental reference to topics discussed in class; I did not explicitly provide instruction on the Hate Has No Home Here Flag or incorporate it into my curricular materials.

*Interrogatory No. 6. After reasonable and diligent inquiry, state whether, from August 1, 2022 to the present, Plaintiff engaged in any oral or written instruction, presentation, image-based discussion, or other classroom discussion concerning sexual concepts or gender ideology, as those terms are used in Board Policy 5780.01, while the Flag was displayed in the classroom. If so, identify each occasion and describe Plaintiff's use, if any, of the Flag in connection with that occasion.*

RESPONSE:

Plaintiff objects that the interrogatory is not relevant to any party's claim or defense. Plaintiff further objects that the time period, 2022 to the present, is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Plaintiff objects to the use of the terms "sexual concepts" and "gender ideology." These terms are vague and not actually defined in the Statute or Policy, but are used within the definition of "sexuality content." This leaves Plaintiff uncertain of what exactly the Interrogatory seeks to discover.

Notwithstanding and without waiving any objection, consistent with the need for full and broad discovery in civil rights cases, Plaintiff answers as follows:

I do not believe that I discussed any topic involving "Sexuality content" with students as that term is used in 3113.473(G)(5) or Board Policy 5780.01.

I taught American History consistent with Ohio's Model Curriculum for Social Studies (adopted June 2019). The model curriculum is available at: https://education.ohio.gov/getattachment/Topics/Learning-in-Ohio/Social-Studies/Model-Curriculum-for-Social-Studies/OhiosModelCurriculumSocialStudies.pdf.aspx

In American History, I taught students that the post-Cold War period and the attacks on Sept. 11, 2001, presented new domestic challenges for the United States. One of the topics addressed was the continuing debate between the role of the state and federal government in political and social issues includes disagreements over many issues, including LGBTQ+ rights. (See Content Standard 32.) I also taught students that following World War II, the United States experienced a struggle for racial and gender equality and the extension of civil rights and that movements began to highlight the need to secure the same freedoms and opportunities for groups of marginalized Americans that other Americans enjoyed. Many Civil Rights activists demonstrated to affect political and social change. These activists mobilized to carry out demonstrations to bring light to the injustices plaguing the nation. Examples of these actions included the Gay Liberation Movement beginning with the Stonewall Riots, which led to an organized

8

effort for full inclusion of LGBTQ individuals in public life and institutions. (See Content Statement 27.)

I taught AP European History consistent with the AP European History Course and Exam Description (2023). The course and exam description are available at: https://apcentral.collegeboard.org/media/pdf/ap-european-history-course-and-exam-description.pdf

In AP European History, I taught students how and why European culture changed from the period following World War II to the present. One of the topics addressed was that various movements, including women's movements, political and social movements, gay and lesbian movements, and others, worked for expanded civil rights, in some cases obtaining the goals they sought, and in others facing strong opposition. (See Topic 9.14.)

I never used the Hate Has No Home Here Flag as part of my methodology of instruction, and never sought to instruct students or impart particular substantive knowledge on curricular matters through the use of the Hate Has No Home Here Flag. Similar to other items I have displayed in my classroom, the Hate Has No Home Here Flag was at most an incidental reference to topics discussed in class; I did not explicitly provide instruction on the Hate Has No Home Here Flag or incorporate it into my curricular materials.

*Interrogatory No. 7. After reasonable and diligent inquiry, identify every instance in which Plaintiff discussed, explained, referenced, pointed to, or responded to questions about the Flag with any student in Plaintiff's classroom and summarize the substance of each communication.*

RESPONSE:

Plaintiff objects that the interrogatory is not relevant to any party's claim or defense. Plaintiff further objects that the time period, 2022 to the present, is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Notwithstanding and without waiving any objection, consistent with the need for full and broad discovery in civil rights cases, Plaintiff answers as follows:

In approximately September 2022 one student asked about the Flag and whether I was part of the LTBTQ community. I told the student that I was not a member of the LGTBQ community, but just an ally.

