**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| GEORGE MCINTYRE | Case No. 1:26-cv-00351-MWM |
| Plaintiff | Judge:  Matthew W. McFarland |
| v. | |
| LITTLE MIAMI SCHOOL DISTRICT, ET AL | AFFIDAVIT OF  |
| Defendants | |

███████ ████████ , being duly sworn on oath, does depose and state as follows:

1. I am one of the individuals who sent text messages to George McIntyre concerning the Hate Has No Home Here Flag.

2. I am submitting this Affidavit to respectfully request that my identity remain anonymous and that any text messages involving me be produced in a manner that does not disclose my name or identifying information.

3. I am a parent of a student in the Little Miami Schools and have been actively involved in matters relating to the District and Board of Education for several years as a volunteer, and community member.

4. As a result of my political involvement, I was previously named as a defendant in a defamation lawsuit brought by David Wallace and his wife.  This lawsuit involved statement that I made during a school board meeting that were critical of Mr. Wallace.

1

5. The Court ultimately dismissed the lawsuit under Ohio's new Anti-SLAPP litigation.  A copy of the decision from the Magistrate Judge is attached. However, I was forced to incur significant legal fees and spend a lot of time before obtaining that dismissal.  I am concerned that fighting a new defamation suit, however baseless, against a prominent, deep-pocketed plaintiff like a Mr. Wallace can burn up plenty of time, attention, and money and will chill my speech and the speech of others who will become afraid to speak up against Mr. Wallace and his allies.

6. I have been publicly identified, discussed, criticized, and falsely accused on social media in connection with school district and school board issues.  In one instance, my picture was posted equating me and others who have spoken up against Wallace to "a small group of left wing socialists" who are "loud, contradictory, instigating, and generally just on the wrong side of history."  I was described as a "proponent of sexually orientated and improper books being peddled to… children."  I was also described as "not necessarily important in the real world or possess[ing] skills and expertise that benefit society and American greatness."

7. In addition, I am aware of a public-records request seeking communications involving me and district personnel. Some of those communications may include discussions relating to my child, who is a student in the district, which has heightened my concerns about the public disclosure of information connected to me and my family.

2

8. These experiences have subjected me to significant public attention and scrutiny beyond what most private citizens would reasonably expect.  Because of those experiences, I have a genuine concern that public disclosure of my name and personal contact information in connection with this lawsuit will result in additional unwanted attention, harassment, and further invasion of my privacy.

9. My concerns are not speculative. They are based on my experiences of being drawn into public disputes, subjected to litigation, publicly criticized, and falsely accused in connection with school district matters.

10. I am not attempting to prevent the parties from obtaining relevant information through appropriate legal processes, nor am I seeking to interfere with discovery.  Rather, I am requesting that my identity and personal contact information be protected from unnecessary public disclosure.  Because the communications themselves have already been produced, I believe public disclosure of my identity would provide little additional value while substantially increasing the likelihood of further public scrutiny and targeting.

11. If the Court determines that disclosure of my identity is necessary for purposes of this litigation, I respectfully request that any such disclosure be limited to the parties, counsel, and the Court, and not be included in publicly accessible filings.

4

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 6th Day of July 2026.

Filed in Warren County on 07/09/2025 10:09:36 AM

## IN THE COURT OF COMMON PLEAS
## STATE OF OHIO, COUNTY OF WARREN
## GENERAL DIVISION

| | |
|---|---|
| DAVID WALLACE, et al., | : ▮▮▮▮▮▮▮▮▮▮▮▮ |
| **Plaintiffs,** | : **JUDGE ROBERT W. PEELER** |
| | **Magistrate Carolyn C. Besl** |
| **v.** | : |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | : **MAGISTRATE'S DECISION** |
| | **GRANTING DEFENDANT'S** |
| **Defendant.** | : **MOTION FOR EXPEDITED** |
| | **RELIEF** |
| | : |

This matter came before the Court on June 23, 2025 for a hearing on the motion of Defendant ▮▮▮▮▮▮▮▮▮▮ for expedited relief to dismiss the complaint of Plaintiffs David and Erin Wallace pursuant to the Uniform Public Expression Protection Act. Present at the hearing were Plaintiffs with Attorney Mark Eppley and Defendant with Attorney Joshua Engel.

At the hearing, Plaintiffs and Defendant testified. Defendant also presented the testimony of Kristi Hamberg over Defendant's objection to the separation of witnesses.[1] Joint Exhibits 1, 2, and 3 were admitted into the record, as well as Plaintiffs' Exhibits 3 and 4.

### FINDINGS OF FACT

Based upon the testimony at the hearing and the stipulation of the parties, the undersigned Magistrate makes the following findings of fact. The undersigned finds all witnesses were generally credible in their testimony.

In November 2023, Plaintiff David Wallace ("David") was elected to the position of board member of the Little Miami School Board of Education with his term in office commencing January 1, 2024. David's wife, Plaintiff Erin Wallace ("Erin"), attends all school board meetings with David and unsuccessfully ran for the school board

---

[1] The Court notes no request for separation of witnesses was made at the hearing.

1

approximately 10 years ago. Defendant has children in the Little Miami school district, attends almost all school board meetings, and runs a Facebook page called "Moms of Little Miami," which circulates information about happenings at the school and with the school board.

