**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

GEORGE McINTYRE,

Plaintiff,

v.

LITTLE MIAMI LOCAL SCHOOL DISTRICT, et al.,

Defendants.

Case No. 1:26-cv-00351-MWM

Judge Matthew W. McFarland

**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

Defendants respectfully move under Federal Rule of Civil Procedure 56 for summary judgment on Count I. The undisputed facts establish that Plaintiff's permanent classroom display was speech made pursuant to his teaching duties. It reinforced curricular and classroom messages and communicated with students through access he had as their teacher. Plaintiff therefore did not speak as a private citizen. Defendants rely on their separately filed Proposed Undisputed Facts and request judgment on Count I.

## I. INTRODUCTION

Count I turns on one threshold question: was Plaintiff speaking as a private citizen or performing his duties as a public-school teacher? The material facts are not genuinely disputed. Plaintiff placed a continuing message before his assigned students, called it a reminder governing their treatment of classmates, aligned it with numerous history standards, and tied it to student support, learning, coursework, and classroom discussion. (Pl. Dep., Doc. 29-1, PageID#1381-1382, 1401-1402, PDF pp. 17-18, 37-38; Tr. pp. 62-69, 145:1-146:17; Pl.'s Standards Email, Doc. 29-22, PageID#1669-1670, PDF pp. 7-8.)

Published Sixth Circuit decisions require a practical, all-circumstances inquiry into whether the teacher spoke pursuant to ordinary professional duties or as a private citizen. *DeCrane v. Eckart*, 12 F.4th 586, 595-96 (6th Cir. 2021); *Mayhew v. Town of Smyrna*, 856 F.3d 456, 463-65 (6th Cir. 2017). *Evans-Marshall v. Board of Education of Tipp City Exempted Village School District* applies that threshold to public-school teachers. 624 F.3d 332, 340-43 (6th Cir. 2010). More recently, Judge Cole applied that same rule in this District to teacher-selected LGBTQ-support classroom materials, even though the teacher did not teach from them. *Cahall v. New Richmond Exempted Village School District Board of Education*, No. 1:24-cv-688, Doc. 25 at 25-26 (S.D. Ohio Sept. 29, 2025) (attached as Attachment 1), appeal pending, No. 25-3880 (6th Cir.).

Defendants' interrogatory response concerning the public reaction to the Board proceedings did not concede citizen speech. (Defs.' Verified Resp. to Interrogs., Doc. 29-7, PageID#1503, PDF p. 8.) Plaintiff's Proposed Facts 45 and 46 are disputed to the extent they attach legal labels to the display. Those labels are addressed in Section IV.E.1. Those characterizations are legal labels, not facts binding on the Court. The material facts are undisputed: Plaintiff placed the display on the wall of his classroom, where the District remained responsible for what appeared on the walls; selected it to signal support for marginalized students which he believed could improve learning and mental health; intended it to signify that coursework and classroom discussions would be grounded in fact and respect for differences of opinion; and identified numerous curricular standards to which he considered it especially applicable. (Pl. Dep., Doc. 29-1, PageID#1381-1382, 1401-1402, PDF pp. 17-18, 37-38; Tr. pp. 62-69, 145:12-146:17; Pl.'s Standards Email, Doc. 29-22, PageID#1669-1670, PDF pp. 7-8; Wallace Dep., Doc. 29-4, PageID#1476, PDF p. 23; Tr. 87:12-88:9.) Whether those undisputed facts establish citizen speech

or expression pursuant to Plaintiff's official duties is a question of law for the Court. *DeCrane*, 12 F.4th at 596.

That threshold determination is dispositive. If Plaintiff acted pursuant to his official duties in displaying it, no First Amendment protection attaches; his remaining theories concerning public concern, viewpoint discrimination, motive, causation, and balancing are therefore legally immaterial and moot. *Garcetti v. Ceballos*, 547 U.S. 410, 421–24 (2006); *Evans-Marshall*, 624 F.3d at 340.

