**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

GEORGE McINTYRE,

Plaintiff,

v.

LITTLE MIAMI LOCAL SCHOOL DISTRICT, et al.,

Defendants.

Case No. 1:26-cv-00351-MWM

Judge Matthew W. McFarland

**DEFENDANTS' PROPOSED UNDISPUTED FACTS IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Section III.B.1 of the Court's Standing Order, Defendants submit the following material historical facts in support of their Cross-Motion for Summary Judgment. Each fact is supported by citations to admissible record evidence. Whether the display was private, official-duty, or curricular speech is a legal question for the Court.

**PROPOSED UNDISPUTED FACTS**

1. Plaintiff George McIntyre is a history teacher at Little Miami High School and began teaching at Little Miami during the 2022-2023 school year. (Am. Compl., Doc. 18, paras. 2, 5, PageID#247-248, PDF pp. 1-2; Pl. Dep., Doc. 29-1, PageID#1368, PDF p. 4; Tr. 10:23-11:7.)
2. Plaintiff teaches American History and AP European History and testified that he teaches to Ohio's model curriculum. (Pl. Dep., Doc. 29-1, PageID#1375, PDF p. 11; Tr. 39:23-40:17.)
3. Principal Kevin Harleman supervises and evaluates Plaintiff, and Harleman and his administrative team enter teachers' classrooms throughout the school day to listen, check on things, and remain visible. (Harleman Dep., Doc. 29-3, PageID#1438, PDF p. 8; Tr. 27:21-28:19.)

4. Plaintiff prepares his course syllabi, provides them to parents with an acknowledgment form, and sends his syllabi, course maps, and discipline policies to District administrators. The District asks teachers to post syllabi identifying the topics or general concepts taught, and department chairs review curricular materials. (Pl. Dep., Doc. 29-1, PageID#1375, PDF p. 11; Tr. 40:18-41:24; Morgan Dep., Doc. 29-2, PageID#1427, PDF p. 20; Tr. 76:21-77:8; Harleman Dep., Doc. 29-3, PageID#1449, PDF p. 19; Tr. 70:14-24.)
5. Plaintiff's American History I syllabus states course goals that include appreciating the contributions of people of all races, ethnicities, genders, and backgrounds. (American History I Syllabus, Doc. 29-29, PageID#2319, PDF p. 1.)
6. The same syllabus instructs students to be 'respectful and kind towards one another at all times.' (American History I Syllabus, Doc. 29-29, PageID#2319, PDF p. 1.)
7. The syllabus tells students that social studies will involve sensitive material, requires mature and respectful participation, and explains that students may be challenged to explain or defend their positions to build critical-thinking skills. (American History I Syllabus, Doc. 29-29, PageID#2323, PDF p. 5.)
8. Plaintiff maintained a “Hate Has No Home Here” display on the wall behind his desk in his assigned classroom, where it remained visible to the students he taught. The display included, among other images, rainbow-pride and transgender-pride flags. Superintendent Morgan identified the photographed display as hanging on that wall behind Plaintiff’s desk. Plaintiff confirmed the display was on his classroom wall. (Am. Compl., Doc. 18, paras. 3, 4, 10, PageID#247, 249, PDF pp. 1, 3; Morgan Dep., Doc. 29-2, PageID#1413, PDF p. 6; Tr. 19:14–20:7; Pl. Dep., Doc. 29-1, PageID#1401, PDF p. 37; Tr. 145:12–17.)

9. Plaintiff selected the display because he wanted something in his classroom through which marginalized youth, including LGBTQ students, would know that they had support. (Pl. Dep., Doc. 29-1, PageID#1401-1402, PDF pp. 37-38; Tr. 145:12-146:17.)

10. Plaintiff testified that students' knowledge that they have support can increase their learning ability and aid their mental health. (Pl. Dep., Doc. 29-1, PageID#1402, PDF p. 38; Tr. 146:1-10.)

11. Plaintiff testified that he wanted something in his classroom signifying that 'any of our coursework or course discussion' would be grounded in fact and would respect differences of opinion. (Pl. Dep., Doc. 29-1, PageID#1402, PDF p. 38; Tr. 146:11-17.)

12. In a February 9 email, Plaintiff wrote that he would tend to agree with the characterization that the display was for two purposes: supporting aspects of the social-studies curriculum, including topics involving sexual orientation or gender identity in historical context, and signaling a respectful classroom environment. In the same email, Plaintiff disputed that Policy 5780.01 applied and described the display as incidental. (Pl.'s Standards Email, Doc. 29-22, PageID#1665-1666, PDF pp. 3-4.)

13. Harleman asked Plaintiff to review the governing standards and prepare an email identifying standards to which Plaintiff believed the display was especially applicable. (Pl. Dep., Doc. 29-1, PageID#1375, PDF p. 11; Tr. 39:1-40:3.)

