**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

GEORGE McINTYRE,

Plaintiff,

v.

LITTLE MIAMI LOCAL SCHOOL DISTRICT, et al.,

Defendants.

Case No. 1:26-cv-00351-MWM

Judge Matthew W. McFarland

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Defendants' separately filed Cross-Motion for Summary Judgment (Doc. 43) presents the dispositive threshold issue. The undisputed facts establish that Plaintiff acted pursuant to his official duties as a teacher when he used a permanent classroom display to communicate with his assigned students. Because that expression is not protected by the First Amendment, Count I fails as a matter of law. If the Court disagrees, Plaintiff's motions must nevertheless be denied because the governing law, the additional undisputed facts, and the competing reasonable inferences arising from the complete record foreclose judgment in his favor.

## II. RELEVANT RECORD AND PROCEDURAL POSTURE

Plaintiff is a history teacher at Little Miami High School. (Am. Compl., Doc. 18, ¶¶ 2, 5, PageID#247-248, PDF pp. 1-2.) For approximately four years he maintained a "Hate Has No Home Here" poster in his classroom that incorporates, among other images, a rainbow pride flag and a transgender-pride flag. (Am. Compl., Doc. 18, ¶¶ 3, 10, PageID#247, 249, PDF pp. 1, 3.) In October 2025, following the enactment of Ohio's Parents' Bill of Rights (H.B. 8), the Board adopted Policy 5780.01, which requires parental notification and an opportunity to opt out before

instruction that includes “sexuality content,” a term that expressly excludes “incidental references to sexual concepts or gender ideology occurring outside of formal instruction or presentations on such topics.” (Am. Compl., Doc. 18, ¶¶ 14–15, PageID#252-254, PDF pp. 6-8; Policy 5780.01, Doc. 29-9, PageID#1512-1514, PDF pp. 1-3.)

On February 25, 2026, the Board's official recorded action was a 4-1 motion "to determine if poster constitutes sexuality content as defined by LM Policy 5780.01." (Feb. 25, 2026 Board Minutes, Doc. 13-3, PageID#114, PDF p. 3.) The Board subsequently adopted a written Statement explaining that the Policy's procedures had to be followed before the poster could remain, that its action was procedural, and that Policy 5780.01 "does not ban any flag, image, viewpoint, or symbol." (March 3, 2026 Special Board Meeting Minutes and Statement, Doc. 13-5, PageID#130, PDF p. 1.) Plaintiff chose not to provide notice and an opportunity to opt out because of possible consequences if a parent later opted out, then replaced the poster with another "Hate Has No Home Here" display in the same location. (Pl. Dep., Doc. 29-1, PageID#1398, PDF p. 34; Tr. 131:1-133:12; Replacement Display, Doc. 13-11, PageID#203, PDF p. 1.)

Defendants' Rule 12(b)(6) motion (Defs.' Mot. Dismiss, Doc. 10, PageID#71-80, PDF pp. 1-10) remains fully briefed and pending. Plaintiff then invoked Rule 56 and asked the Court to enter final judgment on Count I based on the expedited preliminary-injunction record. Defendants have now filed their Cross-Motion on the threshold official-duty question because Plaintiff's deposition establishes the display's purpose, audience, setting, and connection to course content. (Defs.' Cross-Mot., Doc. 43, PageID#3156-3169, PDF pp. 1-14; Defs.' Proposed Undisputed Facts, Doc. 43-2, PageID#3199-3204, PDF pp. 1-6.) Other merits issues remain on a preliminary-injunction record: discovery was authorized only 'in anticipation of a hearing on the Motion for a Preliminary Injunction.' The Court has not entered a Rule 16(b) merits schedule, and discovery

has remained confined to the limited scope, 30-day period, and five-deposition cap imposed by the expedited-discovery order. (Expedited-Discovery Order, Doc. 23, PageID#309-310, 319, PDF pp. 2-3, 12.)

## III. SUMMARY-JUDGMENT STANDARD

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Each side's motion must be evaluated separately, drawing reasonable inferences against the motion under consideration. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016). Whether public-employee speech is constitutionally protected is a question of law. *Mayhew v. Town of Smyrna*, 856 F.3d 456, 462 (6th Cir. 2017). On Plaintiff's motion, all reasonable inferences must be drawn in the light most favorable to Defendants, and summary judgment is inappropriate if the evidence is susceptible to different interpretations unless every reasonable juror would conclude that Plaintiff has met his burden. *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056-57 (6th Cir. 2001).

