**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

GEORGE McINTYRE,

Plaintiff,

v.

LITTLE MIAMI LOCAL SCHOOL DISTRICT, et al.,

Defendants.

Case No. 1:26-cv-00351-MWM

Judge Matthew W. McFarland

**DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED UNDISPUTED FACTS AND STATEMENT OF PROPOSED DISPUTED ISSUES OF MATERIAL FACT**

Pursuant to Section III.B.2 of the Court's Standing Order, Defendants respond to Plaintiff's Proposed Undisputed Facts in corresponding paragraphs. An admission reaches only the stated historical fact, not a legal characterization.

**<u>RESPONSE TO PROPOSED UNDISPUTED FACTS</u>**

1. Admitted.

2. Admitted.

3. Admitted.

4. Denied. The proposed fact lacks a record citation and states a legal conclusion. The governing State standards contain LGBTQ+ subject matter: Content Standard 27 addresses the Gay Liberation movement beginning with the Stonewall Riots, and Content Standard 32 addresses disagreements over LGBTQ+ rights. (Pl. Dep., Doc. 29-1, PageID#1380-1381, PDF pp. 16-17; Tr. pp. 58-65.)

5. Admitted that the identified subjects were among the subjects Plaintiff taught in American History and AP European History, as stated in his verified interrogatory response. This

admission is limited to the subjects identified in Proposed Fact 5. Denied to the extent Proposed Fact 5 is intended to imply that those subjects exhaustively describe either course.

6. Denied. The statement presents a conclusion under Policy 5780.01, and the record is disputed. McIntyre testified that he regularly teaches LGBTQ+ civil-rights history, including the Stonewall Riots and the Gay Liberation movement, under Content Standard 27; lost instructional time prevented him from reaching those subjects during the 2025–2026 school year. (Pl. Dep., Doc. 29-1, PageID#1378, 1380-1381, 1385, PDF pp. 14, 16-17, 21; Tr. pp. 50-53, 58-65, 78-81.) The cited testimony reflects the witnesses' opinions, not the District's controlling classification. The District's implementation guidance expressly states that "[t]he Board retains final authority" to determine whether a classroom display complies with the Policy. (Classroom-Display Guidance, Doc. 29-28, PageID#2317, PDF p. 4.) The Board exercised that authority and determined that the display constituted sexuality content under Policy 5780.01. (Feb. 25, 2026 Board Minutes, Doc. 13-3, PageID#114, PDF p. 3.) Plaintiff's proposed conclusion therefore cannot be treated as an undisputed fact.

7. Admitted only that Ohio's model curriculum is publicly available on the State website and that Schoology is a District platform through which parents may access materials posted by teachers. Denied that the record establishes that parents received all of McIntyre's course materials before instruction or that McIntyre posted all teaching materials, syllabi, and assignments on Schoology. McIntyre testified that he believed he had posted his syllabus but could not say he had done so every semester, did not believe he had posted the model curriculum during the preceding two school years, and would need to review his archived pages and files to determine what had been posted. (Pl. Dep., Doc. 29-1, PageID#1376, 1383, PDF pp. 12, 19; Tr. 42:10-43:18, 72:8-73:20.) Morgan testified that the amount placed on

Schoology "depends on the teacher" and that parents have access to what is actually posted; Harleman confirmed that no Board policy requires teachers to post everything. (Morgan Dep., Doc. 29-2, PageID#1419, 1427, PDF pp. 12, 20; Tr. 43:4-44:25, 76:22-77:8; Harleman Dep., Doc. 29-3, PageID#1447-1448, PDF pp. 17-18; Tr. 63:13-65:15, 66:5-67:15.)

8. Admitted in part. Defendants admit the visual description of the Flag, that McIntyre displayed it for approximately four years, and that no complaint about it was communicated to him before the events at issue. Denied insofar as Proposed Fact 8 asserts that no concern or complaint was raised; see Response 12. Policy 5780.01 was adopted on October 28, 2025, following the enactment of H.B. 8. The issue presented in February 2026 was not whether anyone had previously complained about the Flag's message, but whether its continued classroom display constituted "sexuality content" under the newly adopted Policy and therefore required compliance with the Policy's parental-notification, review, and opt-out procedures. (Policy 5780.01, Doc. 29-9, PageID#1512-1514, PDF pp. 1-3; Classroom-Display Guidance, Doc. 29-28, PageID#2316-2317, PDF pp. 3-4.) Denied otherwise.

