**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

GEORGE McINTYRE,

Plaintiff,

v.

LITTLE MIAMI LOCAL SCHOOL DISTRICT, et al.,

Defendants.

Case No. 1:26-cv-00351-MWM

Judge Matthew W. McFarland

**DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff opens by asserting that "the Court must weigh" his interest in displaying the Flag against the District's interest "in promoting the efficiency of the public services." (Pl.'s Opp., Doc. 49, PageID#3508.) But *Pickering* balancing is the second step, reached only if Plaintiff first establishes that he spoke as a citizen. *Garcetti v. Ceballos*, 547 U.S. 410, 418, 421 (2006); *Evans-Marshall v. Board of Education of Tipp City Exempted Village School District*, 624 F.3d 332, 337-40 (6th Cir. 2010). Defendants' Cross-Motion presents that threshold question. (Defs.' Cross-Mot., Doc. 43, PageID#3157-3162.) Plaintiff's response confirms the material facts: he selected a continuing message for the wall of his assigned classroom; directed it to the students he taught; chose it to communicate support that he believed could improve learning and mental health and to signify how coursework and classroom discussions would proceed; called it a reminder governing students' treatment of classmates; and identified numerous course standards to which it was especially applicable. (Defs.' Proposed Facts 8–20, Doc. 43-2, PageID#3200-3203; Pl.'s Resp. to Defs.' Proposed Undisputed Facts, Doc. 49-1, PageID#3517-3525.)

Plaintiff says that "[t]he case comes down to" whether displaying the Flag was part of Plaintiff's ordinary duties "to convey the school-sponsored message" it carried, and proposes a two-part rule under which employee speech is curricular only if "(i) the subject matter of the speech is actually taught in a regularly offered course; and (ii) parents and students would understand that the speech was school-sponsored." (Pl.'s Opp., Doc. 49, PageID#3511.) Neither *Kennedy v. Bremerton School District*, 597 U.S. 507, 529-31 (2022), nor *Evans-Marshall*, 624 F.3d at 340-43, creates those prerequisites. *Kennedy* instead asks whether the speech was "ordinarily within the scope" of the employee's duties. 597 U.S. at 529. And *Theis* rejected the contention that *Kennedy* "dramatically changed how we analyze public-school teacher speech": "It did not." *Theis v. InterMountain Educ. Serv. Dist.*, Nos. 25-5641, 25-8039, 2026 WL 2093895 (9th Cir. July 21, 2026) (slip op. at 15-16). Proposed Facts 8-23 establish the circumstances to which that test applies. (Defs.' Proposed Facts 8-23, Doc. 43-2, PageID#3200-3203.) Under *DeCrane* and *Mayhew*, those circumstances establish official-duty speech as a matter of law. *DeCrane v. Eckart*, 12 F.4th 586, 595-96 (6th Cir. 2021); *Mayhew v. Town of Smyrna*, 856 F.3d 456, 463-65 (6th Cir. 2017).

## II. PLAINTIFF'S RESPONSE CONFIRMS THAT THE MATERIAL HISTORICAL FACTS ARE UNDISPUTED.

Plaintiff's Response expressly says "Agreed" to Proposed Facts 1-4, 6-7, 10, and 26. (Doc. 49-1, PageID#3515-3516, 3518, 3528.) His response to Proposed Fact 5 does not deny the stated syllabus goal, and his response to Proposed Fact 24 recites the statute and Policy without disputing their adoption, definitions, or procedures. (Id., PageID#3516, 3526-3527.) His remaining responses do not deny the facts material to the Cross-Motion. (Id., PageID#3517-3528.) The responses to Proposed Facts 8, 9, and 11 restate the classroom location and Plaintiff's student-

directed purposes, while adding examples of other decorations and arguments about public concern. (Id., PageID#3517-3520.) The combined response to Proposed Facts 12-18 says Defendants take the emails "out of context," but then quotes Plaintiff's description of the standards "where I feel the flag I have in my room . . . is especially applicable" and does not dispute the emails' words, sources, Harleman's review, or Plaintiff's statements that the display supported aspects of the curriculum and reminded students to engage respectfully and on the facts. (Id., PageID#3520-3524.) Plaintiff's combined response to Proposed Facts 19–20 identifies no contrary evidence to his sworn, standard-by-standard curricular mapping or his testimony that the display applied to "most of the curriculum, if not all of it." Instead, Plaintiff relies on the separate fact that he did not use the display as a formal instructional device. (Id., PageID#3524–3525.) That distinction concerns the legal significance of the undisputed facts, not a conflict in the historical evidence.

