**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| GEORGE MCINTYRE, | : | Case No. 1:26-cv-351 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| LITTLE MIAMI SCHOOL DISTRICT, et al., | : | |
| Defendants. | : | |

---

**ORDER AND OPINION**

---

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction (Doc. 3), Defendants' Motion to Dismiss (Doc. 10), Plaintiff's Motion for Summary Judgment (Doc. 26), Plaintiff's Motion to Accelerate Trial and Combine Trial (Doc. 27), Defendants' Motion for Leave to File Supplemental Memorandum (Doc. 38), and Defendants' Motion for Summary Judgment (Doc. 43). Each motion has been fully briefed. (*See* Docs. 13, 17, 21, 22, 30, 39, 40, 46-50.) Thus, these matters are ripe for the Court's review.

For the reasons below, Plaintiff's Motion for Preliminary Injunction (Doc. 3) is **DENIED AS MOOT**, Defendants' Motion to Dismiss (Doc. 10) is **DENIED AS MOOT**, Plaintiff's Motion for Summary Judgment (Doc. 26) is **DENIED**, Plaintiff's Motion to Accelerate Trial and Combine Trial (Doc. 27) is **DENIED AS MOOT**, Defendants' Motion for Leave to File Supplemental Memorandum (Doc. 38) is **DENIED AS MOOT**, and

Defendants' Motion for Summary Judgment (Doc. 43) is **GRANTED**.

**FACTS**

Plaintiff George McIntyre is a teacher at Little Miami High School, a school within Defendant Little Miami School District ("District"), where he teaches American History and Advanced Placement European History. (McIntyre Dep., Doc. 29-1, Pg. ID 1368, 1375.) McIntyre placed a poster in his classroom displaying the slogan "Hate Has No Home Here" ("Poster"), depicted below:




(Poster, Doc. 29-6, Pg. ID 1495.) As shown above, the Poster features five hands holding hearts filled with distinct symbols, including the American flag, a peace sign, the rainbow pride flag, and the transgender pride flag. (*See id.*) McIntyre hung up the Poster to remind his students to "treat all their classmates with mutual respect, regardless of personal opinions or beliefs." (McIntyre Interrog. Resp., Doc. 29-23, Pg. ID 1673; *see also* McIntyre

Dep., Doc. 29-1, Pg. ID 1401-02.)

## I. Legislative Context and Board Policy

The District's "longstanding practice" has been to permit teachers to decorate their classrooms and display personal items. (*See* Defendants' Interrog. Resp., Doc. 29-7, Pg. ID 1501.) That latitude, however, is "defined by" the District's Little Miami School Board ("Board") policy. (*Id.*)

That policy landscape shifted when the Ohio General Assembly enacted House Bill 8, known as the Ohio Parents' Bill of Rights. That statute requires school districts to provide parental notice and review for materials containing "sexuality content" and allows parents to opt out for alternative assignments. Ohio Rev. Code § 3313.473(B)(1)(b). "[S]exuality content" is defined as "oral or written instruction, presentation, image, or description of sexual concepts or gender ideology in a classroom setting," but explicitly excludes "[i]ncidental references to sexual concepts or gender ideology occurring outside of formal instruction or presentations on such topics." *Id.* at § 3313.473(G)(5). On October 28, 2025, the Board adopted Board Policy 5780.01, incorporating the statute's definitions and notice/opt-out requirements into District policy. (Board Policy 5780.01, Doc. 29-9, Pg. ID 1512-14.)

The Board considered restricting classroom wall-hangings exclusively to the U.S. flag, the Ohio flag, and school-related displays, but ultimately concluded that state law and Board Policy 5780.01 provided sufficient oversight. (*See* Guidance Email, Doc. 29-28, Pg. ID 2315-17.) Under District guidance, concerns that a classroom display contains "sexuality content" under state law or Board Policy 5780.01 are subject to a three-tiered

review: first by the school principal, then on appeal to the superintendent, and finally to the Board. (*Id.*)

## II. Administrative Inquiry

In September 2025, Defendant David Wallace, the Board President, visited McIntyre's classroom and photographed the Poster. (Wallace Dep., Doc. 29-4, Pg. ID 1456, 1481; Harleman Dep., Doc. 29-3, Pg. ID 1440-42; Defendants' Interrog. Resp., Doc. 29-7, Pg. ID 1498.) Thereafter, Wallace contacted District Superintendent Regina Morgan, requesting that McIntyre remove the Poster. (Wallace Dep., Doc. 29-4, Pg. ID 1481; Defendants' Interrog. Resp., Doc. 29-7, Pg. ID 1498.) Morgan relayed the request to Little Miami High School's Principal, Kevin Harleman. (Harleman Dep., Doc. 29-3, Pg. ID 1442-43.)