After the lawsuit was filed, some students approached me about the issue. One student said she was sorry that I was forced to take the Hate Has No Home Here Flag down. Other students simply said, "We know you can't talk about it." I did not speak to them further about the subject.

9

*Interrogatory No. 8. State whether Plaintiff agrees that the summary in Exhibit G_1 accurately described Plaintiff's position at the time: "Supporting aspects of the social studies curriculum, including topics that may involve sexual orientation or gender identity in historical context; and Signaling to students that the classroom is a respectful environment free from hate directed at individuals, including students who identify with groups reflected in the poster." If Plaintiff contends the summary was inaccurate or incomplete in any respect, identify each inaccuracy or omission and all facts supporting that contention.*

RESPONSE:

Plaintiff objects that the interrogatory is not relevant to any party's claim or defense in that the "summary in Exhibit G_1" is a legal "position" prepared by counsel that must be understood in the context of responding to specific inquiries from clients. Plaintiff is unable to characterize statements from counsel as "accurate" or "inaccurate" as doing so would require a characterization of Counsel's understanding of a situation which had been developed without any direct communication between Plaintiff and counsel.

Notwithstanding and without waiving any objection, consistent with the need for full and broad discovery in civil rights cases, Plaintiff answers as follows:

The summary is inaccurate because it fails to take into account that my display of the Hate Has No Home Here Flag was private speech not within the scope of my duties as a teacher or pursuant to any school board policy or part of an effort to convey a government-created message. In displaying the Hate Has No Home Here Flag I was not instructing, discussing the curriculum, or encouraging better academic performance. The Hate Has No Home Here Flag was part of my efforts to symbolize support for marginalized students who could be some of the most at-risk students. I believe that some members of the school board and the community at large have, through actions and public statements, expressed hostility towards many marginalized students, particularly LGBTQ students. The Hate Has No Home Here Flag was a reminder that students must treat all of their classmates with mutual respect, regardless of personal opinions or beliefs.

*Interrogatory No. 9. State all facts supporting Plaintiff's February 9, 2026 statement (in Doc. 13-8) that replacing the image with a "neutral" image may lead to the erasure of LGBTQ+ representation, including what Plaintiff meant by "LGBTQ+ representation."*

RESPONSE:

Selectively removing symbols associated with one community while retaining others is not neutrality — it is differential treatment based on identity. The First Amendment prohibits removal or restriction of library materials based on viewpoint discrimination. The First Amendment prohibits government actors, like Defendants, from removing images from teacher displays because they dislike the ideas contained in those images. The decision to force the removal of the Hate Has No Home Here Flag was made with the goal of taking an ethical and moral

10

stance against "gender ideology" (however that term may be defined) constitutes unconstitutional viewpoint discrimination. Applying the "neutrality" test only to LGBTQ symbols reveals that the motivation is identity-based exclusion, not viewpoint neutrality.

Targeting rainbow imagery for removal disproportionately burdens LGBTQ individuals. The rainbow has been a recognized symbol of LGBTQ identity for decades — its removal is not incidental.  Symbolic exclusion carries significant weight and when a message of inclusion explicitly omits the visual representation of the community it purports to include, it undermines the very claim of welcome.

The decision to force the removal of a symbol representing LGBTQ individuals does not occur in a vacuum but, instead, takes place against a backdrop of documented harm and threats to LGBTQ youth in Ohio that makes visible symbols of inclusion not merely decorative, but potentially life-saving.  Many LGBTQ students report or fear bullying, harassment, and physical assault because of their gender identity. Studies have suggested that LGBTQ youth in Ohio are more likely to report poor mental health and suicide attempts compared to heterosexual teens.[1]

The Legislature and the School Board, through actions such as HB 8 and "Parents Rights" policies, have advanced several measures that directly diminish LGBTQ youth safety and visibility in schools.  At the same time, members of the LGBTQ community no longer have access to specialized service through the national 988 Suicide and Crisis Lifeline as a result of a decision of the U.S. Department of Health and Human Services.[2]  I believe that LGBTQ young people who live in accepting communities are less likely to suffer mental health issues or attempt suicide and that visible symbols of inclusion — like a rainbow on a sign — are one tangible signal of community acceptance.  In this environment, removing a rainbow symbol from a sign that explicitly says *"Hate Has No Home Here"* sends a direct counter-message to the LGBTQ students and the community — it is an act of omission with potential negative consequences considering that LGBTQ youth face mental health issues, rampant school-based victimization and harassment, and a wave of restrictive legislation stripping away their visibility and safety.