It appears tensions have run high at several of the monthly school board meetings between several individuals, including the parties to this case. One reason for such tension was a disagreement in 2024 regarding the banning of certain books and decor in Little Miami classrooms. Like things often do in this age of the internet, these tensions were heightened and exacerbated by rhetoric posted on social media platforms; particularly on Facebook.

### The Squad Post

In May 2024, an anonymous source made a post on a Facebook page called "Little Miami School District Concerned Citizens." The post refers to a "Squad," or group of four women, including Defendant, who are "loud, contradictory, instigating, and generally just on the wrong side of history" (the "Squad Post"). *Joint Ex. 1*. The Squad Post goes on:

> You may already be familiar with * * * and ▮▮▮▮▮▮▮▮▮▮▮ as some are members of the LM PTO, and all for are the main proponents of sexually orientated (sic) and improper books being peddled to your children. You'll catch the squad posting all over social media as experts on any given topic, even though they are not necessarily important in the real world or possess skills and expertise that benefit society and American greatness.

> The reason for this post is because I have noticed a possible influence by these individuals (and a few more) to certain members of our board and administration. More to come on that...

> Just because you are loud does not mean you are right, and if the school administration is pandering to these individuals, then that is a problem and we will shed light on it.

*Id.* The Squad Post ends with pictures of Defendant and the three other women named in the post.

Defendant did not see the Squad Post originally. A copy of the post was screenshotted by Kristi Hamberg and sent to a group chat that included Defendant. Defendant testified she believes Plaintiffs are behind the post, whether by writing the post or approving the post. David previously posted under his own name on the Little Miami School District Concerned Citizens Facebook page and acknowledged being familiar with the page and

one of its administrators, Jake Oakley.[2] Hamberg testified she is also of the opinion that David is behind the Squad Post or worked in concert with its anonymous author because the post "sounded like things" David had said or posted in the past and because only certain people had access to the pictures of the women used in the post, including David. Both David and Erin denied being behind the Squad Post. However, David acknowledged that others have questioned whether he was behind the Little Miami School District Concerned Citizens Facebook page in the past. David testified that he denied being behind this page at a school board meeting and Defendant confirmed she was aware he denied his involvement with the Facebook page but did not believe him. David also testified that he told Jake Oakley to take the Squad Post down because of its defamatory language.

Defendant testified she interpreted the Squad Post as calling her and her friend group dumb, lacking skill, and pandering improper books to children like a pedophile. Defendant acknowledged that the post does not specifically accuse her or anyone else of being a pedophile.

*The Board Meeting*

Almost a year later, at a March 25, 2025 school board meeting, public comments on non-agenda items were being taken by the school board. David, Erin, and Defendant were all in attendance. *See Joint Ex. 2-3*. Defendant did not intend to speak at the meeting but was there in support of a friend whose organization had raised money to pay off unpaid lunch accounts within the school district.

The first speaker was critical of David for filing a lawsuit against the school district and other school board members. The second speaker was also critical of David's lawsuit and his allegedly hostile attitude. The third speaker addressed a separate issue not pertinent to this case. A fourth speaker then referred to the audience as "the biggest bunch of bullies I've ever seen" and told everyone that they should be more respectful of each other and the board members. After this individual, Defendant stood and made the following statement:

> It's really easy to sit and talk about having respect when you've been called a pedophile online by parents in this community; when you have been told you are dumb by people in this community; when you have been told you have no skills by people in this community; and by people in this community, I mean a

---

[2] It was represented to the Court that the other administrator of the Facebook page is anonymous and efforts to obtain the person's identity have not been fruitful.

gentleman standing right—sitting right—there at that table and his wife and people who support them.

Before Defendant was able to say anything further, David abruptly ended public comments without the authority to do so, told Defendant she should not make such comments about his wife, and demanded the meeting be adjourned. The president of the board adjourned the meeting amongst a great deal of yelling and commotion. *Joint Ex. 2-3.*

On April 16, 2025, Plaintiffs filed suit against Defendant, raising causes of action for defamation, intentional and unintentional infliction of emotional distress, and unlawful disparagement.

On May 2, 2025, Defendant moved for expedited relief to dismiss this suit under Ohio's newly enacted Uniform Public Expression Protection Act (the "Act"), commonly referred to as an "Anti-SLAPP" statute.[3] R.C. 2747.01 *et seq.* Based upon the timely filing of that motion, all proceedings in this matter were stayed, including discovery, pending a ruling by this Court. The matter proceeded to a hearing on June 23, 2025 and the issue is now ripe for review.

### THE UNIFORM PUBLIC EXPRESSION PROTECTION ACT

The Act, which went into effect April 9, 2025, permits a defendant to seek expedited relief to dismiss a civil action or claim within 60 days of service of a complaint that seeks to chill constitutionally protected speech. R.C. 2747.02. The purpose of the Act is to "confer substantive immunity from suit, and not merely immunity from liability, for any cause of action described in [R.C. 2747.01(B)]." R.C. 2747.01(E).

For the Act to apply, the complaint must assert a cause of action or actions against a person based on (1) the person's communication in a legislative, executive, judicial, administrative, or other governmental proceeding; (2) the person's communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding; or (3) the person's exercise of the right of freedom of speech and of the press, the right to assemble and petition, and the right of association, guaranteed by the United States Constitution or the Ohio Constitution, on a matter of public concern. R.C. 2747.01(B). In the case at hand, the parties have stipulated that

---

[3] SLAPP stands for "strategic lawsuit against public participation."