## II. UNDISPUTED MATERIAL FACTS

Plaintiff George McIntyre has taught history at Little Miami High School since the 2022-2023 school year. He teaches American History and AP European History and testified that he teaches to Ohio's model curriculum. Principal Harleman supervises and evaluates Plaintiff, and Harleman and his administrative team enter classrooms throughout the school day to listen, check on things, and remain visible. (Am. Compl., Doc. 18, paras. 2, 5, PageID#247-248, PDF pp. 1-2; Pl. Dep., Doc. 29-1, PageID#1368, 1375, PDF pp. 4, 11; Tr. 10:23-11:7, 39:23-40:17; Harleman Dep., Doc. 29-3, PageID#1438, PDF p. 8; Tr. 27:21-28:19.)

Plaintiff prepares his course syllabi, provides them to parents with an acknowledgment form, and sends his syllabi, course maps, and discipline policies to District administrators. The District asks teachers to post syllabi identifying the topics or general concepts taught, and department chairs review curricular materials. (Pl. Dep., Doc. 29-1, PageID#1375, PDF p. 11; Tr. 40:18-41:24; Morgan Dep., Doc. 29-2, PageID#1427, PDF p. 20; Tr. 76:21-77:8; Harleman Dep., Doc. 29-3, PageID#1449, PDF p. 19; Tr. 70:14-24.) Plaintiff's American History I syllabus makes appreciation for the contributions of people of all races, ethnicities, genders, and backgrounds a course goal; directs students to be "respectful and kind towards one another at all times"; warns

that social studies involves sensitive material; requires mature and respectful participation; and explains that students may be challenged to explain and defend their positions to develop critical-thinking skills. (American History I Syllabus, Doc. 29-29, PageID#2319, 2323, PDF pp. 1, 5.)

Plaintiff maintained a “Hate Has No Home Here” display on the wall behind his desk in his assigned classroom, where it remained visible to the students he taught. It included, among other images, rainbow-pride and transgender-pride flags. Superintendent Morgan identified the photographed display as hanging on that wall; Plaintiff confirmed it was on his classroom wall. (Am. Compl., Doc. 18, paras. 3, 4, 10, PageID#247, 249, PDF pp. 1, 3; Morgan Dep., Doc. 29-2, PageID#1413, PDF p. 6; Tr. 19:14–20:7; Pl. Dep., Doc. 29-1, PageID#1401, PDF p. 37; Tr. 145:12–17.)

Plaintiff selected the display so marginalized youth, including LGBTQ students, would know they had support. He testified that such support could increase students' learning ability and aid their mental health, and that he wanted something in his classroom signifying that 'any of our coursework or course discussion' would be grounded in fact and respect differences of opinion. (Pl. Dep., Doc. 29-1, PageID#1401-1402, PDF pp. 37-38; Tr. 145:12-146:17.)

In a February 9 email, Plaintiff wrote that he would tend to agree with the following overall characterization of the purpose behind the flag: supporting aspects of the social-studies curriculum, including topics involving sexual orientation or gender identity in historical context, and signaling a respectful classroom environment. Plaintiff disputed that Policy 5780.01 applied and maintained that the display was incidental, but his contemporaneous statement about the display's purposes is undisputed. (Pl.'s Standards Email, Doc. 29-22, PageID#1665-1666, PDF pp. 3-4.)

Plaintiff testified that he did not point to the display as a formal teaching device, use it as a formal methodology of instruction, or use it to impart particular substantive knowledge. His

February 16 email said the same. (Pl. Dep., Doc. 29-1, PageID#1402, PDF p. 38; Tr. 146:18-147:8; Pl.'s Standards Email, Doc. 29-22, PageID#1663, PDF p. 1.)

That testimony is undisputed. It is also undisputed that, at Harleman's request, Plaintiff reviewed the Ohio Social Studies Model Curriculum and the AP European History Course and Exam Description and prepared an email identifying the standards to which he believed the display was especially applicable. Plaintiff had Harleman review the email before sending it through the school email system; Harleman called it 'perfect.' Harleman later testified that he had no reason to doubt Plaintiff's account of that exchange and believed it was accurate. (Pl. Dep., Doc. 29-1, PageID#1375, PDF p. 11; Tr. 39:1-40:3; Harleman Dep., Doc. 29-3, PageID#1451, PDF p. 21; Tr. 78:3-15.)