14. Plaintiff used the Ohio Social Studies Model Curriculum and the AP European History Course and Exam Description to prepare the email. (Pl. Dep., Doc. 29-1, PageID#1375, PDF p. 11; Tr. 39:1-40:3; Pl.'s Standards Email, Doc. 29-22, PageID#1669-1670, PDF pp. 7-8.)

15. Plaintiff had Harleman review the email before he sent it through the school email system, and Harleman said it was 'perfect.' Harleman testified that he had no reason to doubt Plaintiff's account and believed it was accurate. (Pl. Dep., Doc. 29-1, PageID#1375, PDF p. 11; Tr. 39:1-40:3; Harleman Dep., Doc. 29-3, PageID#1451, PDF p. 21; Tr. 78:3-15.)
16. Plaintiff's contemporaneous email identified eight American History standards and twenty AP European History topics to which he believed the display was especially applicable. (Pl.'s Standards Email, Doc. 29-22, PageID#1669-1670, PDF pp. 7-8.)
17. Plaintiff wrote that students must engage with assigned material 'in a respectful and intellectual manner grounded in facts.' (Pl.'s Standards Email, Doc. 29-22, PageID#1670, PDF p. 8.)
18. In that same email, Plaintiff wrote: 'The flag is a reminder that they must treat their classmates with mutual respect, regardless of personal opinions or beliefs.' (Pl.'s Standards Email, Doc. 29-22, PageID#1670, PDF p. 8.)

19. Plaintiff confirmed under oath that the display was "especially applicable" to numerous American History standards. Walking through several standards individually, he testified that the pride and transgender-pride images represented LGBTQ groups addressed under Content Standard 27, including the Gay Liberation movement, and connected those images to the Lavender Scare under Content Standard 24, the Second Red Scare. He also connected the display's words and images to the treatment of Native Americans and the Plains Wars; Reconstruction and institutionalized racism; post-World War I racial intolerance; the Harlem Renaissance; marginalized groups in World War II; the broader Civil Rights Movement; and white flight, immigration reform, and urban riots. He further testified that the display was applicable to post-9/11 material and "applies to most of the curriculum, if not all of it." (Pl.

Dep., Doc. 29-1, PageID#1381-1383, PDF pp. 17-19; Tr. 62:13-70:7; Pl.'s Standards Email, Doc. 29-22, PageID#1669-1670, PDF pp. 7-8.)

20. Plaintiff testified that he did not point to the display as a formal teaching device, use it as a formal methodology of instruction, or use it to impart particular substantive knowledge. His February 16 email said he had not incorporated it into the curriculum or used it as an instructional item. (Pl. Dep., Doc. 29-1, PageID#1402, PDF p. 38; Tr. 146:18-147:8; Pl.'s Standards Email, Doc. 29-22, PageID#1663, PDF p. 1.)

21. The District's verified response states that teachers receive 'considerable latitude' to display personal items, including sports-team flags, motivational posters, and family photographs, but that this latitude 'is defined by applicable Board policy.' (Defs.' Verified Resp. to Interrogs., Doc. 29-7, PageID#1501, PDF p. 6.)

22. Wallace testified that teachers have leeway to decorate and that a personal item does not necessarily communicate District endorsement, but that, 'at the end of the day,' the school remains responsible for what is and is not on classroom walls. (Wallace Dep., Doc. 29-4, PageID#1476, PDF p. 23; Tr. 87:12-88:9.)

23. Harleman testified that the Board could adopt a policy governing classroom-wall decorations and that, as principal, he would be required to enforce it. (Harleman Dep., Doc. 29-3, PageID#1452, PDF p. 22; Tr. pp. 82-85.)

24. Policy 5780.01 was adopted on October 28, 2025, defined 'sexuality content' to include an 'image' in a classroom setting, and prescribed parental-notice, review, and opt-out procedures. (Policy 5780.01, Doc. 29-9, PageID#1512-1514, PDF pp. 1-3.)

25. Before the February 25 vote, the Superintendent forwarded written classroom-display guidance to principals, assistant principals, and academic staff, stating that it 'will be used moving forward,' and reported that it was being shared with the teachers' association. The guidance stated that the Board retained final authority over classroom displays under Policy 5780.01. (Classroom-Display Guidance, Doc. 29-28, PageID#2314-2315, 2317, PDF pp. 1-2, 4.)

26. The Board's approved minutes record a motion 'to determine if poster constitutes sexuality content as defined by LM Policy 5780.01.' Bullock made the motion, Smith seconded it, and it carried four to one. (Feb. 25, 2026 Board Minutes, Doc. 13-3, PageID#114, PDF p. 3.)

Respectfully submitted,

/s/ Omar Tarazi____________
Omar Tarazi (0084165)
5635 Sandbrook Lane
Hilliard, Ohio 43026
Ph: (614) 226-2823
otarazi@tarazilaw.com
Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24th, 2026, I filed the foregoing through the Court's CM/ECF system, which served counsel for Plaintiff.

/s/ Omar Tarazi__________
Omar Tarazi (0084165)