## IV. ARGUMENT

### A. The Undisputed Facts Establish That Plaintiff Spoke Pursuant To His Official Duties.

Defendants' separately filed Cross-Motion for Summary Judgment and Proposed Undisputed Facts thoroughly present the governing law and record concerning the dispositive official-duty question. (Cross-Mot., Doc. 43, PageID#3156-3169, PDF pp. 1-14; Defs.' PUF, Doc. 43-2, PageID#3199-3204, PDF pp. 1-6.) Defendants incorporate those arguments and facts by reference in opposition to Plaintiff's Motion. The essential facts and arguments are summarized as follows:

Plaintiff selected and maintained a permanent visual message on the wall of his assigned classroom, where it remained visible to the students he taught. He selected it to communicate support to marginalized students, which he believed could improve their learning and mental health, and to signify that coursework and classroom discussions would be grounded in fact and respectful of differences of opinion. His American History syllabus similarly made appreciation for people of different races, ethnicities, genders, and backgrounds a course goal; required respectful and kind conduct; and required mature and respectful participation when addressing sensitive subjects. (Pl. Dep., Doc. 29-1, PageID#1401-1402, PDF pp. 37-38; Tr. 145:12-146:17; American History I Syllabus, Doc. 29-29, PageID#2319, 2323, PDF pp. 1, 5.)

The connection to Plaintiff's curriculum was equally concrete. In a contemporaneous email prepared from the Ohio Social Studies Model Curriculum and the AP European History Course and Exam Description, Plaintiff identified eight American History standards and twenty AP European History topics to which he considered the display especially applicable. He wrote that students must engage with assigned material in a respectful and intellectual manner grounded in facts and that the display reminded them to treat classmates with mutual respect. (Pl.'s Standards Email, Doc. 29-22, PageID#1669-1670, PDF pp. 7-8.) Under oath, Plaintiff walked through several standards individually and connected the display's words and images to the treatment of Native Americans and the Plains Wars; Reconstruction and institutionalized racism; post-World War I racial intolerance; the Harlem Renaissance; marginalized groups in World War II; the Lavender Scare and Second Red Scare; the Civil Rights and Gay Liberation movements; white flight, immigration reform, and urban riots; and post-9/11 material. He ultimately testified that the display "applies to most of the curriculum, if not all of it." (Pl. Dep., Doc. 29-1, PageID#1381-1383, PDF pp. 17-19; Tr. 62:13-70:7.)

Plaintiff also testified that he did not use the display as a formal instructional item or to impart particular substantive knowledge. (Pl. Dep., Doc. 29-1, PageID#1402, PDF p. 38; Tr. 146:18-147:8.) That narrow testimony does not alter the display's actual function as a continuing teacher-to-student communication reinforcing learning, course content, classroom expectations, and the environment Plaintiff sought to create for his students. Taken together, the undisputed setting, audience, purpose, curricular connections, and District responsibility satisfy the Sixth Circuit's practical, all-circumstances inquiry and establish as a matter of law that Plaintiff spoke pursuant to his official duties. *DeCrane v. Eckart*, 12 F.4th 586, 595-96 (6th Cir. 2021); *Mayhew v. Town of Smyrna*, 856 F.3d 456, 463-65 (6th Cir. 2017); *Evans-Marshall v. Board of Education of Tipp City Exempted Village School District*, 624 F.3d 332, 340-43 (6th Cir. 2010). Because official-duty expression receives no First Amendment protection, Count I fails as a matter of law, and Plaintiff's Motion must be denied. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

The District's practice of allowing teachers to personalize classroom walls does not create a private-speech forum or transform every display into citizen speech. That latitude remained "defined by applicable Board policy," and Wallace testified that the school remained responsible for classroom walls. (Defs.' Verified Resp. to Interrogs., Doc. 29-7, PageID#1501, PDF p. 6; Wallace Dep., Doc. 29-4, PageID#1476, PDF p. 23; Tr. 87:12-88:9.)

If the Court concludes otherwise, Plaintiff's motions must nevertheless be denied because the governing law, the additional undisputed facts, and the competing reasonable inferences arising from the complete record foreclose judgment in his favor.

## B. Even If The Court Reaches *Pickering*, Plaintiff Has Not Established That The Balance Favors Him As A Matter Of Law.