9. Admitted that the reproduced photograph shows an electronic screen displaying two separate images: a close-up of the Flag and a classroom photograph with an arrow indicating where the Flag was displayed.

10. Admitted in part. Defendants admit only that Proposed Fact 10 describes McIntyre's stated purposes and subjective beliefs. McIntyre stated that he displayed the Flag to express support for marginalized and potentially at-risk students and to remind students to treat their classmates with mutual respect. (Pl.'s Verified Resp. to Interrogs., Doc. 29-23, PageID#1673, PDF p. 3.) He further testified that such support could improve learning and mental health and that he wanted the display to signify that coursework and classroom discussion would be grounded in

fact and respectful of differences of opinion. (Pl. Dep., Doc. 29-1, PageID#1401-1402, PDF pp. 37-38; Tr. 145:12-146:17.) McIntyre also identified numerous American History standards and AP European History topics to which he considered the display especially applicable and testified that it applied to most, if not all, of his curriculum. (Pl.'s Standards Email, Doc. 29-22, PageID#1669-1670, PDF pp. 7-8; Pl. Dep., Doc. 29-1, PageID#1381-1383, PDF pp. 17-19; Tr. 62:13-70:7.) Defendants admit only that McIntyre expressed a subjective belief that certain Board and community members were hostile toward marginalized or LGBTQ+ students; they object to treating that belief as evidence of those persons' motives and deny that the testimony and evidence establish Board animus. McIntyre acknowledged that his assertion that the Board acted "willfully, maliciously, and purposefully" was speculation and that he lacked evidence to prove it. (Pl. Dep., Doc. 29-1, PageID#1373, PDF p. 9; Tr. 33:15-23.) Denied otherwise.

11. Admitted in part. Defendants admit only that some community members perceived the Flag's imagery as conveying positions on contested social issues, as reflected in the Board-meeting record, and that Wallace agreed the display addressed a matter of political, social, or community concern. Those subject-matter points do not establish that McIntyre spoke as a private citizen rather than pursuant to his official duties; that classification is a separate legal question. *Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006); *DeCrane v. Eckart*, 12 F.4th 586, 596 (6th Cir. 2021). Denied otherwise.

12. Admitted only that the record identifies no formal written complaint submitted through the District's complaint procedure. Denied insofar as the proposed fact implies that no parent raised the display: Wallace testified that a parent brought it to his attention before January 2026, that

he had heard from a few parents, and that he had heard from other parents about the classroom item. (Wallace Dep., Doc. 29-4, PageID#1460-1461, PDF pp. 7-8; Tr. pp. 22-29.)

13. Admitted.

14. Admitted that LMSD generally permits teachers to display personal items and gives teachers latitude to decorate their classrooms, and that some classroom-wall displays need not be curriculum-related and are not necessarily District endorsement. Defendants clarify that this latitude is “defined by applicable Board policy,” Wallace testified that, “at the end of the day,” the school remains responsible for classroom walls, and Harleman testified that he would enforce a Board policy governing classroom decorations. (Defs.’ Verified Resp. to Interrogs., Doc. 29-7, PageID#1501, PDF p. 6; Wallace Dep., Doc. 29-4, PageID#1476, PDF p. 23; Tr. 87:12–88:9; Harleman Dep., Doc. 29-3, PageID#1452, PDF p. 22; Tr. pp. 82–85.)

15. Admitted only as detailed in Defendants’ response to Paragraph 14. Denied otherwise.

16. Admitted only that, in December 2024, the Board considered but did not adopt a proposed policy that generally would have limited classroom displays. Defendants object under Fed. R. Civ. P. 56(c)(2) and (4) to Plaintiff's characterization of the public response as 'significant public backlash' and, to the extent 'after' is intended to imply causation, to the assertion that public reaction caused the proposal not to be adopted. The cited Verified Complaint does not establish McIntyre's personal knowledge of the Board's reasons. The deposition testimony supplies different explanations: Morgan testified that an additional display policy ultimately was considered unnecessary in light of H.B. 8 and Policy 5780.01, and Wallace described the proposed approach as 'scorched earth' and testified that 'we were trying not to go that route.' (Morgan Dep., Doc. 29-2, PageID#1412-1413, PDF pp. 5-6; Tr. 17:24-18:3; Wallace Dep.,

Doc. 29-4, PageID#1474, PDF p. 21; Tr. 81:9-15.) Denied otherwise. The abandoned proposal is immaterial to the Board's later application of Policy 5780.01.