Plaintiff's responses to Proposed Facts 21–23 and 25 identify no conflicting historical evidence. Plaintiff argues that the District had no separate policy categorically restricting classroom decorations and that personal items need not be curricular or District-endorsed. But he does not dispute that teachers' latitude remained subject to applicable Board policy, that the District remained responsible for classroom walls, or that the principal would enforce a Board policy governing them. (Doc. 49-1, PageID#3525-3526; Wallace Dep., Doc. 29-4, PageID#1476, PDF p. 23; Tr. 87:12-17; Harleman Dep., Doc. 29-3, PageID#1452, PDF p. 22; Tr. pp. 82-85.) Nor does Plaintiff dispute that, before the vote, the Superintendent distributed the classroom-display guidance for use "moving forward," or that the guidance stated that the Board "retains final authority" and "may act by motion." (Doc. 49-1, PageID#3527-3528; Classroom-Display Guidance, Doc. 29-28, PageID#2314-2315, 2317, PDF pp. 1-2, 4.) His contention that the

guidance was not itself a Board-adopted policy challenges its legal effect, not whether it was distributed or what it said.

Plaintiff's Response does not include the separate "Proposed Disputed Issues of Material Fact" section required by Standing Order III.B.2, and it responds to Proposed Facts 12-23 in three combined narratives rather than in corresponding numbered paragraphs. (Doc. 49-1, PageID#3515-3529.) Even considering those narratives, they identify no conflicting historical evidence about the display's location, audience, purposes, and curricular connections. (Id., PageID#3520-3526.) Because Plaintiff identifies no record evidence creating a genuine dispute about those circumstances, the Court should treat Defendants' properly supported Proposed Facts as undisputed for purposes of the Cross-Motion under Rule 56(e)(2) and Standing Order III.B.2. Plaintiff's failure to identify any historical fact requiring a trial on the official-duty threshold confirms that no factfinder is needed to resolve it. The only remaining dispute is whether the established facts constitute citizen speech or speech pursuant to Plaintiff's official duties, a question of law appropriate for resolution on summary judgment. *DeCrane*, 12 F.4th at 595–96.

## III. PLAINTIFF STARTS AT THE WRONG STEP AND REPLACES THE GOVERNING TEST.

Plaintiff begins with *Pickering* and reframes the threshold as whether the display conveyed a school-sponsored message. (Pl.'s Opp., Doc. 49, PageID#3508, 3511.) Both moves bypass the governing inquiry. The question is whether, considering all the circumstances, Plaintiff spoke pursuant to his actual duties, including the expression's impetus, setting, audience, and function. *DeCrane*, 12 F.4th at 595–96; *Mayhew*, 856 F.3d at 463–65. Defendants do not rely on a formal job description or contend that any connection to curriculum is sufficient. They rely on Plaintiff's own account that he placed a continuing message before his assigned students to support learning

and mental health, establish expectations for classroom treatment and discussion, and connect with subjects he taught. (Defs.' Proposed Facts 8–20, Doc. 43-2, PageID#3200-3203; Pl.'s Resp. to Defs.' Proposed Undisputed Facts, Doc. 49-1, PageID#3517-3525.) Those undisputed circumstances establish official-duty speech; formal lesson use and perceived District endorsement are not prerequisites to that determination.

## IV. KENNEDY REINFORCES THE PRACTICAL INQUIRY; IT DOES NOT CREATE TWO NEW ELEMENTS.

Plaintiff argues that employee speech is official only if it was produced "pursuant to government policy" and intended "to convey a government-created message." (Pl.'s Reply, Doc. 48, PageID#3494-3495; Pl.'s Opp., Doc. 49, PageID#3510-3511.) *Kennedy* imposed neither requirement. It asked whether the expression was "ordinarily within the scope" of the employee's duties and held the coach's prayer private because, during a period available for personal matters, he was neither instructing nor addressing his players. 597 U.S. at 529–31. McIntyre's continuing message presented the opposite circumstances: it remained before his assigned students in his classroom and was chosen to communicate support and course-related expectations to them. (Defs.' Proposed Facts 8–11, Doc. 43-2, PageID#3200-3201; Pl.'s Resp., Doc. 49-1, PageID#3517-3520.) *Wood v. Florida Department of Education,* 142 F.4th 1286, 1293 (11th Cir. 2025), accurately summarized this factual distinction by contrasting the coach being "off the clock" with an employee "doing precisely what the state paid her to do as a teacher." The

distinction turns on the expression's function and circumstances, not whether the employer prescribed or endorsed its particular message.