Harleman spoke with McIntyre about the Poster, and asked whether McIntyre tied the display to his curriculum or classroom discussions, or if it was simply a decorative wall hanging. (Harleman Dep., Doc. 29-3, Pg. ID 1442-43.) On February 2, 2026, McIntyre emailed Harleman, identifying specific content standards within the model curriculum for his classes that he felt the Poster was "especially applicable" to. (*See* Standards Email, Doc. 29-22, Pg. ID 1669-70.) McIntyre further noted that, while the Poster applied to those broad historical themes, it was not used as a formal instructional device and instead was "a reminder that [his students] must treat their classmates with mutual respect." (*Id.* at Pg. ID 1670.) Harleman forwarded that email to Morgan. (*Id.* at Pg. ID 1669.)

The next day, Morgan informed Wallace that, upon her review, while the Poster contained sexual identity symbols, she did not "believe a reasonable observer would

conclude its primary purpose [was] to prompt discussion, provide instruction, or solicit student engagement on sexual concepts or gender ideology." (Findings Email, Doc. 29-22, Pg. ID 1668.) Under the "display guidelines," Morgan acknowledged that it was "now a Board decision as to how to move forward." (*Id.*)

**III. The Poster's Removal**

On February 10, 2026, Wallace added the Poster issue to the upcoming Board meeting agenda. (Agenda Email, Doc. 29-22, Pg. ID 1664-65.) At the public meeting on February 25, 2026, the Board considered a formal motion "to determine if [the P]oster constitutes sexuality content as defined by [Board] Policy 5780.01." (Board Minutes, Doc. 13-3, Pg. ID 114.) The Board voted 4 to 1 to classify the Poster as sexuality content under Board Policy 5780.01 and ordered its immediate removal from McIntyre's classroom. (*Id.*)

**PROCEDURAL POSTURE**

On April 7, 2026, McIntyre brought this action against the District and Wallace, seeking declaratory judgment that Defendants violated McIntyre's First Amendment Free-Speech rights under 42 U.S.C. § 1983. (*See* Verified Compl., Doc. 1.) That same day, McIntyre moved for injunctive relief permitting him to display the Poster in his classroom. (*See* Preliminary Injunction Motion, Doc. 3.) Defendants then moved to dismiss McIntyre's Complaint. (Motion to Dismiss, Doc. 10.)

The parties engaged in expedited discovery as ordered by the Court. (*See* Expedited Discovery Order, Doc. 23.) McIntyre thereafter moved for summary judgment in his favor, along with a motion to accelerate and combine the trial on the merits in this case with an anticipated preliminary injunction hearing. (*See* McIntyre's Motion for

Summary Judgment, Doc. 26; Motion to Accelerate, Doc. 27.) Defendants later moved for summary judgment, as well. (*See* Defendants' Motion for Summary Judgment, Doc. 43.)

**LAW & ANALYSIS**

**I. The Motions for Summary Judgment**

The Court will first consider the parties' competing Motions for Summary Judgment (Docs. 26, 43). When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A court is under no obligation to search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). And, a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forward probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element upon which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

Both parties seek summary judgment in their favor on McIntyre's declaratory judgment claim for an alleged First Amendment violation under § 1983. (Motions for Summary Judgment, Docs. 26, 43.) "The First Amendment, applicable to the States through the Fourteenth Amendment, provides that 'Congress shall make no law . . . abridging the freedom of speech.'" *Virginia v. Black*, 538 U.S. 343, 358 (2003). "Speech by citizens on matters of public concern lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Lane v. Franks*, 573 U.S. 228, 235-36 (2014) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)).

"The protections afforded by the First Amendment, however, are not absolute" — particularly where, as here, the speaker is a public employee. *Black*, 538 U.S. at 358. Although public employees "undoubtably enjoy certain rights," those rights "do not transform them into 'sovereigns unto themselves.'" *Rice v. Schell*, No. 1:26-CV-155, 2026 U.S. Dist. LEXIS 147025, at *50 (S.D. Ohio July 2, 2026) (quoting *Evans-Marshall v. Bd. of Educ. of the Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 341 (6th Cir. 2010)). Rather, "the government, just like a private employer, retains 'control over what the employer itself has commissioned or created': the employee's job." *Evans-Marshall*, 624 F.3d at 342 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006)). That authority carries particular significance in the context of public education, where Ohio's compulsory-attendance requirements give public school teachers "a captive audience for their in-class speech." *Id.* (citing Ohio Rev. Code § 3321.02).