The Hate Has No Home Here Flag was part of my efforts to symbolize support for marginalized students who could be some of the most at-risk students in the face of hostility from the Ohio Legislature, some members of the School Board, and parts of the community.  I believe that some members of the school board and the community at large have, through actions and public statements, expressed hostility towards many marginalized students, particularly LGBTQ students.

---

[1] See https://www.healthpolicyohio.org/health-policy-news/2025/06/27/graphic-of-the-week-pride-month (collecting studies).

[2] See https://www.dispatch.com/story/news/local/2025/07/17/trump-shuts-down-national-lgbtq-youth-crisis-suicide-hotline/85244742007

School Board members specifically objected to the inclusion of "rainbow" imagery, not the phrase "Hate Has No Home Here." One said: "we do love people and so if you want to put a sign up that says 'hate has no home here' yea, but the rainbow colors puts it into a another category. (sic)" Another said: "two of the symbols up there we know are gender identity or sexual orientation in nature. The blue and pink and white is the transgender, and the pride. The words alone 'hate has no place here' absolutely agree with it should be everywhere."[3]  My view remains that the Hate Has No Home Here Flag was a reminder that students must treat all of their classmates with mutual respect, regardless of personal opinions or beliefs.

*Interrogatory No. 10. Identify every non-counsel communication from January 28, 2026 through March 15, 2026 concerning the Flag, its meaning, the Board's review process, Superintendent Morgan's position, Exhibit G_1, or how Plaintiff should respond to the review process, including communications with LMTA representatives, other teachers, parents, media, or activists.*

RESPONSE:

Plaintiff will produce responsive documents.

*Interrogatory No. 11. Identify every student comment, question, assignment, one-on-one conversation, or other student interaction in Plaintiff's classroom from August 1, 2022 to the present that referred or related to the Flag or any symbol appearing on it.*

Plaintiff objects that the interrogatory is not relevant to any party's claim or defense. Plaintiff specifically objects that the phrase "any symbol appearing in it" would encompass almost every topic discussed in class, since the Hate Has No Home Here Flag includes an American flag.  Plaintiff further objects that the time period, 2022 to the present, is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Notwithstanding and without waiving any objection, consistent with the need for full and broad discovery in civil rights cases, Plaintiff answers as follows with respect to the Hate Has No Home Here Flag:

In approximately September 2022 one student asked about the Flag and whether I was part of the LTBTQ community.  I told the student that I was not a member of the LGTBQ community, but just an ally.

After the lawsuit was filed, some students approached me about the issue.  One student said she was sorry that I was forced to take the Hate Has No Home Here

---

[3] Transcript, Doc#13-4, PageID#118, 121.

12

Flag down.  Other students simply said, "We know you can't talk about it."  I did not speak to them further about the subject.

*Interrogatory No. 12. State in detail Plaintiff's understanding, from February 25, 2026 to the present, of what options were available to Plaintiff regarding the Flag after the Board's decision, including removal, replacement, modification, parental notice and opt-out procedures, and identify all facts and communications that informed Plaintiff's decision to remove and replace the Flag rather than pursue any other option.*

RESPONSE:

Plaintiff objects to Interrogatory on the grounds that it is vague, argumentative, and does not actually accurately describe the facts of this matter.  This leaves Plaintiff uncertain of what exactly the Interrogatory seeks to discover.