Defendant's statement made during the March 25, 2025 school board meeting was made during a governmental proceeding or on a matter of public concern, falls within the purview of R.C. 2747.01(B), and is not subject to any exception under R.C. 2747.01(C).

In ruling on a motion for expedited relief, the Court must consider the pleadings, the motion, the response to the motion, and any evidence presented that can be considered under a Civ.R. 56 analysis. *Id.* The Court shall dismiss the cause of action if all of the following apply:

1. The moving party establishes that the cause of action is based on a communication or action described in R.C. 2747.01(B);

2. The responding party fails to establish that this chapter does not apply to the cause of action due to an exception in R.C. 2747.01(C); and

3. Either the responding party fails to establish a prima facie case for each essential element of the cause of action or the moving party establishes one of the following:

   a. The responding party failed to state a cause of action upon which relief can be granted; or

   b. There is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the cause of action.

R.C. 2747.04. The court is instructed to broadly construe and apply the Act to "protect the exercise of the right of freedom of speech and of the press, the right to assemble and petition, and the right of association, guaranteed by the United States Constitution and the Ohio Constitution." R.C. 2747.06.

Pursuant to R.C. 2747.04(C)(3), the Court must consider Plaintiffs' causes of action and Defendant's motion for expedited dismissal under two different theories of relief. The first is under a Civ.R. 12(B)(6) analysis: whether Plaintiffs has failed to state a cause of action upon which relief can be granted.[4] The second is under a Civ.R. 56(C) analysis:

---

[4] Civ.R. 12(B)(6) addresses motions to dismiss for failure to state a claim upon which relief may be granted. Such a motion is procedural and tests the sufficiency of the complaint. *State ex Rel. Hanson v. Guernsey Cty. Bd. Of Commrs.*, 65 Ohio St. 3d 545, 548 (1992). Generally, a Civ.R. 12(B)(6) motion will be granted only where the party opposing the motion can prove no set of facts in support of its claim that would entitle it to relief. *O'Brien v. University Community Tenant's Union*, 42 Ohio St. 2d. 242, 244 (1975). The allegations of the complaint are taken to be true, and every reasonable inference is made in the nonmoving party's favor. *Id.* A complaint is not to be dismissed for failure to state a claim merely because the pleading

whether there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law.[5] The undersigned shall apply one or both standards where applicable in addressing the causes of action raised in this case.

## CONCLUSIONS OF LAW

Plaintiffs raise four causes of action in their complaint: (1) defamation; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; and (4) unlawful disparagement. While the parties focused almost exclusively on the defamation cause of action, the undersigned finds all four causes of action relate to the statement Defendant made at the school board meeting and, therefore, are subject to review under the Act. The undersigned shall address each cause of action in turn.

### Defamation

Defamation is a false statement published by a party acting with the required degree of fault that injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame, or disgrace, or adversely affects the person's profession. *Drone Consultants, L.L.C. v. Armstrong*, 2016-Ohio-3222, ¶ 28 (12th Dist.), citing *Becker v. Internatl. Assn. of Firefighters Local 4207,* 2010-Ohio-3467, ¶ 9 (12th Dist.). There are two forms of defamation: libel and slander. Slander refers to spoken defamatory words and libel refers to written defamatory words. *Id.,* citing *Woods v. Capital Univ.,* 2009-Ohio-5672, ¶ 27 (10th Dist.). Generally, a defamation claim consists of the following elements: (1) a false and defamatory statement made by the defendant; (2) that was published to a third party without privilege; (3) that caused injury to the plaintiff; and (4) while the defendant acted with the required degree of fault. *Curry v. Blanchester,* 2010-

_____

party's legal theory is unsupported by the allegations; rather, the complaint can be dismissed only if the Court finds that the allegations do not entitle the pleading party to relief under any possible theory. *Fahnbulleh v. Strahan,* 73 Ohio St.3d 666, 667 (1995).

5 Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial. *Linardos v. Joe Tex, Inc.,* 2014-Ohio-4522, ¶ 8 (12th Dist.), citing *Roberts v. RMB Ents., Inc.,* 197 Ohio App.3d 435, 2011-Ohio-6223, ¶ 6 (12th Dist.). Pursuant to Civ.R. 56, summary judgment is proper when: "(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only come to a conclusion adverse to the party against whom the motion is made, construing the evidence most strongly in that party's favor." *Slowey v. Midland Acres, Inc.,* 2008-Ohio-3077, ¶ 8 (12th Dist.). In determining whether a genuine issue of material fact exists, the evidence must be construed in the nonmoving party's favor. *Walters v. Middletown Properties Co.,* 2002-Ohio-3730, ¶ 10 (12th Dist.).

Ohio-3368, ¶ 41 (12th Dist.), *Heidel v. Amburgy,* 2003-Ohio-3073, ¶ 14 (12th Dist.); *Slye v. London Police Dept.*, 2010-Ohio-2824, ¶ 45 (12th Dist.).

For the purpose of this decision, the undersigned will presume Defendant's statement at the March 25, 2025 school board meeting was defamatory, though the undersigned questions whether this element is satisfied.