The contemporaneous email identified eight American History standards and twenty AP European History topics. Plaintiff wrote that students must engage with assigned material 'in a respectful and intellectual manner grounded in facts' and that '[t]he flag is a reminder that they must treat their classmates with mutual respect, regardless of personal opinions or beliefs.' (Pl.'s Standards Email, Doc. 29-22, PageID#1669-1670, PDF pp. 7-8.)

Plaintiff confirmed under oath that the classroom display was 'especially applicable' to numerous American History and AP European History standards. He mapped the pride and transgender-pride images to the Lavender Scare and Gay Liberation movement and testified that the display 'applies to most of the curriculum, if not all of it.' (Pl. Dep., Doc. 29-1, PageID#1381-1382, PDF pp. 17-18; Tr. pp. 62-69.)

The District's verified response states that teachers receive 'considerable latitude' to display personal items, sports-team flags, motivational posters, and family photographs, but that the latitude 'is defined by applicable Board policy.' (Defs.' Verified Resp. to Interrogs., Doc. 29-7,

PageID#1501, PDF p. 6.) Morgan confirmed that teachers place subject-related material on classroom walls, and Wallace testified that teachers have leeway but that, 'at the end of the day,' the school remains responsible for what is and is not on classroom walls. (Morgan Dep., Doc. 29-2, PageID#1428-1429, PDF pp. 21-22; Tr. 81:17-82:20; Wallace Dep., Doc. 29-4, PageID#1476, PDF p. 23; Tr. 87:12-88:9.)

Harleman testified that the Board could adopt a policy governing classroom-wall decorations and that, as principal, he would be required to enforce it. (Harleman Dep., Doc. 29-3, PageID#1452, PDF p. 22; Tr. pp. 82-85.) Policy 5780.01 adopted on October 28, 2025, defined 'sexuality content' to include an 'image' in a classroom setting, and prescribed parental-notice, review, and opt-out procedures. (Policy 5780.01, Doc. 29-9, PageID#1512-1514, PDF pp. 1-3.) Before the vote at issue, the Superintendent forwarded District guidance to principals, assistant principals, and academic staff, stating that it 'will be used moving forward,' reported that it was being shared with the teachers' association, and transmitted the guidance that the Board retained final authority over classroom displays. (Classroom-Display Guidance, Doc. 29-28, PageID#2314-2315, 2317, PDF pp. 1-2, 4.) The approved minutes then record a motion 'to determine if poster constitutes sexuality content as defined by LM Policy 5780.01,' made by Bullock, seconded by Smith, and carried four to one. (Feb. 25, 2026 Board Minutes, Doc. 13-3, PageID#114, PDF p. 3.)

## III. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate when no genuine dispute exists as to any material historical fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court views the evidence and draws all reasonable inferences in the nonmovant’s favor, but only genuine disputes over material facts preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). A party must support its position with specific evidence; “bare

legal conclusions will not do." *Boykin v. Family Dollar Stores of Michigan, LLC*, 3 F.4th 832, 842 (6th Cir. 2021).

## IV. ARGUMENT

### A. The Sixth Circuit Applies A Practical Test Based On All The Circumstances.

Under *Garcetti*, public employees do not speak as citizens when they make statements pursuant to their official duties, and the Constitution does not insulate those communications from employer control. 547 U.S. at 421. The inquiry is practical, not confined to formal job descriptions. Id. at 424-25. *Lane v. Franks* states the controlling question: whether the speech itself is ordinarily within the employee's duties, not whether it merely concerns those duties. 573 U.S. 228, 240 (2014).

The Sixth Circuit applies that rule by considering the circumstances surrounding the speech. *DeCrane* directs courts to consider 'all of the circumstances surrounding the speech' and identifies recurring questions: the speech's impetus or motivation, the employee's actual and formal duties, the setting, and the audience. 12 F.4th at 595-96. *Mayhew* adds the general subject matter and describes the analysis as the 'who, where, what, when, why, and how' of the expression. 856 F.3d at 464; see also *Handy-Clay v. City of Memphis*, 695 F.3d 531, 540 (6th Cir. 2012). No single factor controls; the Court considers them together.