If the Court concludes that Plaintiff spoke as a citizen on a matter of public concern, his Motion still fails under Pickering. *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563, 568 (1968). A public employer need not always prove actual disruption, and context matters. *Gillis v. Miller*, 845 F.3d 677, 687 (6th Cir. 2017). Plaintiff shows at most that no classroom disruption was reported before the Policy dispute and that actual disruption was not the Board's basis. Wallace nevertheless identified the lack of notice and opt-out, Board involvement, and continuing controversy as disruptive, and Defendants identified resulting operational consequences. (Wallace Dep., Doc. 29-4, PageID#1460-1461, PDF pp. 7-8; Tr. 24:6-26:12; Defs.' Verified Resp. to Interrogs., Doc. 29-7, PageID#1502, PDF p. 7.) The District also has interests in enforcing a generally applicable parental-notice procedure and retaining responsibility for permanent student-facing classroom communications. Even assuming Defendants bear the ultimate justification burden once protected speech is established, the competing evidence concerning disruption and the District's interests precludes judgment for Plaintiff as a matter of law.

**C. The Board Applied A Facially Neutral Notice-And-Opt-Out Procedure.**

**1. The Board Determined That The Display Constituted "Sexuality Content" Under Policy 5780.01, Triggering The Policy's Notice-And-Opt-Out Procedure.**

The approved minutes memorialize a 4-1 motion "to determine if poster constitutes sexuality content as defined by LM Policy 5780.01." (Feb. 25, 2026 Board Minutes, Doc. 13-3, PageID#114, PDF p. 3.) That classification was the Board's recorded action, not a categorical removal order. Wallace's earlier request to Morgan was not itself Board action; the matter proceeded through a curricular explanation, administrative and legal review, placement on the agenda, and action by motion. (Wallace Dep., Doc. 29-4, PageID#1481, PDF p. 28; Tr. 108:5-16;

Harleman Dep., Doc. 29-3, PageID#1442-1443, PDF pp. 12-13; Tr. 42:13-47:22; Board Emails, Doc. 29-22, PageID#1664-1665, PDF pp. 2-3.) The Board's Statement explained that the procedure had to be followed and the message itself was not banned. (Board Statement, Doc. 13-5, PageID#130, PDF p. 1.) Plaintiff chose not to follow the Policy’s notice-and-opt-out procedure because he was concerned about the possible consequences if a parent later opted out. He instead removed the poster and replaced it with another display conveying the same core message. (Pl. Dep., Doc. 29-1, PageID#1398, PDF p. 34; Tr. 131:1-133:12; Replacement Display, Doc. 13-11, PageID#203, PDF p. 1.)

### *2. The Administrators' Differing Policy Views Do Not Establish Pretext.*

The administrators' differing views about formal instructional use or policy application do not establish pretext. They were not the final decisionmakers. Before the vote, the Superintendent circulated District guidance stating that the Board retained final authority over classroom displays under Policy 5780.01 and advised that 'it is now a Board decision as to how to move forward.' (Classroom-Display Guidance, Doc. 29-28, PageID#2314-2315, 2317, PDF pp. 1-2, 4; Board Materials, Doc. 13-8, PageID#146, PDF p. 4.) Their differing classifications therefore neither bind the Board nor establish pretext as an undisputed fact. Any reliance on their testimony to infer Board animus is addressed separately in subsection 5.

### *3. The Statute And Policy Regulate Process, Not Messages.*

Ohio's Parents' Bill of Rights and Policy 5780.01 require notice and an opportunity to opt out when classroom materials engage students on sexual concepts or gender ideology beyond incidental references; they do not prohibit a viewpoint or message. The Board's Statement confirms that the Policy 'does not ban any flag, image, viewpoint, or symbol' and that the decision 'was not based on the phrase "Hate Has No Home Here."' (Board Statement, Doc. 13-5, PageID#130, PDF

p. 1.) Conditioning this display on a prescribed procedure is not suppression of its viewpoint. The contemporaneous guidance stated that neither identified purpose was prohibited, proposed either temporarily using symbol-specific displays during relevant curricular units with notice and opt-out or using more neutral imagery for continuous general messaging, and invited additional dialogue to resolve the issue informally. (Feb. 4, 2026 Email, Doc. 13-8, PageID#144-145, PDF pp. 2-3.) Policy 5780.01 had been adopted only months earlier, and the first display to complete its review and Board-classification process does not establish viewpoint discrimination without evidence that a materially similar display was presented under the Policy and treated differently; Plaintiff identifies none. (Defs.' Verified Resp. to Interrogs., Doc. 29-7, PageID#1504, PDF p. 9.)