17. Admitted. Plaintiff's reference to R.C. 3113.473(G)(5) appears to be a typographical error; the correct citation is R.C. 3313.473(G)(5).

18. Admitted that the Board adopted Policy 5780.01 on October 28, 2025, following the enactment of H.B. 8, and that Proposed Fact 18 accurately quotes the Policy. Plaintiff's reference to "H.B. 5" is incorrect; the relevant enactment is H.B. 8. (Policy 5780.01, Doc. 29-9, PageID#1512-1514, PDF pp. 1-3; same policy previously filed at Doc. 10-1, PageID#81-83, PDF pp. 1-3.)

19. Admitted.

20. Admitted only that Wallace raised a concern about a separate middle-school "Love Wins" poster, which the teacher later removed. The cited testimony does not establish that Wallace photographed that poster or any book. (Morgan Dep., Doc. 29-2, PageID#1422, PDF p. 15; Tr. 55:13-56:16; Feb. 3, 2026 Email, Doc. 13-8, PageID#146, PDF p. 4.) Denied otherwise.

21. Admitted only that Wallace entered the media center and stated that his "intel was incorrect." Harleman testified that he did not know what Wallace meant by "intel," did not ask for clarification, and knew only that Wallace took no photographs in the media center. Morgan's testimony concerning Wallace's "intel" was based on reports from teachers; when asked what the "intel" concerned, she testified that she was assuming and did not know before offering her best guess that it concerned items displayed on classroom walls. The cited testimony does not establish that Wallace searched the media center for "objectionable" books or that he found no objectionable materials. (Harleman Dep., Doc. 29-3, PageID#1441-1442, PDF pp. 11-12; Tr.

41:12-42:2; Morgan Dep., Doc. 29-2, PageID#1420-1421, PDF pp. 13-14; Tr. 49:4-50:18.) Denied otherwise.

22. Admitted only that Wallace testified that, in approximately September 2025, before Policy 5780.01 was adopted, he asked Morgan whether she could have the display removed. (Wallace Dep., Doc. 29-4, PageID#1481, PDF p. 28; Tr. 108:5-16.) Nothing in the filed record shows that Wallace's request was an order or that he possessed unilateral authority to direct the Superintendent. The District's filed guidance recommended that a Board member who becomes aware of a concern notify the Superintendent so administration may address it through the established process, and it stated that the Board retains final authority to direct removal or modification by motion. (Classroom-Display Guidance, Doc. 29-28, PageID#2317, PDF p. 4.) Consistent with that process, Wallace later asked that the matter be placed on the Board's agenda, and the contemporaneous email framed the issue for the Board as whether the display implicated Policy 5780.01. (Board Emails, Doc. 29-22, PageID#1664-1665, PDF pp. 2-3.) The Board then acted by motion at its February 25, 2026 meeting. (Approved Minutes, Doc. 13-3, PageID#114, PDF p. 3.) Denied insofar as Proposed Fact 22 equates Wallace's request with an authoritative removal directive or conflates it with the later Board review. Denied otherwise.

23. Admitted only that Morgan communicated Wallace's concerns to Harleman and that Harleman did not independently order removal. Harleman instead asked McIntyre why the display was there and requested the curricular explanation that was forwarded to Morgan for review. (Harleman Dep., Doc. 29-3, PageID#1442-1443, PDF pp. 12-13; Tr. 42:13-47:22; Defs.' Verified Resp. to Interrogs., Doc. 29-7, PageID#1498, PDF p. 3.) McIntyre removed and replaced the display following the Board's later action. (Harleman Dep., Doc. 29-3, PageID#1445, PDF p. 15; Tr. 55:24-56:15.) Denied otherwise, including insofar as the phrase

"refused to comply" suggests that McIntyre disobeyed a formal removal directive from Morgan or Harleman.