## V. FORMAL LESSON USE AND SCHOOL ATTRIBUTION ARE NOT DISPOSITIVE.

Plaintiff's proposed "actually taught" and "school-sponsored" test imports *Hazelwood*'s framework for student expression, not the official-duty inquiry governing public employees. *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 271 (1988). *Evans-Marshall* instead applied *Garcetti* to a K–12 teacher, and emphasized the Board's "ultimate responsibility for what goes on in the classroom." 624 F.3d at 340–43. Plaintiff's testimony can therefore be fully credited: he did not use the display as a formal lesson device. (Pl.'s Resp., Doc. 49-1, PageID#3524-3525.) That fact does not resolve whether the display constituted "speech that an employee made in furtherance of the ordinary responsibilities of his employment." *Boulton v. Swanson*, 795 F.3d 526, 534 (6th Cir. 2015).

Plaintiff likewise overreads Morgan's and Harleman's testimony. Harleman agreed that the display's imagery addressed "similar issues" and was "consistent with" subjects Plaintiff taught, notwithstanding that Plaintiff did not reference it during lessons. (Harleman Dep., Doc. 29-3, PageID#1443, PDF p. 13; Tr. 46:12-22.) Morgan distinguished formal instructional use from the display's reinforcing function, testifying that she believed Plaintiff displayed it to communicate that students should be kind in his classroom and that it reinforced his teaching of kindness, while noting that his curriculum included LGBTQ content and the display contained LGBTQ imagery. (Morgan Dep., Doc. 29-2, PageID#1429, PDF p. 22; Tr. 82:21-85:7.) That testimony supports a

classroom function beyond formal lesson use in furtherance of the job Plaintiff was hired to perform as a teacher. It does not establish citizen speech.

## VI. THE POST-KENNEDY AUTHORITIES ANSWER PLAINTIFF'S ARGUMENTS.

### A. *Theis* Rejected Plaintiff's Reading Of *Kennedy*.

Plaintiff calls *Johnson* “directly contrary” to *Kennedy* and says *Theis* “illustrates the importance of whether the material was actually used in instruction” because “[i]n at least one instance, the teacher discussed the content of the books with students.” (Pl.’s Reply, Doc. 48, PageID#3497 n.7, 3505 n.11.) Plaintiff expressly incorporated those discussions into his Opposition to the Cross-Motion. (Pl.’s Opp., Doc. 49, PageID#3512.) The *Theis* majority rejected the first contention expressly: the assertion that *Kennedy* “dramatically changed how we analyze public-school teacher speech” was wrong. “It did not.” *Theis,* slip op. at 15-16. The court continued to apply *Johnson v. Poway Unified School District*, 658 F.3d 954, 967-68 (9th Cir. 2011), because *Kennedy* concerned a brief personal observance outside active duties, whereas student-facing expression during assigned work remains governed by *Garcetti*. *Theis*, slip op. at 16–18.

Plaintiff treats a later discussion about one book as important to *Theis*’s result. (Pl.’s Reply, Doc. 48, PageID#3497 n.7.) *Theis*’s official-duty analysis instead emphasized that the displays were confined to the employee’s assigned offices and times with students, aimed at students, visible during evaluations and meetings, and “owe[d] [their] existence to his position” at the school. *Theis,* slip op. at 13. It then stated that “[t]hese dictates apply to visual displays as well as to spoken speech.” Id. at 14. McIntyre’s permanent classroom display shares those material features: it was continuously visible to his assigned students and expressly tied to their learning environment and course expectations. (Defs.’ Proposed Facts 8-20, Doc. 43-2, PageID#3200-3203). *That* reasoning therefore does not require a formal lesson built around the display.

**B. *Cajune* Addressed A Different Claim And A Different Record.**

Plaintiff relies on *Cajune v. Independent School District 194* because teachers retained discretion and "were not required to display the posters." (Pl.'s Opp., Doc. 49, PageID#3513.) But *Cajune* turned on limited-public-forum doctrine: "When the District allowed private persons to display the Inclusive Poster Series on school walls, it deviated from its prior practice restricting the display of such posters. In doing so, the District created a limited public forum, thereby opening school walls to the discussion of similar topics." *Cajune v. Indep. Sch. Dist*. 194, 105 F.4th 1070, 1083 (8th Cir. 2024). Private activists developed the poster series, and the District relinquished control over its display to private actors. *Id.* at 1079–83. No outside speaker or privately developed poster program sought access to District walls here. The question is whether McIntyre's continuing classroom communication to his assigned students was made pursuant to his duties as their teacher. *Cajune*'s limited-public-forum analysis therefore does not govern. The Eighth Circuit subsequently held that employee speech may fall within official duties even when "neither required by her job description nor requested by her employer," and that a principal acted in her official capacity when she created a school flag display, distributed Pride stickers, and assisted in creating the school's GSA. *Thomas v. Marshall Public Schools*, 152 F.4th 884, 888–90 (8th Cir. 2025). *Thomas*, not *Cajune*, fits this record: McIntyre used the classroom access and student audience supplied by his teaching position to maintain a continuing message serving student-support, classroom-expectation, and course-related purposes, making the display official-duty speech as a matter of law. (Defs.' Proposed Facts 8–20, Doc. 43-2, PageID#3200–3203.)