To determine whether a public employee's speech warrants constitutional

protection, courts apply a threshold two-part inquiry: the employee must demonstrate that he (1) spoke as a private citizen and (2) addressed a matter of public concern. *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti*, 547 U.S. at 421. "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Id.* at 421-22. Instead, "[i]t simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* at 422.

The first prong turns on whether the speech is "ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane*, 573 U.S. at 240; *see also Boulton v. Swanson*, 795 F.3d 526, 534 (6th Cir. 2015) (speech must be "made in furtherance of" those duties). Those official duties "include[] the responsibilities an employee undertook when [he] went to work and performed the tasks []he was paid to perform." *Wood v. 36th District Court*, No. 21-1313, 2022 U.S. App. LEXIS 4504, at *11 (6th Cir. Feb. 18, 2022) (quoting *Lane*, 573 U.S. at 239). In making this determination, courts consider "several 'non-exhaustive factors,' including the motivation behind the speech (i.e., whether the employee is speaking to further a job duty or an unrelated goal), where the speech was made (i.e., was it on-the-clock in the workplace?), the speech's audience (i.e., was it within the chain of command?), and its general subject matter." *Id.* This analysis is practical and turns on the timing and circumstances of the expression. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 529-30 (2022).

For example, the Sixth Circuit has held that a public school teacher's in-class curricular and pedagogical choices are not protected by the First Amendment. *Evans-Marshall*, 624 F.3d at 340. In reaching this holding, the Sixth Circuit reasoned that "[w]hen a teacher teaches, the school system does not regulate that speech as much as it *hires* that speech. Expression is a teacher's stock in trade, the commodity []he sells to [his] employer in exchange for a salary." *Id.* (cleaned up). Since Ohio law left curriculum choices to elected school boards as "an accountability measure," those boards are entitled to "regulate the content of what is or is not expressed" on their behalf. *Id.* Consequently, when the school board in *Evans-Marshall* voted not to renew a teacher's contract based on her curricular choices and instructional materials, any debate over the board's underlying motives was "beside the point." *Id.*

Applying *Evans-Marshall*, this Court reaffirmed that a school administration maintains the authority to manage classroom choices when a teacher acts pursuant to his teaching duties. *See Cahall v. New Richmond Exempted Village School District Bd. of Education*, No. 1:24-CV-688, 2025 U.S. Dist. LEXIS 191640, at *33 (S.D. Ohio Sept. 29, 2025). In *Cahall*, the Court observed that, although the plaintiff-teacher chose classroom books "for the purpose of making her LGBTQ+ students feel better, safer, and more supported—all laudable goals," those actions were "all also related to, and arising from, her duties as a teacher in the school." *Id.* at *33-34. "Stated differently, in her capacity as a citizen, [the teacher] would not have had the right or authority to add books to the classroom library." *Id.* at *34. "Rather, her ability to do so arose solely pursuant to her position as the classroom teacher." *Id.* "Thus, just as in *Evans-Marshall*, the school district

had a right as an employer to constrain the manner in which she made those choices." *Id.*

Here, McIntyre spoke as a public employee pursuant to his official duties when displaying the Poster in his classroom. McIntyre hung the Poster to foster a respectful environment among his students and later identified specific state curriculum standards that he believed the Poster supported. (McIntyre Interrog. Resp., Doc. 29-23, Pg. ID 1673; Standards Email, Doc. 29-22, Pg. ID 1669-70.) Just as in *Cahall*, McIntyre's motivations and actions were directly related to, and arose from, his professional responsibilities as a teacher shaping his students' learning environment. *See Cahall*, 2025 U.S. Dist. LEXIS 191640, at *33–34. Whether McIntyre used the Poster for formal instruction is immaterial. He gained access to and control over the classroom wall space through his position as a public school employee, not as a private citizen. His ability to maintain classroom displays thus existed within the scope of that public employment, which the Board regulated through established policies. (Board Policy 5780.01, Doc. 29-9, Pg. ID 1512-14; Guidance Email, Doc. 29-28, Pg. ID 2315-17.) As McIntyre displayed the Poster pursuant to his official duties, his expression constituted unprotected employee speech.