Notwithstanding and without waiving any objection, consistent with the need for full and broad discovery in civil rights cases, Plaintiff answers as follows:

I am aware that on February 4, 2026, Tarazi wrote an email suggesting "general messaging on classroom walls" could "utilize more neutral versions of the anti-hate and respect theme…"  I responded as follows:  "I have also given consideration to Mr. Tarazi's suggestions about an alternative display. My concern is that attempting to find a different, "neutral" image may inadvertently lead to the erasure of LGBTQ+ representation. My preference would be to discuss any additional representation that could potentially be added to the existing flag, rather than removing any of the represented groups."

*Interrogatory No. 13. Identify and describe in detail each of the five hands and heart-shaped icons appearing on the Flag as depicted in Exhibit G_2 or any photograph of the Flag. For each icon, state: (a) what it depicts, including any flags, symbols, colors, images, or text within or comprising the heart; (b) what group, concept, value, identity, or message Plaintiff intended that icon to represent or convey to students; and (c) the factual basis for Plaintiff's understanding or intention regarding that icon.*

RESPONSE:

This "Hate Has No Home Here" sign is a variation of a popular social campaign that I believe originated in North Park, Chicago, in November 2016.[4] The movement was started by a group of neighbors to promote inclusivity and safety within diverse communities (the original design typically features the phrase translated into multiple languages).  The Hate Has No Home Here Flag is based on a simple, universal message of acceptance.

The version in my classroom was created to be more inclusive and widely accepted than previous versions.  Each heart is held up by an arm of a different

---

[4] https://www.chicagotribune.com/2017/02/02/hate-has-no-home-here-campaign-started-in-north-park-goes-viral/

color, emphasizing solidarity and inclusivity across different backgrounds. I observe that symbols can and do evolve over time. Here is a breakdown of the images from left to right:

1. Multi-Colored Heart.  The image features seven stripes that range from orange to white to pink in a kind of ombre design.  I originally thought the colors simply represented different skin tones.  I have subsequently learned (in preparing this response) that the image is sometimes referred to as the "Sunset Lesbian Pride Heart" to highlight the diversity of lesbian identity beyond femininity traditionally associated with pink.

2. Transgender Pride Heart.  The image features colors chosen for their traditional associations with boys and girls and the entire symbol represents those who are transitioning, intersex, or consider themselves to have a neutral or undefined gender.

3. American Flag Heart.  The American flag has evolved since 1777 and placing it in a heart shape is a common motif in U.S. iconography to signify patriotism.  In the context of this sign, it represents inclusive patriotism, meaning that American identity is defined by the values of the inclusivity and that people of all backgrounds belong under our national banner.

4. Peace Symbol Heart.  While it began as an anti-war symbol, it has become a universal icon for global peace, non-violence, and harmony. Placing it in a purple heart emphasizes the "love" aspect of a peaceful and inclusive society.

5. Rainbow Pride Heart.  The original striped flag was designed at the request of Harvey Milk and is the primary symbol for the LGBTQ community.  Each color has a specific meaning (typically, Red for life, Orange for healing, Yellow for sunlight, Green for nature, Blue for harmony, and Violet for spirit), and together they represent the broad spectrum of human diversity.

*Interrogatory No. 14. Identify all social media platforms and accounts Plaintiff has maintained or used since August 1, 2022, and describe any posts, comments, shares, likes, replies, or other activity relating to the Flag, the "Hate Has No Home Here" message or display, this controversy or lawsuit, the symbols or groups reflected in the Flag, parental rights, or Board Policy 5780.01. Exclude only communications solely with Plaintiff's counsel.*

RESPONSE:

Plaintiff objects that the interrogatory is not relevant to any party's claim or defense. Plaintiff specifically objects that the phrase "any symbol appearing in it" would encompass almost every topic discussed in class, since the Hate Has No Home Here Flag includes an American flag.  Plaintiff further objects that the time period, 2022 to the present, is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

14

Discovery on social media sought by the interrogatory is overly broad, resulting in a "fishing expedition," especially since Defendants seek information from these social media accounts on events and posts that occurred before the relevant events of this case.  Defendants are invited to provide a clear factual predicate that draws a connection between the claims asserted in this and any information that Defendants might obtain through Plaintiff's social media data.  *Cf. Thurman v. City of Frankfort*, E.D.Ky. No. 3:21-CV-00013, 2023 U.S. Dist. LEXIS 43045, at \*6 (Mar. 15, 2023).