1. <u>Defamatory Per Se or Per Quod</u>

Whether slander or libel, defamatory statements fall under two categories: defamation *per se* and defamation *per quod*. *Drone*, 2016-Ohio-3222 at ¶ 30, citing *McWreath v. Cortland Bank*, 2012-Ohio-3013, ¶ 42 (11th Dist.). Defamation *per se* occurs when a statement is defamatory on its face; defamation *per quod* occurs when a statement is defamatory through interpretation or innuendo. *Whiteside v. United Paramount Network*, 2004-Ohio-800, ¶ 14 (12th Dist.). When a complaint alleges defamation *per se*, damages are presumed; when a complaint alleges defamation *per quod*, the complaint must allege special damages. *Williams v. Gannett Satellite Information Network, Inc.,* 2005-Ohio-4141, ¶ 7 (1st Dist.).

For a statement to be defamatory *per se*, it must be "actionable upon the very words spoken without regard to the interpretation of the listener, *i.e.,* it is actionable on its face." *Dover Chem. Corp. v. Dover*, 2022-Ohio-2307, ¶ 61 (5th Dist.), citing *Hurst v. Moore*, 2017-Ohio-7238, ¶ 23 (5th Dist.). The statement must "consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, impute some loathsome or contagious disease which excludes one from society, or tend to injure one in his trade or occupation." (Internal quotations omitted). *Drone* at ¶ 30, quoting *Whiteside v. Williams*, 2007-Ohio-1100, ¶ 5 (12th Dist.). In other words, a statement is defamatory *per se* to the claimant if, on its face, it "reflects upon his character in such a manner that would cause him to be ridiculed, hated, or held in contempt, or in a manner that will injure him in his trade or profession." *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 651 N.E.2d 1283 (1995); *Croskey v. Universal Health Services*, 5th Dist. Richland No. 09 CA 37, 2009-Ohio-5951.

Upon review, the undersigned finds Defendant's statement at the school board meeting did not reflect upon Plaintiffs' character in such a manner that would cause them to be ridiculed, hated, or held in contempt, or in a manner that would injure their trade

or profession. Defendant accuses David, Erin, or their supports of referring to her as "dumb" and a "pedophile." The statement does not imply Plaintiffs have been accused of a criminal offense involving moral turpitude or impute some loathsome disease upon them. The statement does not tend to injure Plaintiffs' in their occupations. David testified that his family has not suffered any pecuniary loss due to statement. Accordingly, the undersigned finds the statement in question falls under the category of defamation *per quod*.

The undersigned further finds Plaintiffs have not plead sufficient facts for their defamation *per quod* claim to survive Civ.R. 12(B)(6) or Civ.R. 56 scrutiny. "There can be no maintenance of an action for [defamation] *per quod* in the absence of special damages." *Whitt Sturtevant, LLP v. NC Plaza LLC*, 2015-Ohio-3976, ¶ 78 (10th Dist.), quoting *Hampton v. Dispatch Printing Co.*, 10th Dist. No. 87AP–1084, 1988 WL 96227 (Sept. 13, 1988). "Special damages are those direct financial losses resulting from the [claimant's] impaired reputation." *Id.*, citing *Wheeler v. Yocum*, 10th Dist. No. 85AP-828, 1986 WL 3711 (Mar. 25, 1986); s*ee also Peters v. Ohio Dept. of Rehab. & Corr.*, 2015-Ohio-2668 (10th Dist.). Plaintiffs have failed to allege in their complaint any direct financial loss resulting from Defendant's statement and acknowledged at the hearing that they have suffered none. As such, their defamation claim fails. *See Whitt Sturtevant*, 2015-Ohio-3976 at ¶ 80 ("[E]ven if we consider the false statements in the notice to leave to be defamatory as they relate to [the plaintiff] in a general business context or in its capacity as a commercial tenant, [the plaintiff] cannot recover for defamation in the absence of special harm.").

2. <u>Statement of Opinion or Fact</u>

Even if the undersigned were to find Defendant's statement was defamation *per se* or that Plaintiffs sufficiently plead special damages in their complaint, the undersigned finds Plaintiffs' defamation claim would still fail because Defendant's statement was one of opinion and not fact.

Under Ohio law, for a statement to be defamatory it must be a statement of fact and not of opinion. *Heidel v. Amburgy*, 2003-Ohio-3073, ¶ 15 (12th Dist.), citing *Vail v. The Plain Dealer Publishing Co.,* 72 Ohio St.3d 279, 281, 1995-Ohio-187. Section 11, Article I of the Ohio Constitution provides in relevant part: "[e]very citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right;

8

and no law shall be passed to restrain or abridge the liberty of speech, or of the press." Whether the allegedly defamatory language is opinion or fact is a question of law for the court to decide. *Heidel* at ¶ 15, citing *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 372, 453 N.E.2d 666 (1983).