The test examines the duties the employee actually performs day to day; written duties remain relevant but are not dispositive. *DeCrane*, 12 F.4th at 595; *Mayhew*, 856 F.3d at 465. Even 'ad hoc or de facto duties can fall within the scope of an employee's official responsibilities despite not appearing in any written job description.' *Weisbarth v. Geauga Park District*, 499 F.3d 538, 544 (6th Cir. 2007).

The Court resolves genuine disputes about historical events under Rule 56, but 'the ultimate question' whether the speaker acted as a government agent or private citizen is legal. *DeCrane*, 12 F.4th at 596; *Mayhew*, 856 F.3d at 462-64. Testimony may establish what Plaintiff did, why he selected the display, where it appeared, whom it addressed, and how the classroom was supervised; a witness's label that the conduct was 'private speech' or outside official duties does not decide its constitutional status.

Evans-Marshall applies this rule to public-school teachers. *Evans-Marshall* holds that a public-school teacher's curricular and pedagogical choices made in connection with teaching duties are not protected citizen speech. 624 F.3d at 340. The court emphasized that a teacher's classroom expression is something they are hired and paid to provide to students, that no relevant citizen analogue exists, and that the Board retains ultimate responsibility for what occurs in the classroom. Id. at 341-43.

**B. The Undisputed Facts Show That Plaintiff Spoke As A Teacher, Not A Private Citizen.**

**1. Plaintiff Chose the Display to Support Students and Shape the Classroom Environment.**

Plaintiff selected and maintained the display so marginalized students would know they had support, which he believed could improve learning and mental health. He also wanted the display to signify that coursework and classroom discussion would be grounded in fact and respect for differing opinions. (Pl. Dep., Doc. 29-1, PageID#1401-1402, PDF pp. 37-38; Tr. 145:12-146:17.) Those are professional, student-directed purposes. The display’s impetus therefore favors official-duty speech under *DeCrane* and *Mayhew*.

### 2. The Classroom Setting, Student Audience, And Plaintiff's Exclusive Access Support Official-Duty Speech.

Rather than addressing the public, Plaintiff maintained the display on the wall of his assigned classroom to communicate with the students he taught. (Pl. Dep., Doc. 29-1, PageID#1401-1402, PDF pp. 37-38; Tr. 145:1-146:17.) An ordinary citizen had no comparable ability to use that classroom wall to maintain a message to those students; that setting and absence of a citizen analogue support official-duty speech. *Evans-Marshall*, 624 F.3d at 342-43.

Considerable decorating latitude did not turn the classroom walls into a private forum. The verified response says that latitude was 'defined by applicable Board policy'; Wallace testified that the school remained responsible for classroom walls; and Harleman testified that he would enforce a Board policy governing decorations. (Defs.' Verified Resp. to Interrogs., Doc. 29-7, PageID#1501, PDF p. 6; Wallace Dep., Doc. 29-4, PageID#1476, PDF p. 23; Tr. 87:12-88:9; Harleman Dep., Doc. 29-3, PageID#1452, PDF p. 22; Tr. pp. 82-85.) The District remained responsible for the wall as part of the teaching environment; it was not Plaintiff's private platform.

### 3. The Display Reinforced Plaintiff's Course Content And Classroom Expectations.

The connection did not rest on the images alone. Plaintiff's syllabus made respect, mature discussion of sensitive subjects, and fact-based defense of positions part of his courses. (American History I Syllabus, Doc. 29-29, PageID#2319, 2323, PDF pp. 1, 5.) His contemporaneous email called the display a 'reminder' that students must treat classmates with mutual respect and engage with assigned material respectfully, intellectually, and on the facts. (Pl.'s Standards Email, Doc. 29-22, PageID#1670, PDF p. 8.) Plaintiff confirmed under oath that the display was “especially applicable” to numerous American History standards. Walking through several standards