#### *4. The Absence Of Plaintiff's Later Email Does Not Entitle Him To Summary Judgment.*

Plaintiff argues that the Board acted on an incomplete record because there is no evidence it received his February 16 email. But Plaintiff identifies no authority requiring the Board to obtain every potentially relevant document before making a policy classification, and the absence of one email does not establish a constitutional violation or entitle him to summary judgment. The Board received Plaintiff's prior written justification tying the display to social-studies standards involving sexual orientation and gender identity. (Board Materials, Doc. 13-8, PageID#143-148, PDF pp. 1-6.) Moreover, the Superintendent testified that she told the Board that McIntyre said he did not use the display in lessons. (Morgan Dep., Doc. 29-2, PageID#1425, PDF p. 18; Tr. pp. 66-69.) The contemporaneous meeting transcript confirms that she clarified before the vote that McIntyre was "not using it in instruction" and instead described it as a continuing classroom reminder. (Feb. 25, 2026 Board Meeting Tr., Doc. 13-4, PageID#124-127, PDF pp. 9-12.) The distinction on which Plaintiff relies was therefore before the Board when it acted.

### 5. *Plaintiff's Animus Evidence Does Not Establish Collective Board Motive As A Matter Of Law.*

If the Court grants Defendants' Cross-Motion (Doc. 43), motive is moot. If the Court reaches motive, individual comments viewed in isolation may support one inference, but Plaintiff can obtain summary judgment only if the record forecloses reasonable competing inferences. It does not. Plaintiff's evidence falls into three categories, none of which establishes collective Board animus as a matter of law. Plaintiff's own Motion argues only that the evidence permits a "plausible inference" of pretext. (Pl.'s Mot., Doc. 26, PageID#1332, PDF p. 16.) That showing is insufficient on Plaintiff's Motion; he must establish that no reasonable competing inference remains.

#### a. *The Board's Official Action And Contemporaneous Guidance Support A Neutral Procedural Explanation.*

The Board-member comments must be read with the contemporaneous record. Horvath addressed value pluralism; Smith responded to being called a 'hater'; and Bullock tied the symbols to H.B. 8, requested curriculum review, and referenced notice and opt-out. (Feb. 25, 2026 Board Meeting Tr., Doc. 13-4, PageID#118-121, PDF pp. 3-6.) Before the vote, Wallace read law-director guidance stating that Policy 5780.01 was not directed at general kindness, respect, or anti-bullying messages; the written guidance also stated that agreement with the message was not the test. (Id., PageID#116-118, PDF pp. 1-3; Classroom-Display Guidance, Doc. 29-28, PageID#2316, PDF p. 3.)

The Board's recorded action was a 4-1 Policy classification, not a categorical prohibition. (Feb. 25, 2026 Board Minutes, Doc. 13-3, PageID#114, PDF p. 3; Board Statement, Doc. 13-5, PageID#130, PDF p. 1.) The record identifies no Board action prohibiting the Gay-Straight Alliance, limiting LGBTQ-related instruction, or imposing an employment consequence on either teacher. Instead, the Board classified one permanent student-facing display under Policy 5780.01,

triggering notice and opt-out rather than a ban. Plaintiff tied the display to learning, coursework, mutual respect, and subjects he taught; chose not to follow the procedure because of a possible future opt-out; and replaced the poster with another display conveying the same core message. (Pl. Dep., Doc. 29-1, PageID#1381-1382, 1398, 1401-1402, PDF pp. 17-18, 34, 37-38; Tr. 62:13-69:25, 131:1-133:12, 145:12-146:17.) Those facts support a neutral procedural explanation and, at minimum, competing reasonable inferences.

***b. The Witness Testimony Does Not Establish Collective Board Animus.***

Morgan did not testify that the Board acted with animus. She could not speak for individual members' motives and understood the Board's position to be that 'all people can be supported without any extra posters' and that a general kindness message would support everybody. (Morgan Dep., Doc. 29-2, PageID#1412-1413, PDF pp. 5-6; Tr. pp. 14-21.) Harleman perceived Wallace's visit as directed at this poster but did not know whether that focus concerned any group; he called the asserted disagreement with a 'lifestyle' his 'opinion' and an 'inference.' (Harleman Dep., Doc. 29-3, PageID#1445, PDF p. 15; Tr. pp. 54-57.) Neither witness supplied affirmative proof of collective Board motive.