24. Admitted only that, at Harleman's request, McIntyre reviewed the Ohio and AP standards and prepared an email identifying standards to which he believed the display was "especially applicable." Harleman reviewed the email before it was sent and described it as "perfect," and the email was forwarded to Morgan. Morgan understood "applicable" to mean relevant, rather than that McIntyre used the display as a formal instructional device. (Pl. Dep., Doc. 29-1, PageID#1375, PDF p. 11; Tr. 39:1-40:3; Morgan Dep., Doc. 29-2, PageID#1422, PDF p. 15; Tr. 55:10-57:23; Pl.'s Standards Email, Doc. 13-8, PageID#147-148, PDF pp. 5-6.) Denied otherwise.

25. Admitted.

26. Admitted only that McIntyre met with Morgan and Harleman on February 4, 2026. (Verified Compl., Doc. 1, PageID#9; Pl. Dep., Doc. 29-1, PageID#1379, PDF p. 15; Tr. 56:1-8.) Denied insofar as Proposed Fact 26 characterizes their discussion as communicating refusals to comply with formal removal directives. At that stage, the contemporaneous record reflects administrative review of the display and identifies a Board determination as the next step; the filed guidance likewise reserved final authority to direct removal or modification to the Board acting by motion. (Board Emails, Doc. 29-22, PageID#1668, PDF p. 6; Classroom-Display Guidance, Doc. 29-28, PageID#2317, PDF p. 4.) Harleman sought McIntyre's explanation and curricular justification rather than independently ordering removal. (Harleman Dep., Doc. 29-3, PageID#1442-1443, PDF pp. 12-13; Tr. 42:13-47:22.) Denied otherwise.

27. Admitted only that McIntyre's verified complaint recounts the February 4 conversation in those terms and that his stated purposes are detailed in Response 10. (Verified Compl., Doc.

1, PageID#9; Pl. Dep., Doc. 29-1, PageID#1401-1402, PDF pp. 37-38; Tr. 145:12-146:17.) Plaintiff's affidavit similarly states that the display symbolized support for marginalized students and reminded students to treat classmates with mutual respect. (Pl. Aff., Doc. 22-1, PageID#306, PDF p. 5.) The contemporaneous emails show review under Policy 5780.01 and later placement on the Board agenda. (Board Emails, Doc. 29-22, PageID#1664, 1668, PDF pp. 2, 6.) Denied otherwise.

28. Admitted only that McIntyre's original verified complaint states that Morgan told him she would not order removal and that, if the Board later voted to remove the display, noncompliance could constitute insubordination subject to applicable union procedures. (Verified Compl., Doc. 1, PageID#9, ¶ 22.) Plaintiff cites no deposition testimony from Morgan confirming this account. Denied otherwise.

29. Admitted only that, on February 4, 2026, Board counsel sent Morgan and Wallace the quoted email. The email does not refer specifically to a "rainbow image"; it states that the Policy was not directed at general messages encouraging kindness, respect, or anti-bullying, that neither identified purpose was prohibited, and that, depending on context and interpretation, displays incorporating images that could reasonably be viewed as presenting sexual concepts or gender ideology might implicate the parental-notification and opt-out requirements. The email is timestamped 12:17 p.m., while McIntyre testified that his joint discussion with Morgan and Harleman occurred after school. (Board Emails, Doc. 13-8, PageID#144-145, PDF pp. 2-3; Pl. Dep., Doc. 29-1, PageID#1379, PDF p. 15; Tr. 56:1-8.) Denied otherwise.

30. Admitted in part. The quoted language appears at Doc. 13-8, PageID#145, PDF p. 3, rather than PageID#143. Denied insofar as Proposed Fact 30 reduces the email's two context-dependent suggestions to a generalized recommendation that McIntyre replace the imagery.

The email proposed either temporarily using symbol-specific displays during relevant curricular units with policy-compliant parental notification, or using more neutral imagery for year-round general classroom messaging to avoid continuing compliance requirements while supporting the District's anti-bullying position. The email also stated that neither identified purpose was prohibited and invited additional dialogue to resolve the issue informally. Denied otherwise.