**C. *Johnson* and *Cahall* Confirm That Formal Lesson Use Is Not Required.**

*Johnson* treated the district court's finding that the classroom banners were "not part of Johnson's curriculum" as "irrelevant" to the citizen-or-employee question and explained that

"curriculum is only one outlet of a school district's expression of its policy." 658 F.3d at 968 n.13 (quoting *Downs v. Los Angeles Unified School District*, 228 F.3d 1003, 1015 (9th Cir. 2000)). Although *Cahall v. New Richmond Exempted Village School District Board of Education* arose under the Religion Clauses, its official-duty analysis accepted that the teacher did not "'teach' from the books" and held that *Evans-Marshall* "did not turn on the precise manner in which the teacher *used* the books." No. 1:24-cv-688, Doc. 25 at 25–26 (S.D. Ohio Sept. 29, 2025) (attached at Doc. 43-1, PageID#3194-3195). These authorities address the precise distinction Plaintiff advances: the absence of a formal lesson built around a classroom display does not convert that student-facing communication into citizen speech.

**D. *Plaintiff's Remaining Authorities Address Different Speech Doctrines.***

Plaintiff's remaining authorities concern different speakers and constitutional doctrines. (Pl.'s Opp., Doc. 49, PageID#3510 & n.1.) *Meriwether v. Hartop* addressed academic-freedom concerns in higher education while identifying *Evans-Marshall* as governing "the in-class curricular speech of teachers in primary and secondary schools." 992 F.3d 492, 503–04 (6th Cir. 2021). *Defending Education v. Olentangy Local School District Board of Education*, 158 F.4th 732, 734, 758 (6th Cir. 2025) (en banc), involved a policy under which the District "requires other speech (preferred pronouns)" and which the court described as a "'targeted ban' on student speech." Although *Tinker v. Des Moines Independent Community School District* stated that teachers and students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," the plaintiffs were public-school students disciplined for wearing antiwar

armbands, and the operative standard addressed "conduct by the student." 393 U.S. 503, 504, 506, 513 (1969).

*Keyishian v. Board of Regents of the University of the State of New York* involved state-university faculty challenging loyalty laws and described the classroom as the "marketplace of ideas." 385 U.S. 589, 592–93, 603 (1967). *Sweezy v. New Hampshire* concerned compelled questioning of a university lecturer and emphasized that teachers and students must remain "free to inquire, to study and to evaluate." 354 U.S. 234, 243–45, 250 (1957) (plurality opinion). Those decisions establish important student-speech and academic-freedom principles, but none decided whether a K–12 public employee spoke pursuant to official duties. *Evans-Marshall v. Board of Education of the Tipp City Exempted Village School District* supplies that governing rule: "the First Amendment does not extend to the in-class curricular speech of teachers in primary and secondary schools made 'pursuant to' their official duties." 624 F.3d 332, 334 (6th Cir. 2010).

## VII. PLAINTIFF'S LATER-STAGE ARGUMENTS DO NOT DEFEAT THE CROSS-MOTION.

Plaintiff faults Defendants for not addressing the second step of *Pickering* and incorporates arguments concerning disruption, motive, pretext, policy interpretation, *Mahmoud*, and *Mt. Healthy*. (Pl.'s Opp., Doc. 49, PageID#3512-3513.) Those arguments do not answer the threshold question presented by the Cross-Motion. *Evans-Marshall* holds that disputes concerning motivation, *Pickering* balancing, and public concern are "beside the point" when the teacher acted in connection with official duties. 624 F.3d at 340. Defendants have fully addressed Plaintiff's alternative arguments in their Opposition to Plaintiff's Motion for Summary Judgment. (Doc. 46, PageID#3418-3430.) They do not defeat judgment on the official-duty ground presented here.

## VIII. CONCLUSION

For these reasons, Defendants respectfully request that the Court grant their Cross-Motion for Summary Judgment, enter judgment for Defendants on Count I, deny Plaintiff's Motion for Summary Judgment, deny the Motion for Preliminary Injunction as moot, and terminate this action.

Respectfully submitted,

/s/ Omar Tarazi____________
Omar Tarazi (0084165)
5635 Sandbrook Lane
Hilliard, Ohio 43026
Ph: (614) 226-2823
otarazi@tarazilaw.com
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2026, I filed the foregoing through the Court's CM/ECF system, which served counsel for Plaintiff.

/s/ Omar Tarazi____________
Omar Tarazi (0084165)