Contrary to McIntyre's argument, the Supreme Court's holding in *Kennedy* does not alter this conclusion. (*See, e.g.*, Plaintiff's Motion for Summary Judgment, Doc. 26, Pg. ID 1326-28.) Unlike the high school coach in *Kennedy*, who offered a brief prayer while essentially "off the clock" after a game, McIntyre maintained a permanent display on his classroom wall that was visible during school hours. (*See* Poster, Doc. 29-6, Pg. ID 1495); *Kennedy*, 597 U.S. at 526-31. Managing the classroom environment during the school day relates to his job responsibilities, not private citizen speech. *Kennedy* thus does not compel

a finding that McIntyre spoke as a private citizen.

Other circuits have reached the same conclusion. In *Dolce v. Connetquot Cent. Sch. Dist.*, for example, the Second Circuit recognized that public school teachers "are 'expected' to create classroom learning environments and materials to support that curriculum." No. 25-1197, 2026 U.S. App. LEXIS 26560, at *12 (2d Cir. Aug. 31, 2026). "And in the course of creating those learning environments, they decorate their classroom walls and doors." *Id.* The Second Circuit thus held that "[t]he timing and circumstances of classroom wall decorations [] demonstrate that the decorations are speech that owes its existence to [the teachers'] core professional responsibilities, and the District may ask them to remove those decorations without implicating their First Amendment rights." *Id.*; *see also Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 970 (9th Cir. 2011) (holding that "[b]ecause the speech at issue owes its existence to [the plaintiff's] position as a teacher," a school board acts "well within constitutional limits" in ordering the removal of classroom displays).

McIntyre's authority to shape his classroom environment remained subject to the Board's oversight. That oversight reflects the allocation of educational decisions to elected school boards, which are accountable to the public for the choices made on their behalf. *See Evans-Marshall*, 624 F.3d at 342. McIntyre could disagree with the Board's judgment, but the First Amendment did not give him a right to disregard its direction when speaking pursuant to his official duties. As the Seventh Circuit explained, "[t]he Constitution does not entitle teachers to present personal views to captive audiences against the instructions of elected officials." *Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474

F.3d 477, 480 (7th Cir. 2007).

As McIntyre was speaking as a government employee when displaying the Poster, he was "not speaking as [a] citizen[] for First Amendment purposes." *Garcetti*, 547 U.S. at 421. The Board was, in turn, entitled to restrain that speech, and McIntyre is not entitled to declaratory judgment that his First Amendment rights were violated. Summary judgment in Defendants' favor on that claim is therefore warranted.

## II. The Parties' Remaining Motions

As summary judgment is warranted and disposes of this action in its entirety, the parties' remaining Motions (Docs. 3, 10, 27, 38) are denied as moot. *Phillips v. DeWine*, 841 F.3d 405, 420 (6th Cir. 2016) ("When ruling on a matter disposes of an action in its entirety, a district court is generally correct in denying all other pending motions as moot.") (affirming denial of a motion for preliminary injunction as moot upon dismissal of the case); *see also Barrett v. Harrington*, 130 F.3d 246, 252-53 (6th Cir. 1997) ("The court [] acted in accordance with Rule 12 by rendering the motion to dismiss moot, as a summary judgment motion was already pending addressing the same issues.").

## CONCLUSION

Based on the foregoing, the Court **ORDERS** the following:

1. Plaintiff's Motion for Preliminary Injunction (Doc. 3) is **DENIED AS MOOT**;
2. Defendants' Motion to Dismiss (Doc. 10) is **DENIED AS MOOT**;
3. Plaintiff's Motion for Summary Judgment (Doc. 26) is **DENIED**;
4. Plaintiff's Motion to Accelerate Trial and Combine Trial (Doc. 27) is **DENIED AS MOOT**;

5. Defendants' Motion for Leave to File Supplemental Memorandum (Doc. 38) is **DENIED AS MOOT**;
6. Defendants' Motion for Summary Judgment (Doc. 43) is **GRANTED**;
7. Summary judgment is **ENTERED** in favor of Defendants on Plaintiff's Declaratory Judgment – Violation of Free Speech under 42 U.S.C. § 1983 claim against them; and
8. This matter is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: Matthew W. McFarland
JUDGE MATTHEW W. McFARLAND