Defendant further states that he rarely, if ever, posts on social media.

*Interrogatory No. 15. State whether Plaintiff contends that the Flag as used in Plaintiff's classroom did not constitute "sexuality content" as defined in Board Policy 5780.01 or that a reasonable observer would not conclude its primary purpose was to prompt discussion, provide instruction, or solicit student engagement on sexual concepts or gender ideology. If Plaintiff so contends, identify all facts, documents, ESI, communications, and reasoning supporting that contention.*

RESPONSE:

Plaintiff objects to the use of the terms "sexual concepts" and "gender ideology." These terms are vague and not actually defined in the Statute or Policy, but are used within the definition of "sexuality content."  This leaves Plaintiff uncertain of what exactly the Interrogatory seeks to discover.

The Hate Has No Home Here Flag is not "Sexuality content" because it does not constitute any oral or written instruction, presentation, image, or description of sexual concepts or gender ideology provided in a classroom setting.  In addition, even if the Hate Has No Home Here Flag constituted oral or written instruction, presentation, image, or description of sexual concepts or gender ideology provided in a classroom setting, the Hate Has No Home Here Flag still would not constitute "Sexuality content" as the term is used in the Revised Code and Board Policy because the Hate Has No Home Here Flag constitutes incidental references to sexual concepts or gender ideology occurring outside of formal instruction or presentations on such topics.

The primary purpose of the Hate Has No Home Here Flag was not to prompt discussion, provide instruction, or solicit student engagement on sexual concepts or gender ideology.  I currently have a large number of images and posters in my classroom.  Some of these images are related to classes that I teach – such as quotes from historical figures – and some are merely personal expressions – such as signs for West Virginia University, FC Cincinnati and the Bengals.  The Hate Has No Home Here Flag, like other posters and flags, such as my "co-exist" sign, represent my view that the school has on obligation to protect all students from bullying and harassment regardless of race, religion, gender, or sexual orientation.

The Hate Has No Home Here Flag was not a school-sponsored expression bearing the imprimatur of the school or designed to impart particular knowledge to the

students.  I never used the Hate Has No Home Here Flag as part of my methodology of instruction, and never sought to instruct students or impart particular substantive knowledge on curricular matters through the use of the Hate Has No Home Here Flag.  Similar to other items I have displayed in my classroom, The Hate Has No Home Here Flag was at most an incidental reference to topics discussed in class; I did not explicitly provide instruction on the Hate Has No Home Here Flag or incorporate it into my curricular materials.

*Interrogatory No. 16. Identify any non-student adults, if any, that where in Plaintiff's classroom during instruction from August 1, 2022 to the present.*

RESPONSE:

Plaintiff objects that the interrogatory is not relevant to any party's claim or defense. Plaintiff further objects that the time period, 2022 to the present, is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Notwithstanding and without waiving any objection, consistent with the need for full and broad discovery in civil rights cases, Plaintiff answers as follows: I am not aware of any non-student adults who were present in my classroom during instruction outside of school administrators.  I have had guest speakers in the past for my law class, such as prosecutors, law enforcement officers, and lawyers.

*Interrogatory No. 17. State whether Plaintiff contends the original Flag conveyed any message materially different from the replacement "Hate Has No Home Here" poster later displayed in its place. If so, identify each such message in detail and state all facts supporting Plaintiff's contention that the original Flag conveyed that message and the replacement poster did not.*

RESPONSE:

See Response to Interrogatory No. 9.