A "totality of the circumstances" test is used to determine whether a statement is fact or opinion. *Vail,* 72 Ohio St.3d at 281. The four-part test used to determine whether a statement is fact or opinion is fluid and calls for the court to consider (1) the specific language used, (2) whether the statement is verifiable, (3) the general context of the statement, and (4) the broader context in which the statement appeared. *Id.*; *Heidel* at ¶ 15. The meaning of an allegedly defamatory statement is the meaning a reasonable viewer would attach to the statement. *Fuchs v. Scripps Howard Broadcasting Co.*, 2006-Ohio-5349, ¶ 41 (1st Dist.). "The question is whether a reasonable viewer would view the words used to be language that normally conveys factual information or merely hyperbole or opinion." *Id.* The court must consider whether "the specific language is ambiguous or has a meaning that is readily ascertainable; and whether the purpose of the language is to elicit an emotional response." *Id.*

In looking at the specific language of the statement, a key consideration is whether the language "lacks precise meaning and would be understood by the ordinary reader for just what it is—one person's attempt to persuade public opinion." *Vail,* 72 Ohio St.3d at 282-83. "Language that is loosely definable or has variously interpretable meanings will not ordinarily support an action for defamation." *Heidel* at ¶ 20, citing *Wampler v. Higgins,* 93 Ohio St.3d 111, 129, 2001-Ohio-1293. "A classic example of a statement with a well-defined meaning is an accusation of a crime" whereas "statements that are 'loosely definable' or 'variously interpretable' cannot in most contexts support an action for defamation." "Readers [and listeners] are * * * considerably less likely to infer facts from an indefinite or ambiguous statement than one with a commonly understood meaning." (Citations omitted.) *Wampler v. Higgins*, 93 Ohio St.3d 111, 128, 752 N.E.2d 962 (2001), quoting *Ollman v. Evans*, 242 U.S.App.D.C. 301, 750 F.2d 970, 979-980 (1984). The *Wampler* Court ultimately determined that statements like "ruthless speculator," "self-centered greed," and "exorbitant rent" are "inherently imprecise and subject to a myriad of subjective interpretations" despite their "plainly pejorative" tone. *Id.* These statements can be compared to the specific language used in *Lennon v. Cuyahoga Cty. Juvenile*

*Court*, 2006-Ohio-2587 (8th Dist.), where the appellate court found the term "racist" to be unambiguous and pejorative, weighing heavily in favor of actionability. *Id.* at ¶ 30.

Here, Defendant made a statement during the "public comments" session of a school board meeting. Akin to an opinion page of a newspaper, this forum invites vigorous expressions of *opinion* regarding matters of public concern. *See Hartman v. Kerch*, 2023-Ohio-1972, ¶ 54 (8th Dist.). The statement was made after another speaker called the audience members "bullies" who need to be more respectful. Defendant stated that it is easy for others to talk about respect when they have not been called pedophiles, dumb, or have no skills by "people in this community," meaning David, Erin, and the "people who support them." *Joint Ex. 2-3.* Defendant does not specifically accuse David or Erin of making the Squad Post and does not reference a specific time when David or Erin allegedly called her a pedophile or dumb. The statement is, thus, vague and ambiguous in its nature.

Further, Defendant accuses a host of people, including David, Erin, *or their supporters* of calling her dumb or a pedophile. The statement, therefore, lacks precise meaning and would be understood by the ordinary reader for being one person's attempt to persuade public opinion. While the parties all agree now that Defendant was referencing the Squad Post—a post that was made almost a year before the school board meeting—the audience could have multiple interpretations of when and who purportedly called Defendant dumb or a pedophile.

Finally, the undersigned notes the general context of the statement cannot be easily considered when Defendant was prevented from finishing her statement by David and the other board members.

Based upon the totality of the circumstances, the undersigned finds the statement is an expression of opinion and is, therefore, not actionable for defamation.

3. <u>Actual Malice</u>

Nevertheless, presuming Plaintiffs could survive a defamation *per se* versus *per quod* review, had articulated special damages in their complaint, and somehow established that Defendant's statement was one of fact, the undersigned finds Plaintiffs' defamation claim would still fail because Plaintiffs have failed to establish by clear and convincing evidence that Defendant acted with actual malice *or* ordinary negligence in making her March 25, 2025 statement.

There are four classifications into which a party alleging defamation may fall: (1) a private person; (2) a public official; (3) a public figure; and (4) a limited-purpose public figure. *Curry* at ¶ 42. Such classification determines the claimant's burden of proof. *Id.*

The parties stipulate that David is a public figure. However, the undersigned finds that David, as an elected member of the Little Miami school board, is a public official.[6] Ohio law and federal law are in accord as to the basic principles of public official defamation law. *Burns v. Rice*, 2004-Ohio-3228, ¶ 20 (10th Dist.). "Statements made about public officials are constitutionally protected when the statements concern 'anything which might touch on an official's fitness for office.'" *Id.*, quoting *Soke v. Plain Dealer*, 69 Ohio St.3d 395, 397, 632 N.E.2d 1282 (1994), quoting *Garrison v. Louisiana*, 379 U.S. 64, 77, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964).

Whether considered a public official or public figure, Plaintiffs must show Defendant's challenged statement about David was made with actual malice; that is, with knowledge that the statement was false or with reckless disregard of whether they were false. *Fuchs v. Scripps Howard Broadcasting Co.*, 2006-Ohio-5349, ¶ 30 (1st Dist.). To establish reckless disregard, a defamation plaintiff must present clear and convincing evidence that the false statement was made with a "high degree of awareness of their probable falsity," or that "the defendant in fact entertained serious doubts as to the truth of his publication." (Internal quotations omitted). *Burns* at ¶ 22.