individually, he connected the display's words and images to Native American treatment and the Plains Wars; Reconstruction and institutionalized racism; post-World War I racial intolerance; the Harlem Renaissance; marginalized groups in World War II; the Lavender Scare and Second Red Scare; the Civil Rights and Gay Liberation movements; and white flight, immigration reform, and urban riots. He further testified that the display was applicable to post-9/11 material and "applies to most of the curriculum, if not all of it." (Pl. Dep., Doc. 29-1, PageID#1381-1383, PDF pp. 17-19; Tr. 62:13-70:7; Pl.'s Standards Email, Doc. 29-22, PageID#1669-1670, PDF pp. 7-8.) Plaintiff testified that he did not point to the display or use it formally in the classroom. (Pl. Dep., Doc. 29-1, PageID#1402, PDF p. 38; Tr. 146:18-147:8). That testimony does not negate the display's continuing communication with students, reinforcement of course norms, or support of curriculum content and the learning environment. The practical inquiry turns on the speech's actual function within Plaintiff's responsibilities, not whether it appeared in a formal lesson plan. See *DeCrane*, 12 F.4th at 595–96.

**C. Cahall Applies Evans-Marshall To Classroom Materials Outside Formal Lessons.**

The closest local authority answers Plaintiff's formal-use argument directly. Although *Cahall* arose under the Religion Clauses rather than a free-speech claim, it applied *Evans-Marshall*'s official-duty rule to teacher-selected classroom materials. The third-grade teacher alleged that she did not teach from, assign, or initiate discussion of LGBTQ-themed books in her classroom collection. She selected the books to make LGBTQ students feel better, safer, and more supported. Judge Cole held that she nevertheless 'acted pursuant to her teaching duties' because that precedent 'did not turn on the precise manner in which the teacher used the books.' No. 1:24-cv-688, Doc. 25 at 25-26. The pending appeal does not alter Cahall's value as the most closely

analogous Southern District application of binding Sixth Circuit law to teacher communication with students in a classroom.

**D. Other Appellate Decisions Apply The Same Rule To Classroom Communications.**

Nationwide teacher-display cases converge on the same rule. *Johnson v. Poway Unified School District* held that permanent classroom banners were employee speech and treated a finding that the banners were not curriculum as 'irrelevant' to the citizen-or-employee question; curriculum was only one outlet through which a school communicates. 658 F.3d 954, 965-68 & n.13 (9th Cir. 2011). *Wood v. Florida Department of Education* treated a teacher's identifiers on her classroom whiteboard and syllabi and her worn 'she/her' pin as official-duty communications to students because she was 'doing precisely what the state paid her to do,' rejecting the premise that noncurricular classroom speech must be private. 142 F.4th 1286, 1291-93 (11th Cir. 2025). *Theis* applied that same official-duty rule to a school employee's student-facing display. It quoted the settled principle that "'[n]o court has found that teachers' First Amendment rights extend to choosing their own curriculum or classroom management techniques in contravention of school policy or dictates.'" Theis v. InterMountain Educ. Serv. Dist., Nos. 25-5641, 25-8039, 2026 WL 2093895, at *3 (9th Cir. July 21, 2026) (quoting Bradley v. Pittsburgh Bd. of Educ., 910 F.2d 1172, 1176 (3d Cir. 1990)). It then applied the further settled rule that the employee "bears the burden of showing [that] the speech was spoken in the capacity of a private citizen and not a public employee." Id. (quoting Eng v. Cooley, 554 F.3d 1062, 1071 (9th Cir. 2009)).