Wallace described a viewpoint-neutral objective of removing classroom distractions and politics, identifying a 'Don't Tread on Me' flag and Obama, Reagan, and McConnell posters along with this display. (Wallace Dep., Doc. 29-4, PageID#1461, PDF p. 8; Tr. pp. 26-29.) His inquiry was followed by written guidance, administrative and legal review, and a recorded 4-1 motion made by Bullock and seconded by Smith. (Classroom-Display Guidance, Doc. 29-28, PageID#2314-2315, 2317, PDF pp. 1-2, 4; Feb. 25, 2026 Board Minutes, Doc. 13-3, PageID#114, PDF p. 3.) At most, that testimony shows a strong policy preference about classroom walls; it does not compel an inference of anti-LGBTQ animus. Plaintiff, meanwhile, conceded that his

malicious-motive allegation was 'speculation on my part' that he lacked evidence to prove. (Pl. Dep., Doc. 29-1, PageID#1373, PDF p. 9; Tr. 33:15-23.)

***c. Student Misconduct And Remote Historical Allegations Do Not Establish The Board's Motive.***

The former teacher attributed harassment and torn-down club posters to students, identified no District or Board direction or tolerance, and did not testify that the District mishandled the reports; the GSA remained active and Policy 5517.01 required investigation and remedial action. (Affiant Dep., Doc. 41-1, PageID#2956, PDF p. 7; Tr. 22:5-25:15; Morgan Dep., Doc. 29-2, PageID#1416-1417, PDF pp. 9-10; Tr. pp. 30-37; Policy 5517.01, Doc. 29-16, PageID#1584-1587, PDF pp. 1-4.) The Board also never adopted the 2024 display proposal. Morgan said H.B. 8 and Policy 5780.01 later made another policy unnecessary, while Wallace called the broader proposal 'scorched earth' and said the Board was trying not to take that route. (Morgan Dep., Doc. 29-2, PageID#1412-1413, PDF pp. 5-6; Tr. 17:24-18:3; Wallace Dep., Doc. 29-4, PageID#1474, PDF p. 21; Tr. 81:9-15.) Moreover, the affiant had left the District, played no role in the challenged decision, and lacked personal knowledge of the Board's deliberations or vote. (Affiant Dep., Doc. 41-1, PageID#2967, PDF p. 18; Tr. 67:3-22.) He received no discipline, negative review, or adverse employment action, and Morgan asked him to reconsider his resignation. (Id., PageID#2955, 2966, 2968, PDF pp. 6, 17, 19; Tr. 19:5-20:24, 63:1-12, 71:3-72:16.)

The remaining historical allegations were remote from the February 2026 vote and materially qualified in deposition. The former teacher did not know who canceled proposed training or why and acknowledged District-provided training. A prior Superintendent never told him why safe-space stickers were removed; he conceded a legitimate concern about distinguishing 'safe' from unmarked classrooms and that animus was only 'one possibility.' Regarding the book

fair, he could not identify Wallace's exact words or a categorical objection, did not know what other materials were involved, and acknowledged an inventory and policy review and that Wallace was not then a Board member; Morgan identified age appropriateness and consistent criteria as the District's concerns. (Affiant Dep., Doc. 41-1, PageID#2958-2965, 2977, PDF pp. 9-16, 28; Tr. 31:15-37:25, 42:7-45:18, 50:1-59:11, 106:7-107:24; Morgan Dep., Doc. 29-2, PageID#1428, PDF p. 21; Tr. pp. 78-81.) These events involved students, prior administrators, or conduct remote from the Board's February 2026 vote; none establishes the motive of the Board that acted here.

Taken together, the official action, contemporaneous guidance, qualified witness testimony, and remoteness of the historical allegations provide legitimate explanations and competing reasonable inferences. Plaintiff therefore cannot establish collective Board animus as a matter of law.