31. Admitted only that McIntyre characterized the display as, at most, an incidental reference; stated that he did not use it as a formal instructional item; and expressed concern that replacing the existing imagery with a "neutral" image might inadvertently erase LGBTQ+ representation. He stated a preference for discussing additional representation that could be added to the existing display rather than removing any represented group; he did not categorically describe the proposed alternative as "unacceptable." (Board Emails, Doc. 29-22, PageID#1665-1666, PDF pp. 3-4.) These statements reflect McIntyre's characterizations and preferences; they do not establish that the display was noncurricular or private speech. The official-duty classification turns on the display's purpose, audience, setting, subject matter, and function. *DeCrane*, 12 F.4th at 595-96. Denied otherwise.

32. Admitted.

33. Admitted that McIntyre sent the February 16, 2026 email and that Morgan responded that she would share it with counsel and the Board. (Feb. 16 Email, Doc. 29-22, PageID#1663, PDF p. 1.) Denied to the extent the proposed fact asserts that the record establishes whether the Board actually received or considered the email. The substance of McIntyre's distinction was nevertheless before the Board. Morgan testified that she told the Board he did not use the display in any lessons, and the meeting transcript records her statement that he was "not using

it in instruction" and instead used it as a continuing classroom reminder. (Morgan Dep., Doc. 29-2, PageID#1425, PDF p. 18; Tr. pp. 66-69; Feb. 25, 2026 Board Meeting Tr., Doc. 13-4, PageID#124-127, PDF pp. 9-12.) Denied otherwise.

34. Denied as stated. The approved minutes record a motion 'to determine if poster constitutes sexuality content as defined by LM Policy 5780.01,' made by Bullock, seconded by Smith, and carried 4-1. (Feb. 25, 2026 Board Minutes, Doc. 13-3, PageID#114, PDF p. 3.) The Board's later Statement explained that the Policy's procedures had to be followed before the poster could remain and that the message itself was not banned. (March 3, 2026 Special Board Meeting Minutes and Statement, Doc. 13-5, PageID#130, PDF p. 1.) Plaintiff decided against notice and opt-out because of possible consequences if a parent later opted out, although no parent had and none might. He then replaced the poster with one carrying the same message. (Pl. Dep., Doc. 29-1, PageID#1398, PDF p. 34; Tr. 131:1-133:12; Replacement Display, Doc. 13-11, PageID#203, PDF p. 1.)

35. Admitted.

36. Admitted in part. The Board's approved Statement explains that Policy 5780.01 and Ohio law require parental notification and an opportunity to review and opt out when classroom materials, under the totality of the circumstances, go beyond incidental references and engage students on sexual concepts or gender ideology. Based on the circumstances presented, the Board determined that those procedural requirements had to be followed before the display could remain. The Board further stated that Policy 5780.01 does not ban any flag, image, viewpoint, or symbol and that its action was procedural. (Board Statement, Doc. 13-5, PageID#130, PDF p. 1.) Denied otherwise.

37. Denied. Admitted only that individual members made the quoted statements during the February 25 meeting. In context, Horvath addressed value pluralism; Smith responded to the characterization of Christians who disagreed with the message as 'haters'; and Bullock tied the symbols to H.B. 8, requested curriculum review, and referenced parental notice and opt-out. (Feb. 25, 2026 Board Meeting Tr., Doc. 13-4, PageID#118-121, PDF pp. 3-6.) Before the vote, Wallace read guidance from the law director stating that Policy 5780.01 was not directed at general kindness, respect, or anti-bullying messages. The written guidance stated that agreement with the message was not the test. (Id., PageID#116-118, PDF pp. 1-3; Classroom-Display Guidance, Doc. 29-28, PageID#2315-2316, PDF pp. 2-3.) The Board's recorded action and complete Statement are set out in Responses 36 and 38. Morgan could not speak for individual members' motives, Wallace described concerns extending across viewpoints, and Plaintiff admitted that his malicious-motive allegation was speculation he could not prove. (Morgan Dep., Doc. 29-2, PageID#1412-1413, PDF pp. 5-6; Tr. pp. 14-21; Wallace Dep., Doc. 29-4, PageID#1461, PDF p. 8; Tr. pp. 26-29; Pl. Dep., Doc. 29-1, PageID#1373, PDF p. 9; Tr. 33:15-23.) Denied otherwise.