*Interrogatory No. 18. Does Plaintiff attempt to engage with students in Plaintiff's classroom regarding sexual concepts or gender ideology? If so how and when?*

Plaintiff objects to the use of the terms "sexual concepts" and "gender ideology." These terms are vague and not actually defined in the Statute or Policy, but are used within the definition of "sexuality content."  This leaves Plaintiff uncertain of what exactly the Interrogatory seeks to discover.

See Response to Interrogatory No. 6.

16

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

*Request for Production No. 1. All documents and ESI relating to the acquisition, selection, purchase, creation, display, placement, or purpose of the Flag.*

RESPONSE:

Plaintiff will produce responsive documents, if any.

*Request for Production No. 2. All communications between Plaintiff and any third party, excluding attorney-client communications with litigation counsel, from January 28, 2026 through March 15, 2026 concerning the Flag, its meaning, the Board's review process, Superintendent Morgan's position, Exhibit G_1, or how Plaintiff should respond to the review process.*

RESPONSE:

Plaintiff will produce responsive documents, if any.

*Request for Production No. 3. All documents and ESI from August 1, 2022 to the present reflecting, referring, or relating to any classroom discussion, lesson, assignment, student interaction, or classroom-management practice in which the Flag or any symbol on it was referenced, discussed, displayed, pointed to, or used to reinforce a message.*

RESPONSE

Plaintiff objects that the interrogatory is not relevant to any party's claim or defense. Plaintiff specifically objects that the phrase "any symbol appearing in it" would encompass almost every topic discussed in class, since the Hate Has No Home Here Flag includes an American flag.  Plaintiff further objects that the time period, 2022 to the present, is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Plaintiff states that there are no responsive documents.

*Request for Production No. 4. All drafts, attachments, notes, comments, and communications relating to Plaintiff's February 2, 2026 email (in Doc. 13-8), including all communications with the principal, superintendent, LMTA representatives, coworkers, or others about preparing, revising, or sending that email excluding communications solely with Plaintiff's counsel.*

RESPONSE:

Plaintiff will produce responsive documents, if any.

*Request for Production No. 5. All drafts, attachments, notes, comments, and communications relating to Plaintiff's February 9, 2026 email (in Doc. 13-8), including all*

17

*communications with the principal, superintendent, LMTA representatives, coworkers, or others about preparing, revising, or sending that email excluding communications solely with Plaintiff's counsel.*

RESPONSE:

> Plaintiff will produce responsive documents, if any.

*Request for Production No. 6. All drafts, attachments, notes, comments, and communications relating to Plaintiff's February 16, 2026 email (in Doc. 13-8), including all communications with the principal, superintendent, LMTA representatives, coworkers, or others about preparing, revising, or sending that email excluding communications solely with Plaintiff's counsel.*

RESPONSE:

> Plaintiff will produce responsive documents, if any.

*Request for Production No. 7. All documents and ESI that support Plaintiff's assertion in the February 2, 2026 email (in Doc. 13-8) that the Flag was "especially applicable" to the identified American History and AP European History standards.*

RESPONSE:

> Plaintiff will produce responsive documents, if any.

*Request for Production No. 8. All lesson plans, syllabi, lecture notes, slide decks, handouts, assignments, quizzes, tests, discussion prompts, or other instructional materials referring or relating to the topics identified in Plaintiff's February 2, 2026 email (in Doc. 13-8) and any connection between those topics and the Flag.*

RESPONSE:

> Plaintiff objects that the request, which would call for the production of every document used in teaching his classes, is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

> Plaintiff further objects on the grounds that the request is not relevant since Plaintiff did not explicitly provide instruction on the Hate Has No Home Here Flag or incorporate it into any curricular materials.

*Request for Production No. 9. All documents and ESI reflecting Plaintiff's understanding, interpretation, or use of "What AP Stands For" in connection with the Flag.*

RESPONSE:

> Plaintiff will produce responsive documents, if any.