Actual malice is measured at the time of publication. *Burns* at ¶ 22, citing *Dupler v. Mansfield Journal Co., Inc.*, 64 Ohio St.2d 116, 124 (1980). As the United States Supreme Court explained, a showing of actual malice is necessary to promote an "uninhibited, robust, and wide-open" debate on important issues of public concern even though the debate "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 269-270 (1964).

Here, Defendant and Hamberg testified that they believed the Squad Post was written by David, Erin, or one of their supporters. This was based on their believes that the language used in the post was similar to a prior post written by David, David had access to a photograph used in the post when many others did not have access to that photo, and

---

[6] A public official is defined as "an officer, agent, or other representative of a state or nation, or one of its political divisions, acting in the course of duty." PUBLIC OFFICIAL, Black's Law Dictionary (12th ed. 2024).

David was familiar with the Little Miami School District Concerned Citizens Facebook page. Defendant admitted she was aware David had been accused of and denied running the Facebook page by another person, but Defendant did not believe him. David confirmed that a fellow board member had accused him of running the Facebook page, establishing that others shared Defendant's belief that at least some of the posts on the page may have been authored by David or Erin or their supporters. Based upon the evidence before this Court, the arguments of counsel, and the relevant law, the undersigned finds Plaintiffs' failed to establish by clear and convincing evidence that Defendant acted with actual malice. As there is no genuine issue of material fact on this point, Defendant would be entitled to judgment as a matter of law regarding David's defamation claim.

As to Erin, there is no dispute that Erin is neither a public official nor a public figure. Plaintiffs contend Erin is, thus, a private figure, but Defendant argues she is a limited purpose public figure because she voluntarily injected herself into a specific public controversy by making Facebook posts regarding her husband's decisions and his positions on issues as a school board member.

A limited purpose public figure is a person who "becomes a public figure for a specific range of issues by being drawn into or voluntarily injecting himself into a specific public controversy." *Daubenmire v. Sommers,* 156 Ohio App.3d 322, 2004-Ohio-914, ¶ 89 (12th Dist.). "Whether a person is a limited purpose public figure is determined by examining that person's participation in the controversy from which the alleged defamation arose, and whether [s]he has attained a general notoriety in the community by reason of that participation." *Id*. A three-part test must be applied to determine whether one is a limited purpose public figure: "the court must determine that there is a public controversy; ascertain that the plaintiff played a sufficiently central role in that controversy; and find that the alleged defamation was germane to the plaintiff's involvement in the controversy." *Id*., citing *Dameron v. Washington Magazine, Inc.,* 779 F.2d 736 (D.C.Cir.1985).

In the case at hand, the undersigned finds there was certainly some public controversy over decisions made by the Little Miami school board in 2024 and 2025. Defendant's allegedly defamatory statement was also germane to Erin's involvement in the controversy, as Defendant alleged it was David, Erin, or their supporters who made

12

derogatory comments about her in the Squad Post. However, the undersigned cannot say Erin played a sufficiently central role in that controversy to be considered a limited purpose public figure. Accordingly, the undersigned finds Eric is a private figure for purposes of a defamation analysis.

When the claimant is a private figure, the required degree of fault is ordinary negligence. *Curry* at ¶ 45, citing *Lansdowne v. Beacon Journal Pub. Co.*, 32 Ohio St.3d 176, 180, 512 N.E.2d 979 (1987); *Great Lakes Capital Partners Ltd. v. Plain Dealer Publishing Co.*, 8th Dist. Cuyahoga No. 91215, 2008-Ohio-6495, ¶ 18. Thus, Plaintiffs must "prove by clear and convincing evidence that the defendant 'failed to act reasonably in attempting to discover the truth or falsity or defamatory character of the publication.'" *Curry* at ¶ 45, quoting *Lansdowne* at 180.

Defendant encourages this Court to find that Defendant's statement is protected by the public interest qualified privilege, which would then require this Court to review the statement solely under an actual malice analysis, including as to Erin's defamation claim. The "public interest" privilege "involves communications made to those who may be expected to take official action of some kind for the protection of some interest of the public." *Janiszewski v. Belmont Career Ctr.*, 2017-Ohio-855, ¶ 88 (7th Dist.), quoting *A & B–Abell Elevator Co.*, 73 Ohio St.3d at 8–9. In reviewing Defendant's statement, however, the undersigned cannot say the statement was made at the school board meeting to the school board members seeking them to take some sort of official action. *See Joint Ex. 2-3*. Rather, as acknowledged by Defendant, she was responding to the criticisms of the speaker before her regarding respect towards the board members—particularly David. *Id*. The undersigned finds, therefore, that Defendant's statement should not receive privilege protection.

Accordingly, the undersigned shall review Erin's defamation claim under the ordinary negligence standard. The testimony at the hearing established that both Defendant and Hamberg made some attempts to reveal the identity of the anonymous poster to no avail. As noted above, Defendant believed the statement was made by David, Erin, or one of their supporters. David's own testimony that a fellow board member questioned him on the subject belies any argument that Defendant did not act reasonably in her attempt to discover the truth or falsity of her statement. Based upon the evidence before this Court, the arguments of counsel, and the relevant law, the undersigned finds Plaintiffs' failed to

13

establish by clear and convincing evidence that Defendant failed to act reasonably in attempting to discovery the truth or falsity or defamatory character of her statement. As there is no genuine issue of material fact on this point, Defendant would be entitled to judgment as a matter of law regarding Erin's defamation claim.