**E. Plaintiff's Legal Labels Do Not Create A Factual Dispute.**

**1. 'Private,' 'noncurricular,' and 'not a school-sponsored expression' are legal conclusions.**

Plaintiff's Proposed Facts 45 and 46 are undisputed only insofar as they recite Plaintiff's testimony that he did not point to the display or use it as a formal instructional device. They are disputed to the extent they characterize the display as "not curricular," "not a school-sponsored expression," "private speech," outside the scope of his teaching duties, not pursuant to Board policy, or as not imparting particular substantive knowledge. "Imparting knowledge," as used here, is disputed only in the broad sense of teacher-student communication, not in the narrow sense of a formal instructional device. Those characterizations are legal conclusions for the Court. (Pl.'s Proposed Facts 45-46, Doc. 26-1, PageID#1353-1354, PDF pp. 12-13; Defs.' Resp. to Pl.'s Proposed Facts ¶¶ 45-46.) Plaintiff's cited authorities relate to different questions and do not change the official-duty test applied to teacher expression in the classroom that we have cited here.

**2. Decorating discretion did not create a private forum or make every display equivalent.**

Plaintiff's Bengals-flag and family-photo examples show that the inquiry is display-specific, not that the District surrendered its classroom walls. This display's purpose and student audience control; a wholly personal item could present a different case.

*Cajune v. Independent School District 194* addressed at the pleading stage whether a school had created a limited forum for Black Lives Matter posters created with input from private actors. 105 F.4th 1070, 1079-82 (8th Cir. 2024). The same circuit later distinguished *Cajune* and held that when the principal "created the middle school flag display, distributed Pride stickers at school, and

assisted in creating the school's GSA, she did so in her capacity as school principal." *Thomas v. Marshall Public Schools*, 152 F.4th 884, 888–90 (8th Cir. 2025).

**3. Kennedy Involved Private Expression Outside the Coach's Duties.**

*Kennedy* involved a "brief, quiet, personal religious observance" undertaken when the coach was neither instructing students nor otherwise performing his coaching duties. *Kennedy v. Bremerton School District*, 597 U.S. 507, 529–31, 543 (2022). *Wood* applied that distinction: Kennedy was "off the clock," whereas a teacher communicating with students in the classroom is "doing precisely what the state paid her to do." 142 F.4th at 1293. *Geraghty* concerned the compelled use of students' preferred names and pronouns under an unwritten practice. The court concluded that the terms carried a message whose communication was not among an English teacher's ordinary duties, emphasizing that gender identity and sexual orientation were not part of the middle-school curriculum. *Geraghty v. Jackson Local School District Board of Education*, No. 5:22-cv-02237, 2024 WL 3758499, at *12–13 (N.D. Ohio Aug. 12, 2024). Here, by contrast, Plaintiff voluntarily selected and maintained a continuing classroom display to communicate support and classroom expectations to students and identified numerous curricular standards to which the display applied. *Geraghty* is therefore materially distinguishable.

**F. Official-Duty Status Makes Animus And Same-Decision Issues Legally Immaterial And Moot.**

The undisputed facts establish official-duty speech in two ways. The display reinforced curricular and pedagogical messages conveyed through Plaintiff's syllabus, course standards, and classroom expectations. Even under Plaintiff's narrow use of 'curricular,' he used his assigned classroom wall to communicate continually with students about support and the learning environment. That was official-duty communication under the Sixth Circuit's practical test.

That resolves Count I. No First Amendment right attaches to official-duty speech, so Plaintiff's arguments about public concern, disruption, Board-member animus, Pickering balancing, and Mt. Healthy same-decision are legally immaterial and moot. *Evans-Marshall* makes the sequencing explicit: disputes over motivation, balancing, and public concern are 'beside the point' when the teacher acted in connection with official duties. 624 F.3d at 340.

## V. CONCLUSION

For these reasons, Defendants respectfully request that the Court grant their Cross-Motion for Summary Judgment, enter final judgment in Defendants' favor on Count I, deny Plaintiff's Motion for Summary Judgment, deny Plaintiff's Motion for Preliminary Injunction as moot, and terminate this action with prejudice.

Respectfully submitted,

/s/ Omar Tarazi_______

Omar Tarazi (0084165)
5635 Sandbrook Lane
Hilliard, Ohio 43026
Ph: (614) 226-2823
otarazi@tarazilaw.com
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on August 24th, 2026, I filed the foregoing through the Court's CM/ECF system, which served counsel for Plaintiff.

/s/ Omar Tarazi__________

Omar Tarazi (0084165)