**6. Mahmoud Confirms That Notice And Opt-Out Protect Constitutionally Significant Parental Interests.**

Plaintiff attempts to distinguish *Mahmoud* because it concerned curricular books and parents' free-exercise rights rather than a teacher's speech claim. Defendants do not rely on *Mahmoud* as the test for employee speech. Its relevance is that parental concerns about school communications involving sexuality and gender may reflect constitutionally significant interests rather than discriminatory hostility. The Supreme Court found the challenged materials "unmistakably normative," held that withholding notice and opt-outs substantially burdened parents' religious exercise, and ordered notice whenever the materials were "used in any way" together with an opportunity for excusal. *Mahmoud v. Taylor*, 606 U.S. 522, 550-69 (2025).

Ohio law and Policy 5780.01 provide the same form of accommodation, advance notice and an opportunity to opt out, without prohibiting any material or message. The Board required those procedures here. Plaintiff's characterization of the poster as merely silent or noncurricular does not eliminate the parental interest: Plaintiff tied its LGBTQ-specific imagery to numerous subjects he taught. (Pl. Dep., Doc. 29-1, PageID#1381-1383, 1401-1402, PDF pp. 17-19, 37-38; Tr. 62:13-70:7, 145:12-146:17; Pl.'s Standards Email, Doc. 29-22, PageID#1669-1670, PDF pp. 7-8.) *Mahmoud* therefore confirms that accommodating parental interests is a constitutionally legitimate consideration and, without more, does not establish animus. At minimum, it supplies a legitimate explanation and a reasonable competing inference that precludes summary judgment for Plaintiff.

**7. Mt. Healthy Provides Another Reason To Deny Plaintiff's Motion.**

If the Court reaches motive and finds that protected conduct was a substantial or motivating factor, Defendants avoid liability by showing that the Board would have reached the same decision absent that consideration. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). In this case, the record permits that conclusion. Before the vote, the Board members received photographs of the display and Plaintiff's own written explanation identifying eight American History standards and twenty AP European History topics to which it was especially applicable and describing it as a reminder governing how students should engage with course material and one another. (Board Materials, Doc. 13-8, PageID#143, 147-148, PDF pp. 1, 5-6.) From this contemporaneous evidence, a reasonable factfinder could conclude that the Board would have made the same notice-and-opt-out determination based on the display's admitted function and the governing policy. That competing inference defeats Plaintiff's Rule 56 motion.

## D. Plaintiff's Vagueness, Unbridled-Discretion, And Incidental-Reference Arguments Do Not Entitle Him To Judgment.

### 1. Plaintiff Did Not Plead A Facial Challenge.

Count I challenges Defendants' application of R.C. 3313.473 and Policy 5780.01 to Plaintiff's particular display and seeks relief permitting that display; it does not plead that either enactment is facially invalid. Although the prayer refers generally to the First and Fourteenth Amendments, Count I pleads only a First Amendment free-speech claim, as incorporated through the Fourteenth Amendment, and no separate due-process, equal-protection, or vagueness claim. (Am. Compl., Doc. 18, Count I, PageID#260-261, PDF pp. 14-15.) To the extent Plaintiff's Motion asks the Court to invalidate the statutory or policy terms as undefined, overbroad, or conferring unbridled discretion in all applications, that theory is facial in substance and outside the pleadings. (Pl.'s Mot., Doc. 26, PageID#1336-1337, PDF pp. 20-21.) A plaintiff may not add a new claim through summary-judgment briefing. *Tucker v. Union of Needletrades, Industrial & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005). A party challenging the constitutionality of a state statute must also comply with Rule 5.1, and the Court must certify the challenge to the Ohio Attorney General. Fed. R. Civ. P. 5.1; 28 U.S.C. § 2403(b). Plaintiff cannot obtain an unpleaded facial ruling in this posture.

### 2. The Statutory And Policy Terms Are Broad, Not Unintelligible.

R.C. 3313.473 defines 'sexuality content' as any oral or written instruction, presentation, image, or description of sexual concepts or gender ideology provided in a classroom setting, and it expressly identifies excluded categories. (R.C. 3313.473, Doc. 29-8, PageID#1510, PDF p. 5.) Policy 5780.01 repeats that definition and those exclusions. (Policy 5780.01, Doc. 29-9, PageID#1512-1513, PDF pp. 1-2.) The definition is broad, but breadth and vagueness are distinct.

A law is not vague merely because it is sometimes difficult to determine whether a governing fact has been proved; vagueness concerns 'the indeterminacy of precisely what that fact is.' *United States v. Williams*, 553 U.S. 285, 306 (2008). The statute identifies the subject matter, setting, covered forms of communication, and exclusions. Disagreement at the margins does not make those terms unintelligible.