38. Admitted in part. On March 3, 2026, the Board approved the complete written Statement and directed its immediate distribution. It states that the decision was not based on the phrase 'Hate Has No Home Here,' that Policy 5780.01 'does not ban any flag, image, viewpoint, or symbol,' and that the Board's action was procedural. (Board Statement, Doc. 13-5, PageID#130, PDF p. 1.) Denied as to the asserted March 4 date and insofar as Proposed Fact 38 attributes its final quotation to Wallace as a later explanation. Before the vote, Wallace read substantially similar guidance from the law director stating that such displays 'may implicate' notice and opt-out

requirements. (Feb. 25, 2026 Board Meeting Tr., Doc. 13-4, PageID#116-118, PDF pp. 1-3; Feb. 4 Email, Doc. 13-8, PageID#145, PDF p. 3.) Denied otherwise.

39. Admitted only that McIntyre was advised that refusal to comply with a Board directive could constitute insubordination and could result in discipline, potentially including termination, under applicable procedures. (Verified Compl., Doc. 1, PageID#9.) No discipline was imposed. Denied insofar as Proposed Fact 39 characterizes the Board's action as a categorical removal order; the Board's recorded action is detailed in Response 34. Denied otherwise.

40. Admitted only that Wallace testified that community members perceived the imagery as conveying positions on contested social issues and agreed that the display's subject matter concerned a matter of political, social, or community concern. (Wallace Dep., Doc. 29-4, PageID#1462, PDF p. 9; Tr. 31:16-32:2.) As explained in Response 11, those subject-matter points do not establish that McIntyre spoke as a private citizen or that the display constituted protected public-employee speech. Denied otherwise.

41. Admitted only that no disruption of McIntyre's classroom instruction was reported before the Policy 5780.01 dispute arose; that the display did not impair his working relationships or ability to teach state standards; and that the Board's classification was not based on actual disruption to District operations or McIntyre's performance. (Pl. Dep., Doc. 29-1, PageID#1401, PDF p. 37; Tr. 144:11-25; Defs.' Verified Resp. to Interrogs., Doc. 29-7, PageID#1502, PDF p. 7.) Denied insofar as Proposed Fact 41 asserts no disruption elsewhere. Morgan limited her testimony to the period before the dispute, while Wallace identified the failure to provide notice and opt-out, Board involvement, and continuing discussion as disruption. (Morgan Dep., Doc. 29-2, PageID#1425, PDF p. 18; Tr. 68:23-69:7; Wallace Dep., Doc. 29-4, PageID#1460-1461, PDF pp. 7-8; Tr. 24:6-26:12.) Defendants' verified response identified operational

consequences of the dispute and litigation but confirmed that they were not the basis for the Board's decision. (Defs.' Verified Resp. to Interrogs., Doc. 29-7, PageID#1502, PDF p. 7.) Denied otherwise.

42. Denied for the reasons and based on the evidence cited in Response 41.

43. Denied for the reasons and based on the evidence cited in Response 41.

44. Admitted only as stated and qualified, and based on the evidence cited, in Response 41. Denied otherwise.

45. Admitted only that McIntyre did not point to the display or use it as a formal instructional item to impart particular substantive knowledge. Denied otherwise. His student-directed purposes and curricular connections are detailed in Response 10 and Defendants' Proposed Undisputed Facts 4-20. (Doc. 43-2, PageID#3200-3203, PDF pp. 2-5.) McIntyre selected and maintained the display in his assigned classroom to communicate support and expectations to students, believed its message could improve learning and mental health, identified numerous standards to which it was especially applicable, and testified that it applied to most, if not all, of his curriculum. (Pl. Dep., Doc. 29-1, PageID#1381-1383, 1401-1402, PDF pp. 17-19, 37-38; Tr. 62:13-70:7, 145:12-147:8; Pl.'s Standards Email, Doc. 29-22, PageID#1669-1670, PDF pp. 7-8.) Formal nonuse does not establish Plaintiff's labels 'not curricular,' 'not a school-sponsored expression,' or private speech. The constitutional classification is a question of law. *DeCrane*, 12 F.4th at 596.