18

*Request for Production No. 10. All documents and ESI from August 1, 2022 to the present relating to any classroom discussion, lesson, assignment, or instructional material concerning sexual concepts or gender ideology, including discussions involving sexual orientation, transgender identity, gender identity, or LGBTQ+ issues, while the Flag was displayed in the classroom.*

RESPONSE:

Plaintiff objects to the use of the terms "sexual concepts" and "gender ideology." These terms are vague and not actually defined in the Statute or Policy, but are used within the definition of "sexuality content." This leaves Plaintiff uncertain of what exactly the Interrogatory seeks to discover.

Plaintiff objects that the request, which would call for the production of materials used in teaching his classes from 2022 to the present, is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Plaintiff further objects on the grounds that the request is not relevant since Plaintiff did not explicitly provide instruction on the Hate Has No Home Here Flag or incorporate it into any curricular materials.

*Request for Production No. 11. All documents and ESI relating to Plaintiff's statement that replacing the image with a "neutral" image may erase LGBTQ+ representation or represented groups.*

RESPONSE:

Plaintiff will produce responsive documents, if any.

*Request for Production No. 12. All documents and ESI reflecting any instance in which Plaintiff referenced, discussed, displayed, or directed any student's attention to the Flag or any symbol on it during class, including informal classroom discussions.*

RESPONSE:

Plaintiff objects that the interrogatory is not relevant to any party's claim or defense. Plaintiff specifically objects that the phrase "any symbol appearing in it" would encompass almost every topic discussed in class, since the Hate Has No Home Here Flag includes an American flag. No responsive documents exist with respect to the Hate Has No Home Here Flag.

19

*Request for Production No. 13. All public statements, social media posts, messages, or communications by Plaintiff from August 1, 2022 to the present describing the purpose, meaning, symbolism, educational value, or classroom significance of the Flag.*

RESPONSE:

No responsive documents exist.

*Request for Production No. 14. All text messages, direct messages, and other message-application communications from August 1, 2022 to the present referring or relating to the Flag, its meaning, its classroom use, or the February 2026 emails excluding communications solely with Plaintiff's counsel.*

RESPONSE:

Plaintiff objects that the request, which would call for the production of materials used in teaching his classes from 2022 to the present, is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

No responsive documents exist related to the February 2026 emails.

*Request for Production No. 15. All documents and communications reflecting Plaintiff's understanding of, reaction to, or decision regarding removal, replacement, modification, parental notice, opt-out procedures, or any other alternative following the Board's February 25, 2026 decision.*

RESPONSE:

Plaintiff will produce responsive documents, if any.

*Request for Production No. 16. All documents and ESI on which Plaintiff relies, or intends to rely, in support of the Motion for Preliminary Injunction.*

RESPONSE:

Plaintiff objects to the extent the request seeks information protected by the attorney work product doctrine. Notwithstanding this objection, Plaintiff will produce all documents in his custody and control intended to be used in support of the Motion for Preliminary Injunction in advance of filing once a decision on use has been made.

20

*Request for Production No. 17. All documents and ESI reflecting, referring, or relating to Plaintiff's understanding, contention, or statement that the original Flag conveyed any message materially different from the replacement "Hate Has No Home Here" poster later displayed in its place.*

RESPONSE:

Plaintiff will produce responsive documents, if any.

Request for Production No. 18. Copies of all content Plaintiff has provided to students in students classroom that includes sexual concepts or gender ideology. For each item provided, detail in your response to interrogatory 18 when it was it provided and how?

Plaintiff objects to the use of the terms "sexual concepts" and "gender ideology." These terms are vague and not actually defined in the Statute or Policy, but are used within the definition of "sexuality content." This leaves Plaintiff uncertain of what exactly the Interrogatory seeks to discover.

As to Interrogatory Answers, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 22nd day of May 2026.

_____/s/ George McIntyre_____
George McIntyre

Respectfully submitted,

_/s/ Joshua Engel_____
Joshua Adam Engel (OH 0075769)
Jim Hardin (0056247)
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been electronically served via email this May 22, 2026 upon all counsel of record.

/s/ Joshua Engel
Joshua Engel

21