The undersigned has reviewed Plaintiffs' defamation cause of action to determine whether Plaintiffs failed to state a cause of action upon which relief can be granted or there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law. The undersigned finds that, under both standards, Plaintiffs' defamation cause of action fails because (1) The statement is one of defamation *per quod* and Plaintiffs have failed to plead special damage; (2) the statement is one of opinion and not fact; and (3) the statement was not made with actual malice or negligence. Each one of these failures is fatal to Plaintiffs' claim surviving should this Court permit discovery in this matter.

Accordingly, Plaintiffs' cause of action for defamation must be dismissed with prejudice pursuant to R.C. 2747.04(C).

*Intentional Infliction of Emotional Distress*

Plaintiffs next cause of action is for intentional infliction of emotional distress ("IIED"). Within their complaint, Plaintiffs allege that Defendant's statement at the school board meeting was "an avenue to defame, slander, libel, (sic) the Plaintiffs in public, not because of their truth, but rather because of the Defendants (sic) animosity, disagreements, and vitriol towards the Plaintiffs." The complaint alleges the statement caused Plaintiffs to suffer severe emotional distress.

To prevail on a claim of IIED, the plaintiff must show that "(1) the defendant either intended to cause emotional distress or knew or should have known the actions taken would result in serious emotional distress to the plaintiff, (2) the defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) the defendant's actions proximately caused psychological injury to the plaintiff, and (4) the plaintiff suffered serious emotional distress of a nature that no reasonable man could be expected to endure it." *Georgin v. Georgin*, 2022-Ohio-4328, ¶ 37 (12th Dist.), citing *Ward v. Oakley*, 2013-Ohio-4762, ¶ 35 (12th Dist.). Parties generally cannot be held liable for IIED for having performed an act they were legally entitled to perform. *Morrow v.*

14

*Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 49 (10th Dist.).

The requirement that the conduct be "extreme and outrageous" is high. *Georgin* at ¶ 38. "It is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.*, citing *Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150, 153, 462 N.E.2d 392 (1984). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* "It is the act, rather than the result, that must be outrageous and extreme." *Georgin* at ¶ 39, citing *Scott v. Spearman*, 115 Ohio App.3d 52, 58, 684 N.E.2d 708 (5th Dist.1996). Whether conduct is "outrageous and extreme" is initially a question of law for the court. *Stakich v. Russo*, 2021-Ohio-1098, ¶ 27 (8th Dist.).

The undersigned finds Plaintiffs' cause of action for IIED does not withstand Civ.R. 12(B)(6) scrutiny, as Plaintiffs fail to even allege that Defendant's conduct at the school board meeting was extreme and outrageous. While the complaint mentions the extreme and outrageous conduct standard, it goes on only to state that Defendant acted with "animosity" and "vitriol" towards Plaintiffs, nothing more. Thus, Plaintiffs have failed to set forth a cause of action upon which relief could be granted.

Plaintiffs' cause of action for IIED also cannot withstand Civ.R. 56 scrutiny, as Plaintiffs have failed to offer any evidence that Defendant's statement at the school board meeting *was* extreme and outrageous. Defendant was legally entitled to make a statement at the school board meeting during the public comment session. The undersigned cannot say the act of making an allegedly defamatory statement was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

Moreover, Plaintiffs fail to establish a genuine issue of material fact that they suffered the type of serious emotional distress required to establish a claim for IIED. Under a Civ.R. 56(C) review, within their IIED claim, Plaintiffs must present evidence creating a genuine issue of material fact that they "suffered serious mental anguish of a nature that no reasonable person could be expected to endure." *Winkle v. Zettler Funeral Homes,*

15

*Inc.*, 2009-Ohio-1724, ¶ 33 (12th Dist.), citing *Callaway v. Nu–Cor Automotive Corp.*, 166 Ohio App.3d 56, 2006-Ohio-1343, 849 N.E.2d 62, ¶ 20.

In order to constitute serious emotional distress, "the injury that is suffered must surpass upset or hurt feelings, and must be such that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances in the case.'" *Georgin* at ¶ 42, citing *Ward*, 2013-Ohio-4762, ¶ 37; *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983). The person claiming serious emotional distress must present some "guarantee of genuineness" in support of her claim. *Ward* at ¶ 38. A plaintiff can supply this genuineness with expert medical testimony or with testimony of lay witnesses who are acquainted with the plaintiff and who "testify as to any marked changes in the emotional or habitual makeup that they discern in the plaintiff." *Id.* at ¶ 39, citing *Paugh* at 80, 451 N.E.2d 759.

Plaintiffs' complaint alleges Defendant made her statement in order to cause mental, psychological, emotional and/or financial damage to Plaintiffs. The complaint then generally alleges Plaintiffs suffered severe emotional distress. David testified he has periodically missed work due to stress and has seen a psychiatrist for the last 16 to 18 months but acknowledged that he was seeing a psychiatrist for over a year prior to Defendant's statement. Plaintiffs provided no evidence establishing that their emotional distress rendered them unable to function in daily life, or that David's psychiatric appointments resulted from Defendant's March 25, 2025 statement.