The testimony confirms that the dispute concerns the breadth and application of the definition, not an inability to comprehend the subject it addresses. Morgan distinguished direct instruction on a sexual subject from references arising while teaching historical movements. (Morgan Dep., Doc. 29-2, PageID#1426, PDF p. 19; Tr. 72:8-24, 73:16-21.) Harleman treated neutral instruction about historical events as outside the Policy and effectively applied a history-or-neutrality limitation. (Harleman Dep., Doc. 29-3, PageID#1446-1447, PDF pp. 16-17; Tr. 61:12-62:14.) The former teacher associated sexual content with explicit, pornographic, or genital material, although the Policy contains no explicitness requirement. When asked whether the Policy would apply to an abortion-related lesson, he answered, “That’s above my pay grade.” (Affiant Dep., Doc. 41-1, PageID#2977, PDF p. 28; Tr. 108:9-109:23.) These witnesses did not fail to understand the category the Policy addressed; they applied additional limitations that do not appear in its text, while the former teacher also recognized that the ultimate classification was not his to make. The Board, exercising the final authority identified in the contemporaneous guidance, applied the written definition without importing those limitations and determined that the display was not merely incidental. (Classroom-Display Guidance, Doc. 29-28, PageID#2317, PDF p. 4; Feb. 25, 2026 Board Minutes, Doc. 13-3, PageID#114, PDF p. 3.) Disagreement with that application does not establish unconstitutional vagueness or entitle Plaintiff to summary judgment.

**3. Plaintiff's Incidental-Reference Argument Confirms His Understanding Of The Framework.**

The incidental-reference exclusion applies only to 'references to sexual concepts or gender ideology'; material unrelated to those subjects never reaches the exclusion. (R.C. 3313.473, Doc. 29-8, PageID#1510, PDF p. 5; Policy 5780.01, Doc. 29-9, PageID#1512-1513, PDF pp. 1-2.) Contemporaneously, Plaintiff stated that his 'thought is my flag falls under Exception C,' that he could 'articulate an argument that it is' incidental, and that the display was 'at most an incidental reference.' (Pl. Dep., Doc. 29-1, PageID#1377, 1401, PDF pp. 13, 37; Tr. 46:17-47:11, 142:7-143:16; Feb. 9 Email, Doc. 29-22, PageID#1666, PDF p. 4.) By invoking that exclusion, Plaintiff treated the display, for purposes of his contemporaneous analysis, as a reference to sexual concepts or gender ideology while arguing that the reference was merely incidental and therefore excluded from 'sexuality content.'

Plaintiff later rejected counsel's characterization that invoking the exclusion necessarily conceded the display first met the definition. (Pl. Dep., Doc. 29-1, PageID#1400, PDF p. 36; Tr. 138:1-139:7.) But the point is not a binding concession that the display remained 'sexuality content' after the exclusion applied. His contemporaneous reliance on the precise statutory exception shows that he understood the framework and disputed how the exception should apply to his display. The Board reached a different application of that same understood framework. That disagreement does not prove vagueness, unbridled discretion, or pretext as a matter of law.

**4. The Statute And Policy Provide A Defined Decision Process.**

The statute and Policy channel concerns through a defined process: a parent may submit a written concern to the building administrator, appeal to the Superintendent, and then appeal to the Board; nothing prevents a parent from contacting a Board member. (R.C. 3313.473, Doc. 29-8,

PageID#1507-1508, PDF pp. 2-3; Policy 5780.01, Doc. 29-9, PageID#1513-1514, PDF pp. 2-3.) The contemporaneous guidance further stated that the Board retained final authority and could act by motion. (Classroom-Display Guidance, Doc. 29-28, PageID#2317, PDF p. 4.) The Board did so here through a publicly recorded 4-1 classification under Policy 5780.01, followed by a written Statement explaining that the result triggered procedure rather than a ban. (Feb. 25, 2026 Board Minutes, Doc. 13-3, PageID#114, PDF p. 3; Board Statement, Doc. 13-5, PageID#130, PDF p. 1.)