46. Denied. Proposed Fact 46 repeats the legal conclusions addressed in Response 45. The relevant facts and evidence are stated in Response 45 and Defendants' Proposed Undisputed Facts 4-

20. (Doc. 43-2, PageID#3200-3203, PDF pp. 2-5.) Whether those facts establish citizen or official-duty speech is a question of law. *DeCrane*, 12 F.4th at 596.

47. Admitted only as stated and qualified, and based on the evidence cited, in Response 41. Denied insofar as Proposed Fact 47 characterizes the Board's action as a categorical decision to remove the display. Denied otherwise.

48. Denied. Whether the complete display constituted 'sexuality content' under Policy 5780.01 or Ohio law is a policy or legal conclusion, not a historical fact established by the cited testimony. The administrators offered individual opinions, but, as detailed in Response 6, the District's implementation guidance reserved final classification authority to the Board. The Board exercised that authority and determined that the notice, review, and opt-out procedures had to be followed before the display could remain. See Responses 6, 36, and 38 and the evidence cited there. Denied otherwise.

49. Denied. The District's general anti-bullying policies do not determine whether particular classroom material constitutes 'sexuality content.' Harleman's individual opinion does not establish that policy or legal conclusion as an undisputed fact. See Response 48 and the evidence cited there. Denied otherwise.

50. Denied. The District's prohibition against harassment based on sexual orientation does not determine whether a particular classroom expression constitutes or describes 'sexual concepts' or 'gender ideology.' Morgan's individual opinion does not establish that policy or legal conclusion as an undisputed fact. See Responses 48-49 and the evidence cited there. Denied otherwise.

51. Denied. Policy 5780.01 does not categorically exclude instruction concerning LGBTQ+ history or limit 'sexuality content' to instruction about sexual conduct or relationships. Classification depends on the specific material and totality of the circumstances, including whether a reference is merely incidental or instead prompts discussion, provides instruction, or solicits student engagement. (Policy 5780.01, Doc. 29-9, PageID#1513-1514, PDF pp. 2-3; Classroom-Display Guidance, Doc. 29-28, PageID#2316, PDF p. 3.) The administrators' individual interpretations do not establish Plaintiff's proposed conclusions as undisputed facts. See Responses 6 and 48-50.

52. Denied. Morgan's preliminary assessment does not conclusively determine the display's primary purpose or whether it was an incidental reference. The relevant facts are stated in Responses 10, 31, and 45 and Defendants' Proposed Undisputed Facts 8-20. (Doc. 43-2, PageID#3200-3203, PDF pp. 2-5.) Plaintiff's formal nonuse of the display as a lesson device does not make its continuing student-directed communication incidental as a matter of Policy or law. See Responses 6, 36, and 48-51 and the evidence cited there. Denied otherwise.

53. Denied. Proposed Fact 53 converts reported student misconduct into a claim of institutional and Board animus. The affiant testified that students reported harassment, bullying, taunts, slurs, and torn-down GSA or diversity-club posters. He did not identify the responsible students or any District or Board action directing, approving, or tolerating that conduct, and he did not testify that the District mishandled the reports. Instead, he documented, investigated, or reported the incidents to administrators. (Affiant Dep., Doc. 41-1, PageID#2956, PDF p. 7; Tr. 22:5-25:15.)

The affiant had left the District, held no role in the challenged decision, and had no personal knowledge of the Board's deliberations or vote. (Affiant Dep., Doc. 41-1, PageID#2967, PDF

p. 18; Tr. 67:3-22.) The GSA remained active; he could not recall his high-school administrators ever failing to support him; he received no discipline, negative review, or adverse employment action; and Morgan asked him to reconsider his resignation. (Id., PageID#2955, 2966, 2968, PDF pp. 6, 17, 19; Tr. 19:5-20:24, 63:1-12, 71:3-72:16.) The District also maintained a GSA and an anti-bullying policy requiring investigation and remedial action. (Morgan Dep., Doc. 29-2, PageID#1416-1417, PDF pp. 9-10; Tr. pp. 30-37; Policy 5517.01, Doc. 29-16, PageID#1584-1587, PDF pp. 1-4.) The cited evidence does not connect student misconduct to the February 2026 Board action. Denied otherwise.