Because Plaintiffs have failed to set forth a claim upon which relief can be granted, there are no genuine issues as to any material fact, and Defendant is entitled to judgment as a matter of law on this cause of action, the undersigned finds Plaintiffs' claims for intentional infliction of emotional distress must be dismissed with prejudice pursuant to R.C. 2747.04(C).

*Negligent Infliction of Emotional Distress*

While Plaintiffs combine their intentional and negligent infliction of emotional distress causes of action into one claim, the Court finds these are separate causes of action and shall address them as such.

In Ohio, a cause of action may be stated for negligent infliction of serious emotional distress ("NIED"). *Strawser v. Wright*, 80 Ohio App.3d 751, 754 (12th Dist. 1992); *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759; *Schultz v. Barberton Glass*

*Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109. "Ohio courts have limited recovery for negligent infliction of emotional distress to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person. * * * [Where an individual's] claim does not arise out of such circumstances, [the individual] fail[s] to state a claim for emotional distress under Ohio law." *High v. Howard* (1992), 64 Ohio St.3d 82, 85–86, 592 N.E.2d 818, 820–821. Since Plaintiffs were not bystanders of an accident and were not in fear of physical consequences to their own persons, Plaintiffs have failed to state a claim for NIED that could survive Civ.R. 12(B)(6) review.

Further, for an NIED claim to have merit, Plaintiffs must present "evidence creating a genuine issue of material fact that they 'suffered serious emotional distress' as a result of a cognizance, or fear, of peril." *Winkle* at ¶ 33, citing *Walker v. Firelands Community Hosp.*, 170 Ohio App.3d 785, 2007-Ohio-871, 869 N.E.2d 66, ¶ 59, citing *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 80. For the same reasons stated in the IIED analysis, Plaintiffs' NIED claim also fails Civ.R. 56(C) review.

Because Plaintiffs have failed to set forth a claim upon which relief can be granted, there are no genuine issues as to any material fact, and Defendant is entitled to judgment as a matter of law on this cause of action, the undersigned finds Plaintiffs' claims for negligent infliction of emotional distress must be dismissed with prejudice pursuant to R.C. 2747.04(C).

## Unlawful Disparagement

Plaintiffs' fourth and final cause of action is one for unlawful disparagement. "The tort of unlawful disparagement, or injurious falsehood, is similar to defamation." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 1993 WL 387179, *14 (10th Dist. Sept. 30, 1993), reversed on other grounds *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, (1995). A statement is "disparaging" if it is understood to "cast doubt upon the quality of another's chattels, land or other things, or upon the existence or extent of his property in them and the publisher intends the statement to cast doubt, or the recipient's understandings of the statement as casting doubt was reasonable." *Id.*, citing 3 Restatement of the Law 2d, Torts (1977) 347, Section 629. Disparagement has also been defined as a false statement which "does harm to the pecuniary interests of another and causes pecuniary loss." *Grafton v. American Broadcasting Co.*, 70 Ohio App.2d 205 (1980).

17

"A person who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if he intends for the publication to result in harm to interests of the other having a pecuniary value, or either recognizes, or should recognize that it is likely to do so, and he knows the statement is false or acts in reckless disregard of its truth or falsity." *A & B-Abell Elevation* at \*14, citing 3 Restatement of the Law 2d, Torts (1977) 334, Section 623A. See, also, R.C. 4165.02(H).

The undersigned reincorporates her analysis of Plaintiffs' defamation cause of action as to this cause of action. For those reasons, Plaintiffs' claim for unlawful disparagement does not survive Civ.R. 56 scrutiny. Further, the undersigned finds Plaintiffs failed to plead a pecuniary loss in their complaint and David specifically admitted at the hearing that Plaintiffs have not suffered any pecuniary loss as a result of the statement uttered by Defendant. Accordingly, Plaintiffs' cause of action for unlawful disparagement does not survive Civ.R. 12(B)(6) or Civ.R. 56(C) review and Defendant's motion for expedited relief as to this cause of action is well taken.

### MAGISTRATE'S DECISION

Accordingly, and based upon a thorough review of the record, the arguments of counsel, the testimony at the hearing, and the relevant law, it is the Decision of the Magistrate that Defendant's motion for expedited relief be **GRANTED** and Plaintiffs' complaint be **DISMISSED** with prejudice.

Pursuant to R.C. 2747.05(A), this Court is now required to award reasonable attorney's fees, court costs, and reasonable litigation expenses to Defendant. A hearing on such award shall be held after the objection period in this matter has run.

**SO ORDERED.**

_____
**MAGISTRATE CAROLYN C. BESL**

18

## NOTICE TO PARTIES

This decision may be adopted by the Court unless objections are filed within fourteen (14) days of the filing hereof in accordance with Civ.R. 53(D)(3)(b).

A party shall not assign as error on appeal the Court's adoption of any factual findings or legal conclusions, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).

A timely filed objection tolls the time to file a notice of appeal to the Court of Appeals pursuant to App.R. 4(A).

## INSTRUCTIONS TO THE CLERK FOR SERVICE OF MAGISTRATE'S DECISION PURSUANT TO CIVIL RULE 5

TO THE CLERK: Please serve the following:

Mark C. Eppley, Esq., *counsel for Plaintiffs*
Joshua Engel, Esq., *counsel for Defendant*

JC 7/9/25

_____
**MAGISTRATE CAROLYN C. BESL**

19