Local boards may resolve close applications differently, including by favoring additional parental notice or a broader application of the incidental-reference exclusion. That is the exercise of judgment within a defined, publicly recorded, and reviewable process, not unbridled licensing authority over private speech in a public forum. Plaintiff's prior-restraint authorities do not govern a school board's control of employee classroom communications under *Garcetti* and *Evans-Marshall*. See Part IV.A. Neither the breadth of the framework nor the Board's application of it establishes a constitutional violation or pretext as a matter of law.

### E. Plaintiff Has Not Shown Irreparable Harm

Plaintiff's claimed injury overstates the Board's action. The Statement required compliance with the Policy before this poster could remain; it did not ban the message. (Board Statement, Doc. 13-5, PageID#130, PDF p. 1.) Plaintiff declined notice and opt-out because of possible consequences if a parent later opted out, although none had and none might. He had not determined whether implementation would be burdensome and testified that, at the beginning of a school year, 'The honest answer is, I don't know. Logistically, from my end, I don't think that it would be that big of a deal.' (Pl. Dep., Doc. 29-1, PageID#1398, PDF p. 34; Tr. 131:1-133:12.) A choice based on an opt-out that never occurred does not establish likely irreparable harm.

The asserted injury depends on two uncertain events: a parent might someday opt out, and that opt-out might prove burdensome. Neither has occurred, and Plaintiff cannot affirm the latter. Preliminary relief requires irreparable harm that is 'likely,' not merely possible. *Winter v. NRDC*, 555 U.S. 7, 22 (2008). The contingent hypothetical alleged burden fails that standard.

Plaintiff's replacement display further undermines the claimed harm. He replaced the poster with another display in the same location conveying the same 'Hate Has No Home Here' message. (Replacement Display, Doc. 13-11, PageID#203, PDF p. 1.) No parent has invoked an opt-out, Plaintiff identifies no discipline actually imposed, and the core message remains on his classroom wall. (Pl. Dep., Doc. 29-1, PageID#1398, PDF p. 34; Tr. 131:23-132:10; Pl.'s Proposed Facts para. 39, Doc. 26-1, PageID#1352, PDF p. 11.) That is not likely, imminent, and irreparable harm.

**F. The Remaining Preliminary-Injunction Factors Favor Defendants (Sur-Reply).**

Parts A-D defeat likelihood of success, the most important factor, and Part E defeats likely irreparable harm. Without a likely First Amendment violation, Plaintiff cannot rely on a presumption of irreparable harm; his own testimony makes the asserted practical burden speculative. The equities and public interest also favor Defendants because a mandatory injunction would override an elected Board's parental-notification policy on that speculative record.

**G. If Claims Remain, Ordinary Merits Discovery Should Precede Trial.**

The present record permits the Court to decide the official-duty threshold and, independently, suffices to deny Plaintiff's motions. If claims remain and the preliminary-injunction motion is consolidated with trial, ordinary merits discovery and trial preparation should precede trial.

## V. CONCLUSION

Defendants respectfully request that the Court grant their Cross-Motion (Doc. 43) and enter judgment on Count I because the undisputed facts establish, as a matter of law, that Plaintiff's classroom display was speech pursuant to his official duties. The Court should also deny Plaintiff's Motion for Summary Judgment and Motion for Preliminary Injunction. Alternatively, if the official-duty issue does not resolve the action, the Court should deny Plaintiff's motions because the governing law, the additional undisputed facts, and the competing reasonable inferences arising from the complete record foreclose judgment in his favor. If claims remain, Defendants request targeted merits discovery before trial, including the remaining Board members and individuals who communicated with Plaintiff regarding this matter. Defendants do not oppose deferring the preliminary-injunction motion and consolidating it with a trial on the merits, provided that, if any claim survives summary judgment, the parties first receive a reasonable opportunity for ordinary merits discovery and trial preparation. That course, however, confirms that preliminary relief is neither necessary nor warranted: postponing a preliminary-injunction motion until trial defeats the purpose of preliminary relief. Moreover, the record developed through the expedited discovery Plaintiff requested defeats his required showing and weighs against relief under each preliminary-injunction factor. The motion should therefore be denied.

Respectfully submitted,

/s/ Omar Tarazi______________
Omar Tarazi (0084165)
5635 Sandbrook Lane,
Hilliard, Ohio 43026
Ph: (614) 226-2823
otarazi@tarazilaw.com
Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2026, I filed the foregoing through the Court's CM/ECF system, which served counsel for Plaintiff.

/s/ Omar Tarazi_______________
Omar Tarazi (0084165)