54. Denied. The asserted call and directive are outside the affiant's personal knowledge. Defendants object under Fed. R. Civ. P. 56(c)(2) and (4) and Rules of Evidence 602 and 802. The affiant knew only that the principal said a staff member objected to the proposed training and approached then-Board member Mary Elmer; he did not know what occurred afterward, who decided to cancel, or why, and he never saw an email or heard a Board member issue a directive. (Affiant Dep., Doc. 41-1, PageID#2958-2959, 2961, PDF pp. 9-10, 12; Tr. 31:15-37:25, 45:4-18.) Elmer was not a member of the Board that acted in February 2026. (Feb. 25, 2026 Board Minutes, Doc. 13-3, PageID#112, PDF p. 1.) The interviews were recorded with the principal's permission, and the affiant acknowledged District-provided training concerning acceptance of students' identities. (Affiant Dep., Doc. 41-1, PageID#2958, 2961, PDF pp. 9, 12; Tr. 31:15-33:16, 42:7-23.) Denied otherwise.

55. Denied. Admitted only that safe-space stickers were removed under a prior Superintendent, who never told the affiant why. His conclusion was a 'pretty safe conclusion' inferred from the removal. (Affiant Dep., Doc. 41-1, PageID#2963, PDF p. 14; Tr. 50:1-51:22.) He acknowledged that only some doors displayed stickers, that an unstickered door might signal

students were not welcome, and that animus was only 'one possibility,' not the only one, for questioning distinctions among classrooms. (Id., PageID#2977, PDF p. 28; Tr. 106:7-107:24.) Nothing ties that earlier decision to the motives of the Board members who acted in February 2026. Denied otherwise.

56. Denied. The assertion that Wallace opposed 'any stories' containing LGBTQ+ characters is not established by the cited testimony. Proposed Fact 56 cites no Wallace testimony concerning *Heartstopper* or the Book Fair. The affiant could not identify Wallace's exact words or a categorical objection; he acknowledged that *Heartstopper* was the starting point, that he did not know what other materials were involved, that the materials were paused for inventory and policy review, and that Wallace was not then a Board member. (Affiant Dep., Doc. 41-1, PageID#2964-2965, PDF pp. 15-16; Tr. 54:5-59:11.) Morgan identified age appropriateness and consistent selection criteria as the District's concerns. (Morgan Dep., Doc. 29-2, PageID#1428, PDF p. 21; Tr. pp. 78-81.) This viewpoint-neutral explanation does not connect the earlier controversy to the February 2026 Board action. Denied otherwise.

**PROPOSED DISPUTED ISSUES OF MATERIAL FACT**

The objective facts material to the official-duty threshold are not genuinely disputed. Plaintiff's Proposed Facts, however, omit additional undisputed facts and embed disputed inferences, labels, and legal conclusions. The complete record is set out in Responses 10, 31, 37-38, 41, 45, and 48-56, with the evidence cited there. Considered as a whole, that record forecloses judgment in Plaintiff's favor. Defendants do not concede that Plaintiff's isolated quotations and unrelated historical allegations, read in context, support a reasonable inference of impermissible motive. If the Court rejects the official-duty threshold and concludes that competing reasonable inferences exist concerning motive and causation, the following issue would require resolution at trial:

1. Whether an impermissible viewpoint-based motive was a substantial or motivating factor in the Board's February 25, 2026 determination under Policy 5780.01 and, if so, whether the Board would have made the same determination absent any such motive. Plaintiff relies on isolated statements and earlier events; Defendants rely on their full context, the Policy's procedures, the guidance before the vote, the Board's recorded action and Statement, and the record-supported explanations detailed in Responses 37-38 and 53-56. (Feb. 25, 2026 Board Meeting Tr., Doc. 13-4, PageID#116-121, PDF pp. 1-6; Feb. 25, 2026 Board Minutes, Doc. 13-3, PageID#114, PDF p. 3; Board Statement, Doc. 13-5, PageID#130, PDF p. 1.)

Respectfully submitted,

/s/ Omar Tarazi__________
Omar Tarazi (0084165)
5635 Sandbrook Lane
Hilliard, Ohio 43026
Ph: (614) 226-2823
otarazi@tarazilaw.com
Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2026, I filed the foregoing through the Court's CM/ECF system, which served counsel for Plaintiff.

/s/ Omar Tarazi____________
Omar Tarazi (0084165)